UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>BRADFORD C. BLEIDT and<br>ALLOCATION PLUS ASSET MANAGEMENT<br>COMPANY, INC.<br><br>Defendants. | Case No._____ |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF EMERGENCY *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR OTHER EQUITABLE RELIEF AND, UPON FURTHER NOTICE, A PRELIMINARY INJUNCTION**

Pursuant to Fed. R. Civ. P. 65(b), and Civil Local Rules 7.1 and 40.4 plaintiff Securities and Exchange Commission ("Commission") hereby submits this motion on an emergency *ex parte* basis, and requests that the Court consider and grant the relief sought with the prospective written and oral notice described herein to the adverse parties for the reasons set forth in the accompanying declaration of Louis Randazzo ("Randazzo Declaration"). In that regard, the Commission represents that commencing at the date and time this emergency motion is filed with the Court, attempts will be made to give notice of this motion to all defendants by making telephone calls to the last known phone numbers of the defendants, respectively, and by sending, by facsimile, copies of this motion and accompanying documents to the defendants at the last known facsimile number used by each of them and/or to a facsimile number of their counsel, if one is known. As described in the Randazzo Declaration, the requested temporary restraining order and asset freeze are sought based on admissions by defendant Bradford C. Bleidt

("Bleidt"), which were recorded by him and delivered to and recevied at the Commission's offices on November 12, 2004. The statements by Bleidt are recounted in greater detail below and in the Randazzo Declaration.

With these papers the Commission moves *ex parte* for (i) a temporary restraining order and, upon further notice, a preliminary injunction, against defendants Bradford C. Bleidt and Allocation Plus Asset Management Company, Inc., and (ii) an order freezing assets and order for other equitable relief against defendants Bleidt and Allocation Plus Asset Management Company, Inc.

## DISCUSSION

Plaintiff Securities and Exchange Commission (" SEC" or "Commission") files this memorandum of points and authorities in support of its emergency *ex parte* motion for a temporary restraining order, order freezing assets and for other equitable relief, and upon further notice, a preliminary injunction.

The Commission seeks a temporary restraining order against defendants Bleidt restraining their activities, to wit, ongoing violations of the federal securities laws, and an order against defendants Bleidt and Allocation Plus Asset Management Company, Inc. freezing assets and providing other relief as set forth in the accompanying proposed order.

### A.     Introduction

The Commission now seeks a temporary restraining order, an order freezing assets, and an order for other equitable relief. As set forth below, the Commission is likely to prevail on the merits of its claim that the defendants committed securities fraud under Section 206(1) of the Investment Advisers Act of 1940. Further, defendants Bleidt and Allocation Plus Asset Management Company, Inc. should be restrained immediately from defrauding others during the

pendency of this action, the assets of defendants Bleidt and Allocation Plus Asset Management Company, Inc. should be frozen to ensure that any remaining client funds are available for distribution upon entry of a final judgment, and other equitable relief is warranted to preserve the status quo.

## STATEMENT OF FACTS

A.  **Defendants**

1. **Bradford C. Bleidt,** born 1954, is the President and sole shareholder of Allocation Plus Asset Management Co., Inc.

2. **Allocation Plus Asset Management Co., Inc.** is, according to its Form ADV, a registered investment adviser with $85 million under management that provides investment advisory services through investment advisory representatives in most of whom are also financial planners with Financial Perspective Planning Services, Inc. and registered representatives of Winslow Evans & Crocker, a registered broker-dealer.

B.  **Facts**

On or abouat November 11 or 12, 2004, Bleidt mailed to the Commission's Boston District Office, via DHL, a package enclosing a tape recorder and a tape. In the tape recording, which the Commission staff has transcribed, Bleidt admits that he has defrauded his Financial and/or Allocation investment advisory clients out of millions of dollars. Specifically, Bleidt admits that he diverted investor funds from the investment advisers into a personal account at Sovereign Bank ("Sovereign"). The Commission staff also received today a number of telephone calls from an attorney who is affiliated with either Financial and/or Allocation, Bleidt's investment advisers and from a broker-dealer with which Bleidt, Financial and/or Allocation has previously worked. They also confirmed to the staff that Bleidt had diverted

"tens of millions of dollars" from his clients.

In light of Bleidt's admissions and the other information thus far obtained by the Commission staff, the Commission brings this emergency action to ensure that investor assets – including those in Bleidt's personal account at Sovereign – are not dissipated by Bleidt or anyone else who may be acting in concert with him.

In the tape, Breidt said:

> I'm reporting a serious serious breach of professional conduct and just criminal behavior, I'm reporting myself. Over the last twenty years almost, I've stolen tens and millions of dollars uh, from clients through Allocation Plus Asset Management Corp.

Bleidt further states in the tape that he worked alone, using his position as head of the company to avoid detection by others at the company or the SEC:

> Nobody in the company knew what was going on, only I did, nobody had a clue. I would prepare monthly statements to send to clients and we're talking about close to one hundred clients at least. . . What I did basically did was when I got a new client I would roll, I would take their money, payable to Allocation Plus Asset Management Corp., and deposit it in a Sovereign Bank account of which uh, I would set up payments for the first and fifteenth of the month or any time the client would call and request money I always had enough to cover cash flow that I would be able to cover those demands."

Bleidt explained that his fraud was on the verge of being discovered because a client had requested a large sum, but Bleidt could not cover the request. The staff, through information learned in today's OCIE cause exam, believes that client was a Greek Orthodox church. He explained in the tape:

> And it's today, this Thursday is the day of reckoning because there is a client that needs a million-and-a-half dollars wired into their account that's supposed to be there this morning, and obviously it's not going to be there this morning because the money's gone. I stole it. I used to buy a radio station, believe it or not, um, which is stupid.

Bleidt did express considerable remorse in the tape, saying "this is a major, major, major situation and it's tragic and um, I'm so sorry and guilty and obviously I'm not there, I'm gone." He further said:

> I mean I'm sick, I'm I'm, I'm literally a psychopath, I must be. To do to the magnitude, and to whom I did it. The innocent victims, are just -- it's, it -- I'm a monster, an absolute monster. . . . I'm deeply sorry and I don't expect to ever be forgiven for this. I'm going to Hell and I've been in Hell for years, just with the terror knowing what I've done and the guilt of who I'm doing it to.

He added that he "asked the people at the company to shut the company down immediately so that the employees won't be misled that there is any hope that the company will maintain itself."

## ARGUMENT

### I. A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE NECESSARY TO PROTECT INVESTORS AND THE PUBLIC INTEREST

#### A. The Standard for Granting the Commission's Request for a Temporary Restraining Order and Preliminary Injunction

Section 21(d)(1) of the Exchange Act of 1934 [15 U.S.C. §78u(d)(1)] and Section 209(d) of the Investment Advisers Act of 1940 [15 U.S.C. §78u(d)(1)]80b-9(d)] provide that a court shall enter a temporary restraining order or preliminary injunction in a Commission enforcement action "upon a proper showing" and "a showing," respectively, of federal securities law violations. Unlike private litigants seeking similar relief, the Commission need not show irreparable injury or a lack of remedies at law. SEC v. Cavanagh, 155 F.3d 129, 132 (2nd Cir. 1998); SEC v. Unifund SAL, 910 F.2d 1028, 1035-36 (2nd Cir. 1990). The reason is that the Commission appears not as an ordinary litigant, but as a "statutory guardian charged with

safeguarding the public interest in enforcing the securities laws." SEC v. Management Dynamics, Inc., 515 F.2d 801, 808 (2nd Cir. 1975).

To satisfy the "proper showing" requirement, the Commission must make "a substantial showing of likelihood of success as to both a current violation and the risk of repetition." SEC v. Cavanagh, 155 F.3d at 132. The showing should be based on "reasonable inquiry and other credible information." SEC v. International Loan Network, Inc., 770 F.Supp. 678, 688 (D.D.C. 1991), aff'd, 968 F.2d 1304 (D.C. Cir. 1992).

### B. Defendants Violated the Anti-Fraud Provisions of the Federal Securities Laws

#### 1. Section 10(b) of the Exchange and Rule 10b-5 and Section 206(1) of the Investment Advisers Act of 1940

Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5] prohibits the use of fraudulent devices in the offer or sale of securities. Section 206(1) of the Investment Advisers Act of 1940 prohibits an investment adviser from employing any device, scheme or artifice to defraud any client or prospective client [15 U.S.C. §78u(d)(1)]80b-6(1)] Misrepresentations are deemed to violate Section 10(b) if they are: (i) material; (ii) made in connection with the purchase or sale of securities; and (iii) made with scienter. All three elements clearly are present here. The elements for a violation of Section 206(1) also are clearly met in this instance. Under Section 206(1), investment advisers owe a fiduciary duty to their clients or prospective clients. Conduct that violates that duty, or otherwise acts as a fraud or deceit upon a client or prospective client, violates these sections. SEC v. Moran, 922 F. Supp. 867, 895-96 (S.D.N.Y. 1996) (citing Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 17 (1979) and SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 191-92 (1963)).

With respect to the allegations that the defendants' conduct violated Section 10b, first, statements are material if a reasonable investor would consider them important in the total mix of information available. Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). Here, statements that defendant Bleidt made were material, because a reasonable investor would want to know, that the money he or she was entrusting to an investment adviser was being diverted for the adviser's own personal use and benefit, rather than being invested on his [the client's] behalf.

Second, fraudulent statements are "in connection with" the purchase or sale of securities as long as they "touch" upon the purchase or sale of securities. Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 12-13 (1971). Here, defendant Bleidt made undoubtedly made misrepresentations to investors concerning the intended use of the money they invested. Such statements satisfy the "in connection with" requirement. *See, e.g.,* U.S. v. Kendrick, 692 F.2d 1262, 1266 (9th Cir. 1982) (misrepresentations that money borrowed from margin account would be used to purchase securities); Gaudette v. Panos, 644 F.Supp. 826, 833 (D.Mass. 1986) (misrepresentations about how broker would manage client's investments).

Third, scienter is a mental state embracing intent to deceive or defraud and includes recklessness. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n.12 (1976); Rolf v. Blyth, Eastman Dillon & Co., Inc., 570 F.2d 38, 47 (2nd Cir. 1978). Here, the scheme demonstrates a high degree of intent to defraud, with Bleidt, by his own admissions, making false statements and misrepresentations to investors, and then looting their accounts for his own personal use and benefit.

### C. Defendants Bleidt and Allocation Plus Asset Management Company, Inc. Should Be Restrained from Further Securities Law Violations

The need for a temporary restraining order and preliminary injunction are particularly acute here. The fraud being perpetrated by Bleidt, by his own admission, has placed literally millions of dollars of investor funds at risk. The full extent of the embezzlement and misappropriation by Bleidt is not yet known but, again according to Bleidt's own admissions, involves upwards of one hundred clients and tens of millions of dollars. A restraining order and asset freeze are essential to provide whatever protection is possible for the investors who have been the targets and victims of this fraud.

When presented with similar exigent circumstances, courts in this Circuit and elsewhere have readily granted the Commission's requests for a temporary restraining order and a preliminary injunction. *See, e.g.,* SEC v. Cavanagh, 155 F.3d at 135-36; SEC v. Levine, 881 F.2d 1165 (2nd Cir. 1989); SEC v. Milan Capital Group, Inc., 2000 WL 1682761 (S.D.N.Y. Nov. 9, 2000); SEC v. SG Limited, slip op., Civil No. 00-11141-JLT (D.Mass. June 9, 2000); SEC v. Cheal, slip op., Civil No. 00-10182-EFH (D.Mass. Feb. 1, 2000); SEC v. Princeton Economic Int'l, Inc., 1999 WL 997149 (S.D.N.Y. Nov. 3, 1999); SEC v. Paro, 468 F.Supp. 635 (S.D.N.Y. 1979). Accordingly, the Court should adopt the relevant paragraphs of the Commission's proposed order.

## II. AN ORDER FREEZING ASSETS AND ENTERING OTHER EQUITABLE RELIEF IS NECESSARY AND APPROPRIATE

### A. The Need for an Asset Freeze

A court may order an asset freeze and an accounting to effectuate the purposes of the federal securities laws and to ensure that wrongdoers do not profit from their unlawful conduct. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103 (2nd Cir. 1972); SEC v. Drexel

Burnham Lambert, Inc., 837 F.Supp. 587, 613 (S.D.N.Y. 1993). Such relief is important because if defendants are able to dissipate or conceal their assets during the litigation, a final judgment ordering disgorgement or civil monetary penalties may be rendered meaningless. SEC v. Vaskevitch, 657 F.Sup. 312, 315 (S.D.N.Y. 1987). *See also* SEC v. Lauer, 52 F.3d 667, 699 (7th Cir. 1995) (affirming preliminary injunction "designed to freeze the defendants' assets with a view to eventual disbursement to the ultimate victim of the fraud").

Here, an asset freeze is necessary against defendants Bleidt and Allocation Plus Asset Management Company, Inc., to, among other things, prevent them from dissipating or concealing any remaining client funds and to ensure that their assets are available to satisfy an eventual judgment for disgorgement and/or a penalty. As indicated through defendant's Bleidt's own admissions, millions of dollars in investors' monies likely have been affected by his actions. Affording to those investors the maximum possible protection to preserve whatever assets might be available to make them whole is warranted here. Accordingly, the Court should adopt the relevant paragraphs of the Commission's proposed order.

### B.  The Need for an Accounting

To assess the scope of a fraud and trace a defendant's receipt of investor funds, courts often order defendants in a Commission enforcement action to provide an immediate accounting of all monies or property obtained as a result of the fraudulent activity, as well as their current assets or other resources. *See, e.g.*, SEC v. Manor Nursing, 458 F.2d at 1105; SEC v. Bremont, 954 F.Supp. 726, 733 (S.D.N.Y. 1997); SEC v. Oxford Capital Secs., Inc., 794 F.Supp. 104, 105-06 (S.D.N.Y. 1992). As the court stated in SEC v. Lybrand, an accounting is "appropriate to determine: (1) the amount of profits reaped from the allegedly illegal sales; (2) the present

location of such proceeds; and (3) these defendants' ability to repay." 2000 WL 913894, *12 (S.D.N.Y. July 6, 2000).

Here, an accounting is needed with respect to all defendants to determine the precise amount of investor funds which they obtained, the present location of those funds, and their ability to repay them. Accordingly, the Court should adopt the relevant paragraphs of the Commission's proposed order.

### C. The Need for an Order Preventing the Alteration or Destruction of Documents

The Commission seeks an order preventing defendants Bleidt and Allocation Plus Asset Management Company, Inc., and any of their agents from altering or destroying any documents. Given the serious nature of the violations in this case, such an order is warranted to protect the Commission's ability to prove its case and to obtain the relief sought. Accordingly, the Court should adopt the relevant paragraph of the Commission's proposed order.

### D. The Need for Expedited Discovery

The Commission requests permission to conduct expedited discovery, such as issuing subpoenas for bank records and taking depositions. Such discovery is appropriate so that the Commission can present a more complete evidentiary record to the Court at the hearing on its request for a preliminary injunction. Accordingly, the Court should adopt the relevant paragraph of the Commission's proposed order.

### E. Other Equitable Relief

The Commission also seeks other equitable relief, including appointment of a receiver for the likely future distribution of funds that have been embezzled or misappropriated by the defendants.

## CONCLUSION

For the foregoing reasons, the Commission requests that this Court issue a temporary restraining order, order freezing assets and order for other equitable relief in the form submitted herewith and, after further notice and a hearing, enter a preliminary injunction.

Respectfully submitted,

Walter R. Ricciardi
District Administrator

Silvestre A. Fontes (BBO# 627971)
Senior Trial Counsel

Philip Koski
Branch Chief

Lauchlan Wash
Enforcement Attorney

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
73 Tremont Street, Suite 600
Boston, MA  02108
(617) 573-8991 (Fontes)
(617) 573-8964 (Koski)
(617) 573-8996 (Wash)
(617) 424-5940          fax

Dated: November 12, 2004