UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

SECURITIES AND EXCHANGE COMMISSION, :
:
Plaintiff, :
:
v. : Case No. CA 04-12415-NG
:
BRADFORD C. BLEIDT and :
ALLOCATION PLUS ASSET MANAGEMENT :
COMPANY, INC. :
:
Defendants. :
:

---

## MEMORANDUM IN SUPPORT OF FLEET NATIONAL BANK'S MOTION FOR RELIEF FROM THE STAY AND/OR INJUNCTION PROVISIONS OF THIS COURT'S PRIOR ORDER

### I. INTRODUCTION

Fleet National Bank, a successor to the First National Bank of Boston ("Bank"), requests relief from the stay and/or injunction provisions of this Court's prior Order to permit Bank to exercise its state law rights and remedies with respect to certain monies on deposit in Financial Perspectives Planning Services, Inc's. ("FPP") accounts bearing account numbers 0050292819 and 0055247296, and certain monies on deposit in Allocation Plus Asset Management Company, Inc's ("Allocation") account numbered 0055247377 (hereinafter collectively referred to as "Accounts") at the Bank, including without limitation, the right to set-off the monies in the Accounts against and thus reduce the indebtedness due from FPP and Allocation to Bank.

## II. BACKGROUND

### FPP'S LOAN FROM BANK

On March 11, 1999, FPP executed and delivered to Bank a Business Focus Loan Agreement, as approved and acknowledged thereafter (collectively "Loan Agreement"). A copy of the Loan Agreement is attached hereto as Exhibit A. The indebtedness under the Loan Agreement is payable on Bank's demand. To secure its obligations to Bank, FPP granted to Bank a security interest covering its business assets, including its accounts. See § 9 of Loan Agreement.[1]

As of December 6, 2004, the monies on deposit in FPP's two (2) accounts at Bank total $89,846.66. The current balance of the indebtedness due and owing to Bank from FPP under the Loan Agreement as of December 8, 2004 is $99,932.46. The indebtedness consists of $99,287.10 in unpaid principal and $645.36 in unpaid interest. In addition, interest continues to accrue on the unpaid principal balance of the indebtedness from and after December 8, 2004 at the rate of $16.32 per day.

### ALLOCATION'S LOAN FROM BANK

On November 4, 1996, Allocation executed and delivered to Bank a Business Focus Promissory Note in the original principal amount of $35,000, as modified thereafter (collectively "Note"). A copy of the Note is attached hereto as Exhibit C. To secure its obligations to Bank, Allocation granted to Bank a security interest covering its business assets, including its accounts. See p.1 Note.[2]

---

[1] A copy of Bank's UCC Financing Statements filed with the Secretary of the Commonwealth of Massachusetts is attached hereto as Exhibit B.

[2] A copy of the Bank's UCC Financing Statements filed with the Secretary of the Commonwealth of Massachusetts is attached hereto as Exhibit D.

As of December 6, 2004, the monies on deposit in Allocation's account at Bank total $4,863.00. The current balance due to Bank under the Note as of December 8, 2004 is $35,269.55. The indebtedness consists of $35,000 in unpaid principal and $269.55 in unpaid interest. In addition, interest continues to accrue on the unpaid principal balance of the indebtedness from and after December 8, 2004 at the rate of $6.80 per day.

Securities and Exchange Commission ("SEC")

On or about November 12, 2004, SEC filed a Complaint for Injunctive and Other Relief ("Complaint"), and thereafter requested this Court, inter alia, appoint a Receiver for Allocation. In the Complaint, the SEC asserts that Defendant Bleidt admits to having defrauded clients of out of millions of dollars and diverted investor funds into a personal account at Sovereign Bank. See Complaint. On November 22, 2004, an Order was entered granting SEC's motion to appoint a receiver for Allocation. Consequently, events of default exist under the Note. This Court by prior Order has effectively frozen all of the assets of FPP and Allocation (hereinafter collectively at times referred to as "Debtors"), and thus has effectively stayed or enjoined the Bank's ability to exercise its right to set-off. Bank seeks permission to make demand and exercise its right to set-off, applying the monies on deposit in the Accounts at Bank against the respective indebtedness due Bank from the Debtors.

III. DISCUSSION

On November 22, 2004, this Court appointed a Receiver for Allocation, at the SEC's request and based on the SEC's reliance upon federal case law. The case law, however, concerning federal receiverships does not specifically address the procedures

by which a bank may seek relief from the injunction provisions of this Court's Order so that it may exercise its right of setoff.

First, it is important to note that the Bank's right of set-off stems from the long standing principle that general deposits become the absolute property of the bank, whereby the bank becomes a debtor to the depositor in the amount of the deposit. Forastiere v. Springfield Institution for Savings, 20 N.E.2d 950 (Mass. 1939). Historically, Massachusetts common law has recognized that a bank is entitled to set-off money on deposit to satisfy a debt that a depositor owes to the bank. Laighton v. Brookline Trust Co., 225 Mass. 458, 458-60 (1917); National Mahaiwe Bank v. Peck, 127 Mass. 298, 300-01 (1879). The Massachusetts Courts have long found that the monies held by a bank in an account does not belong to the debtor, but is the absolute property of the bank. See Id.

In fact, in federal bankruptcy proceedings the United States Supreme Court has recognized that the right of setoff allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "'the absurdity of making A pay B when B owes A.'" Citizens Bank v. Strumpf, 516 U.S. 16, 18 (U.S. 1995) (quoting Studley v. Boylston Nat. Bank, 229 U.S. 523, 528 (1913)). Consequently, even the filing of a federal bankruptcy petition does not sever a party's right to setoff which otherwise existed prior to the bankruptcy proceeding, but rather the right of setoff is preserved in bankruptcy. Citizens Bank, 516 U.S. at 18 (U.S. 1995). See also Inre Anton, 146 B.R. 509, 514 (E.D.N.Y.) (rule permitting a bank to setoff debtor's account against its claim is not one which a court is free to ignore when it thinks the application is unjust). Thus, federal courts, as well as the Massachusetts Courts have construed the obligations of the

4

bank and the depositor as nothing more than a debtor – creditor relationship in which the bank has a promise to pay to the debtor and has recognized the bank's right of setoff in connection therewith. See also Citizens Bank, 516 U.S. at 18 (citing Bank of Marin v. England, 385 U.S. 99, 101 (1966)).

Here, it is undisputed that prior to the receivership proceeding, Bank had the right under Massachusetts law to set off the monies in the Accounts against the indebtedness due Bank. Both Massachusetts law and federal bankruptcy law support this Court's granting the Bank's motion for relief from the stay and/or injunction provisions of this Court's prior order.

In addition to the principles under Massachusetts state law and federal insolvency law which support the Bank's motion, the United States Court of Appeals for Ninth Circuit has applied a test deciding a creditor's (albeit not a creditor with a right of setoff) motion for relief from the stay in a federal receivership proceeding. See, e.g., SEC v. Wencke, 742 F.2d 1230, 1231 (9th Cir. 1984) (citing SEC v. Wencke, 622 F.2d 1363, 1373-74 (9th Cir. 1980)). The Wencke test simply is a balancing test, requiring the district court to balance the interests of the Receiver and the moving party in connection with the relief sought, including (i) whether refusing to lift the stay preserves the status quo or whether the moving party will suffer substantial injury, (ii) the time in the course of the receivership of the movant's request and (ii) the merit of the moving party's claim. Wencke I, 622 F.2d at 1373.

Assuming, arguendo, that this Court were to apply the balancing test in Wencke to the case at bar, the test weighs in favor of granting the Bank's motion for relief. The interests of the Bank are straightforward – the Bank has a right to setoff the money held

in the Debtors' Accounts, and is owed a debt from the Debtors. The Bank merely seeks to exercise its right to reduce the debt due it, and thus the Bank's underlying claim is meritorious. If Bank's motion is denied, Bank will be precluded from recovering the amount due to it and will suffer substantial injury.

The interests of the Receiver are primarily to protect the general public and investors from additional harm perpetrated by the Defendants and to secure and oversee the investments managed by Defendants. Presumably, the Receiver, inter alia, froze the Debtors' Accounts in order to prevent the Defendants from misappropriating any of the monies contained therein and to preserve the assets of the receivership estate for the benefit of the creditors. Continuance of the stay and the denial of Bank's motion would damage both the creditor - Bank and the receivership estate as the outstanding indebtedness of the receivership estate to Bank continues to increase each day as interest continues to accrue on the unpaid principal balance of the indebtedness. Rather, the receivership estate's liabilities to the Bank should be immediately reduced by the application of funds on deposit at the Bank and thus the timing of the motion underscores the need to grant same.

Thus, whether this Court applies the Wencke test, looks to the United States Bankruptcy Code for guidance or any other equitable principles, this Court should resolve the motion in favor of the Bank. This Court should permit Bank to exercise its rights and remedies to, inter alia, exercise its right of setoff and apply the monies or deposit in the Accounts against the indebtedness due Bank from the Debtors and reduce the liabilities of the receivership estate and the rate by which those liabilities continue to increase.

## IV. CONCLUSION

For the reasons and authorities previously set forth, Bank respectfully requests that this Court enter an Order granting Bank relief from the stay.

FLEET NATIONAL BANK
By its Attorneys,

Richard L. Gemma, Esq. #553880
MacADAMS & WIECK INCORPORATED
101 Dyer Street, Suite 400
Providence, RI 02903
(401) 454-8700
(401) 454-8755
Dated: 12/14/04

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the within was forwarded via certified mail to the following on this 14th day of December, 2004:

Silvestre A. Fontes, Esq.
Walter G. Ricciardi, Esq.
Michele T. Perillo, Esq.
Securities and Exchange Commission
73 Tremont Street, 6th F;loor, Suite 600
Boston, MA 02108
E-mail: fontess@sec.gov
***Counsel for Plaintiff***

David A. Vicinanzo, Esq.
Nixon, Peabody, LLP
100 Summer Street
Boston, MA 02110
E-mail: dvicinanzo@nixonpeabody.com
***Court Appointed Receiver***

Robert L. Hamer, Esq.
William S. Rogers, Jr., Esq.
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
***Copunsel for Winslow, Evans & Crocker***

Bradford C. Bleidt
26 Proctor Street
Manchester, MA 01944

G:\Fleet National Bank\Financial Perspectives\Pleadings\Memo in Supp. of Mot. for Relief from Stay 120704.doc

# BUSINESS FOCUS CREDIT APPLICATION AND LOAN AGREEMENT


**BankBoston**
*Business Focus*

**Business Focus Credit Request**
*Complete for all requests.*

*(handwritten margin note: "PERSONAL CREDIT PLEASE FAX BOTH ACCTS")*

**I / My Business Would Like To Apply For:**

| | FILL OUT SECTIONS | IF NEW, AMNT. REQUESTED | IF INCREASE, ADD'L AMNT. REQUESTED | EXISTING ACCOUNT # |
|---|---|---|---|---|
| [X] Reserve Credit (Overdraft Line) Business Focus Checking # _____ | 1 | | $ | RECEIVED JUN 1 1999 By ___ |
| [ ] Visa™ (Maximum $50,000) | 1 AND 2 | $ | $ | |
| [X] Line (Maximum $250,000) | 1 AND 3 | $250,000 | $ | |
| [ ] Installment Loan (Maximum $250,000) Rate: [ ] Variable [ ] Fixed Term: ___ Months | 1 AND 3 | $ | $ | |
| [ ] Mortgage (Owner Occupied) (Maximum $250,000) Rate: [ ] Variable [ ] Fixed Term: ___ Years | 1 AND 3 | $ | $ | |
| [ ] Letter Of Credit (Maximum $500,000) | 1 AND 3 | $ | $ | |

[X] Please charge my monthly payment to my BankBoston Business Focus Checking # **502 92819**

## 1. Business Information
*Complete for all requests.*

*(handwritten margin note: "* 25%")*

**BUSINESS NAME:** Financial Perspectives   **D/B/A NAME (If Different):**
**BUSINESS ADDRESS (Not a P.O. Box):** 164 Canal St   **CITY:** Boston   **STATE:** MA   **ZIP:** 02111
**BUSINESS PHONE:** (617) 723-1400   **TAX ID NUMBER:** 04-2912038   **DESCRIPTION OF BUSINESS:** Financial Planning
**ANNUAL SALES:** $3,600,000   **NUMBER OF EMPLOYEES:** 35   **DATE ESTABLISHED (Mo/Yr):** 1986   **CURRENT OWNERSHIP SINCE (Mo/Yr):** 1986

**TYPE OF BUSINESS:**
[ ] Proprietorship  [ ] S. Corp.  [ ] Not for Profit
[ ] Partnership  [X] C. Corp.  [ ] Other _____

- Are you or your business party to any claim or lawsuit? [ ] Yes [X] No
- Are your payroll, federal, state and property taxes past due? [ ] Yes [X] No
- Have you or your business ever declared bankruptcy? [ ] Yes [X] No

If yes to any, please attach an explanation.

| FINANCIAL INSTITUTION | CHECKING ACCOUNT # | CHECKING BALANCE | SAVINGS/MONEY MARKET ACCOUNT # | SAVINGS/MONEY MARKET BALANCE | AMOUNT OF LOAN | MONTHLY PAYMENT |
|---|---|---|---|---|---|---|
| BankBoston | 502 92819 | $ | | $ | $ | $ |
| " | 5524 7296 | $ | | $ | $ | $ |
| | | $ | | $ | $ | $ |

Note: If more than two Owners, please list the additional Owners separately.

**(OPTIONAL-CHECK ONE) OWNER #1 NAME:** [X] Mr [ ] Mrs [ ] Miss [ ] Ms  **Bradford Bleidt**   **SOCIAL SECURITY NUMBER:** 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   **HOME PHONE NUMBER:** (978) 526-47__
**HOME ADDRESS:** 8 Vine St, Manchester   **CITY:** Manchester   **STATE:** MA   **ZIP:** 01944   **% BUSINESS OWNERS:** 98%
**ANNUAL PERSONAL INCOME:** $350,000   **PERSONAL ASSETS:** $1,000,000+   **PERSONAL LIABILITIES:** $50,000   **MONTHLY HOUSING PAYMENT:** $~~10,000~~ 800   **DO YOU?** [X] RENT [ ] OWN

**(OPTIONAL-CHECK ONE) OWNER #2 NAME:** [ ] Mr [ ] Mrs [ ] Miss [ ] Ms  N/A   **SOCIAL SECURITY NUMBER:**   **HOME PHONE NUMBER:** ( )
**HOME ADDRESS:**    **CITY:**    **STATE:**    **ZIP:**    **% BUSINESS OWNERS:** %
**ANNUAL PERSONAL INCOME:** $   **PERSONAL ASSETS:** $   **PERSONAL LIABILITIES:** $   **MONTHLY HOUSING PAYMENT:** $   **DO YOU?** [ ] RENT [ ] OWN

\* Income from alimony, child support or separate maintenance need not be disclosed unless you want this income considered in our credit decision.
\*\* List only one monthly housing payment if both Owners occupy the same dwelling. Include principal, interest, and taxes or rent.

## 2. Visa® Information
*Complete for VISA requests.*

**OWNER #1 MOTHER'S MAIDEN NAME** (Required for security purposes for all Visa requests.)   **OWNER #1 CARD LIMIT:** $
**OWNER #2 MOTHER'S MAIDEN NAME** (Required for security purposes for all Visa requests.)   **OWNER #2 CARD LIMIT:** $

**Additional Visa® Cardholders** If more than two cardholders, please list additional cardholder information separately.

**CARDHOLDER #1 NAME:**   **HOME PHONE NUMBER:** ( )   **SOCIAL SECURITY NUMBER:**
**ADDRESS:**   **CITY:**   **STATE:**   **ZIP:**   **INDIVIDUAL CARD LIMIT:** $

**CARDHOLDER #2 NAME:**   **HOME PHONE NUMBER:** ( )   **SOCIAL SECURITY NUMBER:**
**ADDRESS:**   **CITY:**   **STATE:**   **ZIP:**   **INDIVIDUAL CARD LIMIT:** $

\*The sum of individual card limits cannot exceed the total VISA® credit limit requested.

[ ] Please send a consolidated bill to my business and individual statements to each cardholder. OR [ ] Please send a consolidated bill to my business.

## 3. Line, Installment Loan, Mortgage, Letter of Credit Information
*Complete for Line, Installment Loan, Mortgage and Letter of Credit requests.*

NOTE: THE BANK MAY APPROVE LINES AND INSTALLMENT LOANS LESS THAN $100,000 ON EITHER A SECURED OR UNSECURED BASIS. ALL LOANS GREATER THAN $100,000 WILL BE SECURED.

[ ] If the purpose of your loan is to purchase equipment, please provide description and purchase price of equipment.

[ ] If the purpose of your loan is to purchase real estate, please provide address and value of real estate.

[ ] If your loan is secured by cash or marketable securities, please attach a list of cash and securities and a copy of any statements and certificates.

Please provide financial information as of your business' most recent fiscal year end.

| CASH | ACCOUNTS RECEIVABLE | INVENTORY | MACHINERY/EQUIPMENT | TOTAL ASSETS |
|---|---|---|---|---|
| $10,584.11 | $338,125 | $ — | $167,470.58 | $635,905 |

| ACCOUNTS PAYABLE | TOTAL LIABILITIES | ANNUAL INTEREST EXPENSE | NET INCOME | DATE OF FINC'L INFO |
|---|---|---|---|---|
| $66,860 | $755,499 | $13,017 | $(92,628) | 12/31/9_ |

| Owner 1 PERSONAL ASSETS | TOTAL (Rounded to $1,000) | JOINT (Y/N) | PERSONAL LIABILITIES | TOTAL (Rounded to $1,000) | JOINT (Y/N) |
|---|---|---|---|---|---|
| Cash and Cash Equivalents | $ | | Mortgages | $ | |

# BUSINESS FOCUS APPLICATION AGREEMENT

By signing below, I certify to BankBoston, N.A. (the "Bank") and agree, both personally and for the Business described in this Application, to all of the te and conditions of this Application Agreement:

1. **BUSINESS AUTHORITY.** I am authorized to act on behalf of the Business described in this Application. This authority has been granted to me by the Business under the by-laws, organizing agreement, general resolutions or other governing authority of the Business.

2. **BANK'S AUTHORITY TO OBTAIN AND DISCLOSE INFORMATION.** I authorize the Bank to release to third parties (including credit reporting agencies) all financial and other relevant information on the Business, its owners, principals and guarantors. The Bank may seek information or references on the Business, its owners, principals and guarantors from other parties without advising the affected parties. The information sought by the Bank may include tax returns and reports from credit reporting agencies. All information contained in the Application or otherwise obtained by the Bank may be kept by the Bank even if the Application is not approved. If the Application is not approved, the Bank may advise the Business or any owner, principal or guarantor of the Business of the reason that the Bank denied the Application.

3. **APPLICATION TRUE AND COMPLETE.** The information that I am providing to the Bank is true and complete and accurately discloses the financial condition of the Business. I agree to advise the Bank of any significant changes in any of the information that I have provided.

4. **COMMERCIAL PURPOSE OF CREDIT.** The Business is applying for a commercial credit facility. No proceeds of any such facility may be used for any personal, family or household purposes.

5. **CREDIT APPROVAL.** The Bank will advise the Business if the credit facility is approved or denied. The Business is applying for the requested amount or such lesser amount of credit as the Bank may approve. (In the case of Business Focus Reserve Credit the Business is applying for such amount as the Bank may approve.)

6. **RIGHT TO DECLINE.** The Business may decline any credit facility approved by the Bank by notifying the Bank in the time and manner specified in the approval letter. If the Business does not decline an approved credit facility in the time and manner specified in the approval letter or if the Business uses the credit facility, the Business will be deemed to have accepted the provisions of the approval letter.

7. **PROMISE TO PAY.** The Business unconditionally promises to pay to the Bank any and all obligations which arise in connection with any credit facilities made available to the Business by the Bank. Such payments shall be made at the times and in the manner as provided in the agreements relating to such credit facilities. Amounts drawn by the Business under a Business Focus Line are payable on demand.

8. **OTHER AGREEMENTS RELATING TO CREDIT FACILITIES.** The Business will also be bound to all of the other terms and conditions of standard agreements and approval letters which relate to the credit facilities. The Bank will give the relevant agreements to the Business at the time the credit facility is approved. Unless the approval letter states otherwise, the Business will not be required to sign these agreements.

9. **COLLATERAL. The Business hereby unconditionally grants to the Bank a first priority lien and security interest in all personal property of the Business** including, without limitation, all goods (including equipment, inventory and fixtures), accounts, instruments, documents, letters of credit, chattel paper, marketable securities and other such investment property, ge intangibles, tort claims, insurance claims and deposit accounts (excluding Keogh, payroll and trust accounts), wherever located and whether now ow or hereafter acquired or arising, and in any and all proceeds of any of the foregoing. The collateral described shall secure all existing and future obligations of the Business to the Bank. The Bank will have the rights and remedies described in its agreements with the Business, which include the and remedies of a secured party under applicable law. **This grant of a secur interest will be ineffective for any credit facility approved by the Bank as t which Bank does not require collateral as specified in the approval letter.** T grant will also be ineffective if the Bank denies the Business' application fc credit.

10. **LIMITED POWER OF ATTORNEY. The Business hereby appoints Bank and any officer of the Bank, and each of them, to be the attorney-in-fact of the Business** upon approval and acceptance of the cred facility to execute any financing statements in the name of the Business, an such statements in any appropriate recording offices and to execute and file amendments to such financing statements and any other instruments that m necessary or appropriate to perfect or protect the Bank's security interest.

11. **FEES; PROCESSING FEES.** The Business is required to pay certain fe the Bank in connection with the credit facilities. These fees are described in Schedule of Fees which the Bank has provided or will provide to the Busin The "Processing Fees" described in the Schedule of Fees will be due and payable by the Business if the Bank APPROVES a credit facility requiring Processing Fee and, if the approval letter so provides, if the Business does decline the credit facility as specified in the approval letter.

12. **DEMAND DEPOSIT ACCOUNTS.** If a Business Focus Line or a Busir Focus Reserve Credit has been requested in this Application, the Business have a Business Focus Checking Plan in order to access these facilities. Cc fees associated with other credit facilities may be reduced if the Business h Business Focus Checking Plan or other Demand Deposit Account ("DDA Account") with the Bank. This reduction in fees is explained in the Schedu Fees.

13. **AUTOMATIC DEDUCTIONS. I hereby authorize the Bank to deduc automatically from the DDA Account maintained by the Business at th Bank (except for any IRA, Keogh, payroll or trust account) any and all regular payment obligations or fees due and owing by the Business in connection with the credit facilities.** The Business will keep sufficient fu in the DDA Account to enable the Bank to deduct the full amount of all reg payments and fees when due. The Business may revoke this authorization b notifying the Bank as specified by the Bank in its approval letter. This authorization may also be revoked at any time in the future. If the Business revokes the Bank's authority to deduct payments, the Business may be requ to pay a higher rate of interest or higher fees as described in the agreement applicable to the particular credit facility. Automatic deduction may not be available for all credit facilities.

14. **FACSIMILE COPIES ENFORCEABLE.** The Business agrees that the Bank may rely on a facsimile of this signed Application Agreement and on other signed documents received by the Bank by facsimile transmission regarding any credit facility made available to the Business pursuant to this Application. Such facsimiles or any copy of such facsimiles shall be bindin; the Business and shall for all purposes be considered original documents.

| SIGNATURE OF AUTHORIZED OFFICER/AGENT OF THE BUSINESS | | |
|---|---|---|
| LEGAL NAME OF BUSINESS: Financial Perspectives | | (Under $ |
| BY [signature] | TITLE CEO | DATE 3/11/99 |

# UNCONDITIONAL CONTINUING GUARANTY

If the Business is a corporation (other than a professional corporation), a partnership or a limited liability company, each owner, partner or member must sign below as a guara If the Business is a non-profit corporation, one or more directors or officers must sign below as a guarantor.

I, jointly and severally with all others signing below, unconditionally guarantee performance and payment when due of all obligations of the Business to the Bank

I agree to pay the Bank's costs and attorneys' fees in enforcing this guaranty. I a to furnish to the Bank additional financial information as the Bank may

```
For Rush Service FAX to: BankBoston Business S. 1-781-251-9263
Date Faxed:  9/29/99        Total Pages:  1
Faxed By:  Brad Bleidt      Phone #: 617-723-1400 x252
```

BankBoston, N.A.
100 Federal Street
Boston, Massachusetts 02110

Hard Copy mailed

OLN 101 1163
      6032

**BankBoston**

Bradford Bleidt, CEO
Financial Perspectives Planning Services, Inc.
164 Canal Street
Boston MA 02114-

Dear Bradford Bleidt, CEO:                                         September 27, 1999

I am pleased to inform you that your application for a Business Focus Line has been approved[1] on a Secured basis for $100,000.00 with a variable Annual Percentage Rate of Base + 1.00% (Currently 9.25%).

Please take a few moments to review this letter and the enclosed Business Focus Credit Facility Agreement (the "Agreement"), which together with your application set forth the complete terms of your Business Focus Line. Please sign this letter in the space indicated below and return it in the envelope we have enclosed for your convenience. For Rush Service, after you sign this acceptance, fax it directly to BankBoston Business Services - using the pre-addressed fax information provided for you at the top of this page.

Once we receive this signed letter, we will:

* file financing statements or other documents with recording offices that will give notice to third parties of the bank's lien on all assets of the business (if secured);
* deduct necessary fee(s) from your checking account or from the loan proceeds, and
* Set up your line of credit! You will automatically be sent advance forms which you can use to draw down your line. If you would like an advance before you receive these forms, please call us at 781-320-2222 and we will be happy to handle this for you.

If after reviewing this letter and the Agreement, you do not wish to accept the credit, please let us know by calling 1-888-301-3356. Unfortunately, if we do not hear from you within 90 days of the issuance of this letter, this approval will cease to be valid and we will consider your request for credit withdrawn.

**Thank you for choosing BankBoston**
We are committed to offering a wide range of Business Focus products to enable you to build the Banking Plan that best fits the needs of Financial Perspectives Planning Services, Inc., from checking and savings accounts with convenient access options, to credit services and cash management. We focus on your banking to let you focus on the most important job of all - making your business a success! If you have any questions about your Business Focus Banking Plan, please call us at 1-888-BKB-FOCUS (1-888-252-3628).

Sincerely                                  Acknowledged/Accepted:

*[signature]*                              *[signature]*                    Date: 9/29/99

Charles M. Petersen, Director                                               Date:
Small Business Lending Center                                               Date:

*All owner(s)/partners(s) signatures are required.*

[1] Approval is subject to receipt of a satisfactory business registration check and if secured, perfection of a first lien on all assets.

STATE OF MASSACHUSETTS

| Financial Perspectives Planning Services, Inc.<br>164 Canal Street<br>Boston, MA 02114 | The First National Bank of Boston<br>P.O. Box 1391<br>Mail Stop 74-02-05M<br>Boston, MA 02104-9904 | 402959 | 96 JUL 12 AM 10: |

All Inventory, Chattel Paper, Accounts, Equipment, general Intangibles and Fixtures; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

This Financing Statement is to be recorded in the real estate records. Some or all of the collateral is located on the following described real estate: 164 Canal Street, Boston, Suffolk County, MA.

Bradford Bleidt, President

The First National Bank of Boston

**EXHIBIT B**

MA SOC   Filing Number: 200100902370   Date: 3/23/01 4:02:00 PM



## STANDARD FORM UNIFORM COMMERCIAL CODE
## STATEMENTS OF CONTINUATION PARTIAL RELEASE, ASSIGNMENT, ETC. – FORM UCC-3

INSTRUCTIONS:
1. PLEASE TYPE this form. Fold only along perforation for mailing.
2. Remove Secured Party and Debtor copies and send other 3 copies with interleaved carbon paper to the filing officer.
3. Enclose filing fee(s), and fill in original Financing Statement number and date filed.
4. If the space provided for any item(s) on the form is inadequate the item(s) should be continued on additional sheets, preferably 5" X 8" or 8" X 10". Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of Form UCC-3. Long schedules of collateral, etc., may be on any size paper that is convenient for the secured party. Indicate the number of additional sheets attached.
5. If collateral is crops or goods which are or are to become fixtures, describe generally the real estate and give name of record owner.
6. At the time of filing, filing officer will return third copy as an acknowledgement.

| This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code: | 3. Maturity date (if any): |
|---|---|
| 1. Debtor(s) (Last Name First) and address(es)<br>FINANCIAL PERSPECTIVES PLANNING SERVICES, INC.<br>154 CANAL STREET<br>BOSTON, MA 02114 | 2. Secured Party(ies) and address(es)<br>THE FIRST NATIONAL BANK OF BOSTON<br>P.O. BOX 1391 74-02-05M<br>BOSTON, MA 02104-9904 | For Filing Officer (Date, Time and Filing Office) |

4. This statement refers to original Financing Statement bearing File No. __402959__
Filed with __MA, "CENTRAL"__ Date Filed __07/12/1996__ 19___

5. ☐ Continuation. The original financing statement between the foregoing Debtor and Secured Party, bearing file number shown above, is still effective.
6. ☐ Termination. Secured party no longer claims a security interest under the financing statement bearing file number shown above.
7. ☒ Assignment. The secured party's right under the financing statement bearing file number shown above to the property described in Item 10 have been assigned to the assignee whose name and address appears in Item 10.
8. ☐ Amendment. Financing Statement bearing file number shown above is amended as set forth in Item
9. ☐ Release. Secured Party releases the collateral described in Item 10 from the financing statement bearing file number shown above.

10.
Assign To: FLEET NATIONAL BANK
100 FEDERAL STREET CT/EH/4151/MT
BOSTON, MA 02110

FULL ASSIGNMENT-ASSIGN ALL collateral per original UCC 1

Return To: Intercounty Clearance Corp.
111 Washington Avenue, Albany, NY 12210   3-14

0031061930/56/81300/LV/03/09/01 D0594201 30276/#171   No. of additional Sheets presented:

FINANCIAL PERSPECTIVES PLANNING SERVICES, INC.

THE FIRST NATIONAL BANK OF BOSTON
NANCY WOOD, B.O.

By: _____
Signature(s) of Debtor(s) (necessary only if Item 8 is applicable).

By: _Nancy Wood_ 3/12/01
Signature(s) of Secured Party(ies)

STANDARD FORM – FORM UCC-3
(1) FILING OFFICER COPY ALPHABETICAL

922-38-12931

MA SOC   Filing Number: 200100902640   Date: 3/23/01 4:03:00 PM





### STANDARD FORM UNIFORM COMMERCIAL CODE
### STATEMENTS OF CONTINUATION PARTIAL RELEASE, ASSIGNMENT, ETC. - FORM UCC-3

INSTRUCTIONS:

1. PLEASE TYPE this form. Fold only along perforation for mailing.
2. Remove Secured Party and Debtor copies and send other 3 copies with interleaved carbon paper to the filing officer.
3. Enclose filing fee(s), and fill in original Financing Statement number and date filed.
4. If the space provided for any item(s) on the form is inadequate the item(s) should be continued on additional sheets, preferably 5" X 8" or 8" X 10". Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of Form UCC-3. Long schedules of collateral, etc., may be on any size paper that is convenient for the secured party. Indicate the number of additional sheets attached.
5. If collateral is crops or goods which are or are to become fixtures, describe generally the real estate and give name of record owner.
6. At the time of filing, filing officer will return third copy as an acknowledgement.

| This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code: | | 3. Maturity date (if any) |
|---|---|---|
| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | For Filing Officer (Date, Time and Filing Office) |
| FINANCIAL PERSPECTIVES PLANNING SERVICES, INC. 164 CANAL STREET BOSTON, MA 02114 | FLEET NATIONAL BANK 100 FEDERAL STREET CT/EH/4151/MT BOSTON, MA 02110 | |

4. This statement refers to original Financing Statement bearing File No. __402959__

Filed with __MA, "CENTRAL"__  Date Filed __07/12/1996__ 19___

5. ☑ Continuation. The original financing statement between the foregoing Debtor and Secured Party, bearing file number shown above, is still effective.
6. ☐ Termination. Secured party no longer claims a security interest under the financing statement bearing file number shown above.
7. ☐ Assignment. The secured party's right under the financing statement bearing file number shown above to the property described in Item 10 have been assigned to the assignee whose name and address appears in Item 10.
8. ☐ Amendment. Financing Statement bearing file number shown above is amended as set forth in Item 10.
9. ☐ Release. Secured Party releases the collateral described in Item 10 from the financing statement bearing file number shown above.

10.

**FILE 2ND**

Return To: Intercounty Clearance Corp.
111 Washington Avenue, Albany, NY 12210

0031061930/56/81300/LV/03/09/01 D0594501 30276 / #171    No. of additional Sheets presented: (2)  3-14

| FINANCIAL PERSPECTIVES PLANNING SERVICES, INC. | FLEET NATIONAL BANK NANCY WOOD, B.O. |
|---|---|
| By: _____ Signature(s) of Debtor(s) (necessary only if Item 8 is applicable). | By: _Nancy Wood_  3/12/01 Signature(s) of Secured Party(ies) |

STANDARD FORM - FORM UCC-3

(1) FILING OFFICER COPY ALPHABETICAL

922-39-12932

56-003106777D-18
CLN 102
694D

# BUSINESS FOCUS PROMISSORY NOTE

#62414

62414

| Borrower: | Allocation Plus Asset Management Company, Inc.<br>164 Canal Street, Suite 500<br>Boston, MA 02114 | Lender: | THE FIRST NATIONAL BANK OF BOSTON<br>100 FEDERAL STREET<br>BOSTON, MA 02110 |
|---|---|---|---|

**Principal Amount:** $35,000.00     **Initial Rate:** 10.250%     **Date of Note:** Nov. 4, 1996

**PROMISE TO PAY.** Allocation Plus Asset Management Company, Inc. ("Borrower") promises to pay to THE FIRST NATIONAL BANK OF BOSTON ("Lender"), or order, in lawful money of the United States of America, the principal amount of Thirty Five Thousand & 00/100 Dollars ($35,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on October 31, 1997. In addition, Borrower will pay regular monthly payments of accrued unpaid interest beginning December 5, 1996, and all subsequent interest payments are due on the same day of each month after that. Interest on this Note is computed on a 365/360 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs and any late charges, then to any unpaid interest, and any remaining amount to principal.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the The First National Bank of Boston's Base Rate, which is the per annum rate of interest announced from time to time by the Lender at its Head Office as its Base Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each time the Base Rate changes. The Index currently is 8.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.000 percentage points over the Index, resulting in an initial rate of 10.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, they will reduce the principal balance due.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the Related Documents. (d) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect either now or at the time made or furnished. (e) Borrower becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (f) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (g) Any guarantor dies or any of the other events described in this default section occurs with respect to any guarantor of this Note. (h) A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired. (i) Lender in good faith deems itself insecure.

If any default, other than a default in payment, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no event of default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (a) cures the default within fifteen (15) days; or (b) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, do one or both of the following: (a) increase the variable interest rate on this Note to 18.000% per annum, and (b) add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note (including any increased rate). The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the Commonwealth of Massachusetts. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SUFFOLK County, the Commonwealth of Massachusetts. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested orally by Borrower or by an authorized person. All oral requests shall be confirmed in writing on the day of the request. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following party or parties are authorized to request advances under the line of credit until Lender receives from Borrower at Lender's address shown above written notice of revocation of their authority: Bradford C. Bieldt, President; and Kevin Stoddard. Borrower agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obli this Note if: (a) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or a

**EXHIBIT C**

including any agreement made in connection with the signing of this Note; (b) Borrower or any guarantor ceases doing business or is insolvent; (c) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (d) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (e) Lender in good faith deems itself insecure under this Note or any other agreement between Lender and Borrower.

ADDITIONAL TERMS. Borrower agrees that the following events, in addition to the events described in this Note, shall also constitute a default under this Note: (i) if any default as described in the Note occurs with respect to a Grantor of collateral pledged as security for this Note; (ii) there is a default in any obligation owed to an affiliate of Lender and, for purposes of this Note, an affiliate shall mean any legal entity under the control of Lender or under common control with Lender; (iii) Lender receives any adverse credit information or rating concerning Borrower or any Guarantor of the Note; and (iv) there is any material overdraft, or series of overdrafts, in any demand deposit account of Borrower or any Guarantor of the Note. Upon any default in connection with a proceeding under any bankruptcy or Insolvency laws involving Borrower, any Guarantor or any Grantor of collateral securing this Note, the entire unpaid principal balance on this Note and all accrued unpaid interest shall be immediately due and payable without notice and without any declaration by Lender and shall thereafter bear interest until paid as provided in the Note.

Borrower further agrees: (i) to furnish such additional information and statements, balance sheets and income statements, lists of assets and liabilities, agings of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Borrower's financial condition and business operations as Lender may request from time to time; (ii) that Lender is authorized to release and disclose to its affiliates, subsidiaries, servicing agents and contractors, copies of originals of any and all financial records, including, without limitation, statements, notices, financial and operating reports, balance sheets, financial statements, consultants' reports and all other documents and information relating to Borrower, now or hereafter provided to, or generated by, Lender in connection with any loan transaction now or hereafter existing; (iii) that the entries on the books and records of Lender, including any appearing on this Note, shall be, absent manifest error, prima facie evidence of the aggregate amount of principal and accrued interest from time to time outstanding under this Note; (iv) that all financial statements furnished to Lender fairly and accurately disclose Borrower's financial condition as of the date of the statements; and (v) that the proceeds of the loan will be used solely for business or commercial purposes.

Notwithstanding any provisions of this Note or of any of the Related Documents, Borrower shall be required to repay all outstanding amounts of principal and accrued interest under this Note which may not be borrowed or reborrowed for 30 consecutive days, at least once during each consecutive 12 month period during the term of this Note commencing on the date of this Note. During any such period, the terms and conditions of this Note and the related agreements shall remain in full force and effect.

EXTENSIONS. Notwithstanding the due date of October 31, 1997 for payment of all outstanding principal and all unpaid accrued interest (the "Due Date") as set forth above, Lender may, at its sole discretion, extend the date for such payment. Any extension shall be in writing, signed by the Lender and forwarded to Borrower at least five business days before the Due Date set forth above or any extended Due Date allowed by Lender. In the absence of such notice from Lender, all outstanding principal and unpaid accrued interest shall be due and payable on the Due Date set forth in the Note or on the extended Due Date contained in the last written notice from Lender. The effectiveness of any extension of the Due Date is conditioned on Borrower's representation and warranty that (i) the representations and warranties made to Lender in this Note and the other agreements executed in connection therewith or otherwise made to Lender will be true and correct as of the date of the extension, and (ii) no Event of Default under this Note or any agreement executed in connection with this Note will have occurred and be continuing prior to such extension. The extension shall also be subject to the timely payment of Borrower of any fees that may be applicable in connection with the extension. In the event of an extension of the Due Date by Lender, Borrower agrees: (i) that the pledge, lien and security interest in the Collateral in favor of Lender, as well as the terms and conditions of all agreements executed in connection with this Note, shall continue in full force and effect; and (ii) to execute and deliver such additional documents and instruments as may be reasonably requested by Lender in connection with such extension.

WAIVERS AND GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no Borrower, any guarantor, nor any grantor of any Collateral, shall be released from liability. To the extent permitted by applicable law, all such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. THIS NOTE IS EXECUTED UNDER SEAL. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.

BORROWER:

Allocation Plus Asset Management Company, Inc.

By: _____
Bradford C. Bieldt, President

Variable Rate. Line of Credit.          LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.22a (c) 1996 CFI ProServices, Inc. All rights reserved. [MA-D20 PLUS.LN C13.OVL]

56-003/067770-18



## CHANGE IN TERMS AGREEMENT

| | |
|---|---|
| Borrower: ALLOCATION PLUS ASSET MANAGMENT CO, INC.<br>164 CANAL STREET<br>BOSTON    MA   02114 | Lender: BankBoston, N.A.<br>100 Federal Street<br>Boston, MA 02110 |

Principal Amount: $35,000                                                                                     Date of Note: 11/4/1996

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Borrower has executed and delivered to Lender a certain Business Focus Promissory Note dated 11/4/1996 in the principal amount of $35,000 (together with any amendment or rider, the "Note").

**DESCRIPTION OF COLLATERAL.** Borrower has executed and delivered a (Commercial Security Agreement) hereinafter referred to as the "Collateral Agreement" pursuant to which Borrower pledged to Lender and granted to Lender a continuing lien and security interest in certain Property as described in such Collateral Agreement.

**DESCRIPTION OF CHANGE IN TERMS.** Borrower and Lender have agreed that the Note shall be payable **ON DEMAND** rather than on the date set forth in the section entitled **PAYMENT** and whether or not the date for payment has been extended pursuant to the provisions set forth in the section of the Note entitled **EXTENSION**. By agreeing to this amendment, Borrower acknowledges that Lender may demand payment of the Note in its sole discretion and whether or not an Event of Default exists under this Note or in any agreements executed in connection with the Note. Accordingly, in order to effect this amendment, Borrower and Lender agree to the following deletions and substitutions.

    1.    Delete the first and second sentences in the paragraph of the Note entitled "PAYMENT" and insert the following:

    "PAYMENT. BORROWER WILL PAY THIS LOAN IMMEDIATELY UPON LENDER'S DEMAND. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, with all subsequent interest payments to be due on the same day of each month after that."

    2.    Delete the paragraph of the Note entitled "EXTENSIONS" in its entirety.

    3.    Insert the following at the beginning paragraph of the Note entitled **WAIVERS AND GENERAL PROVISIONS:**

    "THIS NOTE IS PAYABLE ON DEMAND. The inclusion of specific default provisions or rights of Lender in this Note or in related agreements shall not preclude Lender's right to declare payment of this Note on demand."

    4.    Notwithstanding any provisions of the Note, this Agreement, or any Related Documents, in the event that the principal amount of the Note equals or exceeds $100,000.00, Borrower shall be required to pay down at least once a year its outstanding balance of principal plus accrued interest hereunder to forty (40%) of the total amount available hereunder. Borrower shall not be able to draw amounts over that percentage for a thirty day period during each year that the line of credit is made available to Borrower.

    5.    Except as amended and modified above, all other terms and conditions of the Note remain unchanged and shall be applicable to the Note as amended and modified hereby.

    6.    Wherever the term "Note" shall appear in the Collateral Agreement or any other agreement, document or instrument executed in connection with the Note, the term "Note" shall include the amendments and modifications to the Note set forth in this Agreement.



**CONTINUING VALIDITY.** Except as expressly changed in this Agreement, the terms of the original obligation or obligations, including all agreements evidencing or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate the Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-assigning party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**RIGHTS OF LENDER.** Nothing in this Agreement shall affect or waive any right of Lender to accelerate the payment of principal and interest under this Note in the event of a default as set forth in the Note or a default as set forth in any agreement, document or instrument executed in connection with the Note or to make demand if the Note is payable on demand.

**NO DEFAULT.** The effectiveness of this Agreement is conditioned on Borrower's representation and warranty that (i) the representations and warranties made to Lender in the Note and the other agreements executed in connection therewith or otherwise made to Lender are true and correct as of the date hereof, and (ii) no Event of Default under the Note or any agreement executed in connection with the Note has occurred and is continuing.

**ATTACHMENT.** This Agreement shall be firmly attached to the Note by stapling or other permanent means of attachment and shall constitute a part of this Note.

**RATIFICATION.** Borrower hereby ratifies and confirms the pledge, lien and grant of security interest in the Collateral created by the Collateral Agreement which secures the Note as modified and amended by this Agreement, as well as the terms and conditions of all agreements, documents and instruments executed in connection with the Note.

**FURTHER AGREEMENTS.** Borrower agrees to execute and deliver, from time to time, such additional documents or instruments and to perform such further acts as may be reasonably requested by Lender to assure, confirm or continue the continuing lien and security interest in the Collateral or to keep the Collateral Agreement in full force and effect.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. THIS AGREEMENT IS INTENDED TO TAKE EFFECT AS A SEALED INSTRUMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE AGREEMENT.**

BORROWER: ALLOCATION PLUS ASSET MANAGMENT CO, INC.

BY: _____ CEO

TITLE: CEO

LENDER: BANKBOSTON, N.A.

BY: _____

TITLE: VP

NOTE R08S08B01
SBLC CA26R03S05B02
CLN Loan Number: 1026940

p:\managmnt\beck\bfclconv\madoc.doc

- 1572 -

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| Allocation Plus Asset Management Company, Inc.<br>164 Canal Street, Suite 500<br>Boston, MA 02114 | THE FIRST NATIONAL BANK OF BOSTON<br>100 FEDERAL STREET<br>BOSTON, MASSACHUSETTS 02110 | 434808  COMMONLY OF<br>12/10/96<br>95 DEC 10 PM 12:01<br>434808 |

4. This financing statement covers the following types (or items) of property:

All Inventory, Chattel Paper, Accounts, Equipment, general Intangibles and Fixtures; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

102-6940

Filed with: City of Boston

Bradford C. Bleidt, President

By _____
   Signature(s) of Debtor(s)

THE FIRST NATIONAL BANK OF BOSTON
By _____
   Signature(s) of Secured Party(ies)

STANDARD FORM — UNIFORM COMMERCIAL CODE — FORM UCC 1

**EXHIBIT D**

# FILE 1st

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Intercounty Clearance Corp
111 Washington Avenue
Albany, NY 12210

0000065338                              30276
MA *Central/SOS* Secretary of the Commonwealth

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #: 434808          12/10/1996

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address / ☐ DELETE name / ☐ ADD name

6. CURRENT RECORD INFORMATION:
   6a. ORGANIZATION'S NAME
   6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

7. CHANGED (NEW) OR ADDED INFORMATION:
   7a. ORGANIZATION'S NAME: FLEET NATIONAL BANK
   7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX
   7c. MAILING ADDRESS: 100 FEDERAL STREET CT/EH/4151/MT | CITY: BOSTON | STATE: MA | POSTAL CODE: 02110 | COUNTRY: USA
   7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any ☐ NONE

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☒ assigned.

✓ Reference: BANK-56/OBLIGOR-0031067770/CC-81300/PREP-LV/TICKLER-172/DATE-07/26/2001

P02406

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
   9a. ORGANIZATION'S NAME: FIRST NATIONAL BANK OF BOSTON, THE
   9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

10. OPTIONAL FILER REFERENCE DATA
Debtor: ALLOCATION PLUS ASSET MANAGEMENT COMPANY

3409-15-0 — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Filing Office Copy

Print/Layout by:
INTERCOUNTY CLEARANCE
440 9th Avenue, New York, NY
(212) 594-0020

MA SOC   Filing Number: 200104360130   Date: 8/2/01 3:43:00 PM

# FILE 2ND

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Intercounty Clearance Corp
111 Washington Avenue
Albany, NY 12210

0000065340                                    30276
MA,*Central/SOS* Secretary of the Commonwealth

(3)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE # 434808   12/10/1996

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE  POSTAL CODE | COUNTRY |
| 7d. TAX ID #: SSN OR EIN  ADD'L INFO RE ORGANIZATION DEBTOR  7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

✓Reference: BANK-56/OBLIGOR-0031067770/CC-81300/PREP-LV/TICKLER-172/DATE-07/26/2001

P02406

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  FLEET NATIONAL BANK | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
Debtor: ALLOCATION PLUS ASSET MANAGEMENT COMPANY

3409-16-0  — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)
Filing Office Copy

Print/Layout by:
INTERCOUNTY CLEARANCE
440 9th Avenue, New York, NY
(212) 594-0020