UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
SECURITIES AND EXCHANGE COMMISSION,          )
                                            )
        Plaintiff,                             )
                                            )
    v.                                       )   Case No. CA-04-12415-NG
                                            )
BRADFORD C. BLEIDT and                       )
ALLOCATION PLUS ASSET MANAGEMENT             )
COMPANY, INC.                                )
                                            )
                                            )
        Defendants.                            )
_____ )

**MEMORANDUM IN SUPPORT OF JOINT MOTION OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION AND RECEIVER FOR RECONSIDERATION AND/OR CLARIFICATION OF COURT'S 5-6-05 ELECTRONIC ORDER**

      Plaintiff Securities and Exchange Commission (the "Commission") and Receiver David A. Vicinanzo (the "Receiver") respectfully submit this memorandum in support of their joint motion for reconsideration and/or clarification of the Court's May 6, 2005 electronic order.

      **I.    BACKGROUND**

      On March 21, 2005, attorney Gregory D. Oberhauser filed a "Motion for Funds" ("Motion") with the Court, in which he sought to make a "limited appearance" on behalf of defendant Bradford C. Bleidt and the unfreezing and "allowance of funds for the defense of ... Mr. Bleidt in this present civil matter." Motion at 1, 5. On March 28, 2005, the Commission and the Receiver filed a Joint Opposition to the Motion ("Joint Opposition"). On May 6, 2005, the Court entered an electronic order which, in part, granted the "Motion for funds for counsel on the terms specified in defendant's motion – $150 per hour, subject to review by the court."

("May 6 Order"). The Commission and the Receiver respectfully request reconsideration and/or clarification of the May 6 Order.

## II. ARGUMENT

### A. Bleidt Should Be Denied Any and All Frozen Funds

As noted in the Joint Opposition to the Motion, on December 2, 2004, the Court issued a Preliminary Injunction, Order Freezing Assets and Order for Other Equitable Relief ("PI Order") in this matter. Among other things, the PI Order stated "that the Commission ha[d] made a proper *prima facie* showing ... that: (i) Defendants ... Bleidt and Allocation Plus Asset Management Company, Inc. ("Allocation") ha[d] directly or indirectly engaged in the violations alleged in the Complaint ... ." PI Order at 1. Among other things, the Complaint alleged that defendant Bleidt had admitted, in a tape recording sent to the Commission's Boston District Office, that "[o]ver the last twenty years almost, I've stolen tens and millions of dollars from clients through Allocation ... ." In addition, as summarized in the Declarations of Mark A. Gera and Anthony C. Jordan, submitted on December 1, 2004 in support of the motion for preliminary injunction, the overwhelming and, thus far, undisputed evidence (which includes at least nine additional tape recorded confessions) is that Bleidt may have defrauded up to 140 clients "over about a 20 year period ... ." The Commission staff currently estimates from relevant bank records that Bleidt defrauded these investors out of approximately $30 million.

In contrast to the overwhelming and undisputed evidence thus far submitted by the Commission to the Court demonstrating that all of the funds and assets subject to the Court's asset freeze are the proceeds of Bleidt's fraud, defendant Bleidt has never claimed – either in his

Motion or in any of his Court appearances to date – that he legitimately obtained any of the funds which have been frozen by the Court. Moreover, the amount of funds and assets covered by the Court's freeze order do not approach the "tens of millions" which Bleidt has *admitted* (or the $30 million the Commission staff currently estimates) he has stolen from investors during the past couple of decades. Therefore, the Commission and Receiver respectfully submit that Bleidt has made no showing that he has a legal or an equitable right to any of the frozen funds. Moreover, the Commission and the Receiver respectfully contend that the Court must make a threshold factual determination as to whether any of the frozen funds are untainted by Bleidt's fraud, in ruling on the Motion. Thus far, no such determination has been (nor could it be) made by the Court given Bleidt's failure to proffer any evidence on the issue. See, e.g., FTC v. Think Achievement Corp., 312 F.3d 259, 262 (7th Cir. 2002) (J. Posner):

> [T]here was not yet a judicial determination of what fraction of [the frozen] assets was legitimate wealth of [defendant] and what fraction represented proceeds of fraud to which he had no equitable entitlement. But once the court determined that *all* the frozen assets were either a product of fraud or necessary to compensate the victims of the fraud for their losses, [defendant] had no right to use any part of the frozen money for his own purposes, purposes that included defending himself against criminal charges. ... Why should the victims of [defendant's] fraud be made to finance his defense to a criminal prosecution? ... As there is no answer to this question, to make them do so would have been an abuse of the district court's equitable discretion, which though considerable is of course not unlimited. (emphasis in original) (internal citations omitted).

In addition, and as discussed in Think Achievement Corp., and as made clear by the U.S. Supreme Court, even criminal defendants are not entitled to the fruits of their frauds to defend themselves. See generally United States v. Monsanto, 491 U.S. 600 (1989); Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989). In both Monsanto and Caplin & Drysdale, the

Supreme Court held that a defendant had no Fifth Amendment Due Process Clause or Sixth Amendment right to use frozen assets for attorneys' fees to defend against a criminal proceeding seeking forfeiture of those assets which were derived from drug violations.  As the Seventh Circuit Court of Appeals (and other courts have stated): "Parties to litigation usually may spend their resources as they please to retain counsel.  'Their' resources is a vital qualifier.  Just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime."  SEC v. Quinn, 997 F.2d 287, 289 (7th Cir. 1993) (citations omitted).  The Commission and the Receiver respectfully submit that the principle enunciated by the Supreme Court in Monsanto and Caplin & Drysdale should also apply where Bleidt is facing civil, not criminal, sanctions.[1]

---

[1] In addition, disgorgement is a personal liability that a defendant must satisfy out of whatever assets he possesses, not just those that can be traced to the wrongdoing.  While the amount of disgorgement is calculated from a defendant's ill-gotten gains, the Commission may seek to collect that amount out of *any* of the defendant's assets.  Otherwise, a defendant could place himself beyond the reach of the court's remedial power simply by spending the funds he acquired by fraud.  See SEC v. Banner Fund International, 211 F.3d 602, 617 (D.C. Cir. 2000); see also SEC v. Great Lakes Equities Co., 775 F. Supp. 211, 214 (E.D. Mich. 1991) (disgorgement extends to all ill-gotten gains, even if at the time of the order the defendant "retained none of the proceeds from the scheme"), aff'd, 12 F.3d 214 (6th Cir. 1993).  Moreover, at least two Courts of Appeal have specifically held in Commission enforcement actions that a freeze order could extend to assets needed to satisfy disgorgement and could include, in addition, assets needed to satisfy any civil penalty that might be imposed.  See SEC v. Unifund SAL, 910 F.2d 1028, 1042 (2d Cir. 1990) (citing De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 220 (1945)); SEC v. Cherif, 933 F.2d 403, 416 n.15 (7th Cir. 1991); see also SEC v. Bremont, 954 F. Supp. 726, 733 (S.D.N.Y. 1997) (ordering freeze to extend to funds sufficient to pay all relief sought by Commission, including disgorgement, prejudgment interest and civil penalty).

## B.     Alternatively, the May 6 Order Should Be Limited

The Commission and Receiver object to allowance of *any* of the frozen funds to pay Bleidt's legal fees on the ground that they are the proceeds of his fraud. However, without conceding or waiving this objection, the Commission and Receiver suggest, as an alternative, that the Court clarify and limit the scope of the May 6 Order to allow Bleidt use of only those funds frozen in accounts held in his personal name – as opposed to those in the name of defendant Allocation and/or the other entities with which he was affiliated and/or which he controlled during the relevant period. The May 6 Order states, in part, that the Motion was granted "on the terms specified in defendant's motion ... ." However, it is not clear from the Motion which of the frozen funds Bleidt sought to unfreeze. As noted in the Joint Opposition and as listed in the PI Order, the vast majority of the frozen funds and assets are held in the names of entities with which Bleidt was in some way affiliated and/or which he controlled during the relevant period (either as a significant shareholder, officer or director). See PI Order at 3-4. Simply put, Bleidt has never held legal or equitable title to those funds and assets; they were (and continue to be) the assets of either the entities themselves or the victims of Bleidt's admitted fraud. As such, the Commission and Receiver respectfully submit that, if the Court unfreezes any of the assets, it should limit the scope of the May 6 Order to clarify that Bleidt may only seek release of frozen funds held in accounts currently in his own name to defend himself in this matter.[2]

---

[2] As noted in the Joint Opposition, "the Receiver has located liquid personal assets of Bleidt in an amount less than $2000." Joint Opposition at 2. The Receiver has also been able to recover some additional currently *illiquid* personal assets of Bleidt, which the Receiver intends to

In addition, and without waiving objection to use of the frozen funds to pay Bleidt's legal fees, the Commission and Receiver respectfully submit that – *ab initio* – the Court should cap Bleidt's counsel fees at a certain dollar figure, *i.e.*, at the approximately $12,000 in liquid and illiquid assets held in Bleidt's name.  See footnote 1, *supra*.  This should not be an objectionable alternative given Bleidt's repeated suggestion in the Motion (and his expressed desire at past status conferences) that he wants to quickly resolve this matter with the Commission.  See, e.g., Motion at 1 ("After numerous conferences with Mr. Bleidt, he wishes to cooperate with the SEC, [the] Receiver ... and other authorities ... ."); at 2 ("It is believed that with the cooperation of Mr. Bleidt, the expenses could be capped or reduced in this process.").  Given that Bleidt has admitted causing significant financial and emotional damage to his numerous victims and that Bleidt appears to lack any significant legal or factual defenses to the allegations in the Complaint, a clarification to cap Bleidt's legal fees is a reasonable alternative to the May 6 Order.[3]

The Commission and Receiver would also urge the Court to clarify – also *ab initio* – the priority which it intends to give Bleidt's legal fees.  Bleidt's legal fees do not have, and should not be given, priority in relation to the anticipated payments to be made to the defrauded

---

soon liquidate.  The Receiver estimates that the liquidation of these currently illiquid assets may net the Receivership on the order of an additional $10,000.

[3] Along these lines, an especially troubling passage in the Motion is the statement that attorney Oberhauser has "secured three (3) additional attorneys with vast experience in discovery, Federal matters and trial advocacy to ferret out the issues," even though the Motion otherwise recognizes that "it appears that this case revolves around determining a final accounting of all funds, all victims and an accounting of all assets over a potential twenty year period."  Motion at 4.  The Motion is not in any way specific as to why a total of four attorneys are necessary to represent Bleidt in this matter when – as it otherwise recognizes – the only significant issue left to be resolved in this matter is "a final accounting."

investors and/or to the Receiver's counsel for the work it has thus far undertaken to attempt to maximize a recovery for the defrauded investors. The Commission and Receiver respectfully submit that Bleidt's legal fees – to the extent that the Court determines that they should come from any of the frozen funds – should be subordinated to the claims of injured investors and/or of Receiver's counsel, which should be deemed more legitimate.[4]

### III.  CONCLUSION

In sum, Bleidt has no legal or equitable right to use money he stole to pay for the assistance of counsel in a *civil case* such as this one. Bleidt has not cited (nor could he cite) any law for the proposition that he is either legally or equitably entitled to the use of other people's monies to defend himself in this action.[5] Bleidt cloaks his request for funds in terms of magnanimity and efficiency but, in effect, he is asking for the use of other people's monies – people he has already stolen from repeatedly over twenty years – for his own benefit. The Court should not allow that to happen. As such, the Commission and Receiver respectfully request that the Court reconsider and/or clarify and limit its May 6 Order.

---

[4] Despite the fact that the Receiver is authorized, pursuant to paragraph 15 in the Order for Appointment of Receiver, to submit legal fees to the Court for approval every ninety (90) days, Receiver's counsel has not yet submitted any such request. Receiver's counsel intends to submit such a request after it has presented the Court with a report summarizing the assets and funds it has been able to obtain on the defrauded investors' behalf.

[5] As noted in the Joint Opposition at 4, fn. 1, Bleidt did not cite a single relevant case in support of the relief sought in the Motion. In contrast, the Commission and Receiver have cited (both in the Joint Opposition and herein) a number of cases applicable to the situation currently before the Court. As all of the cited cases either indicate or suggest, a defendant – whether in the criminal or civil context – should not be allowed to use other people's funds to defend himself against charges of violation of the law.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

/s/ Silvestre A. Fontes
Silvestre A. Fontes (BBO #627971)
Senior Trial Counsel

Michele T. Perillo (BBO #629343)
Senior Counsel

Securities and Exchange Commission
73 Tremont St., 6th Floor
Boston, MA 02108
(617) 573-8991
Fax: (617) 424-5940
Email: fontess@sec.gov

DAVID A. VICINANZO, RECEIVER

/s/ Kevin M. Fitzgerald
Kevin Fitzgerald (admitted pro hac vice)
Steven Fuller (BBO #550224)
Francis C. Morrissey (BBO #567589)
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

May 11, 2005

**Certificate of Service**

       I hereby certify that on May 11, 2005, I served a copy of the Joint Motion of Plaintiff Securities and Exchange Commission and Receiver for Reconsideration and/or Clarification of Court's 5-6-05 Electronic Order, and the memorandum in support thereof, on the following:

Via First Class Mail and Facsimile [978-452-8199]
Gregory D. Oberhauser
10 George Street
Suite 220
Lowell, MA 01852

Via First Class Mail
ECCF
Bradford C. Bleidt
Unit 240D Room 841
P.O. Box 847
Middleton, MA 01949

Via First Class Mail
Allocation Plus Asset Management Co., Inc
c/o David Vicinanzo, Esq.
Kevin Fitzgerald, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110-2131


                /s/ Silvestre A. Fontes