UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 04-12415-NG |
| ) | |
| BRADFORD C. BLEIDT and ) | |
| ALLOCATION PLUS ASSET MANAGEMENT ) | |
| COMPANY, INC. ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## RECEIVER'S SECOND INTERIM REPORT

In accordance with this Court's Orders dated November 22, 2004 and May 12, 2005 (the "Appointment Date" and "Appointment and Order," respectively), David A. Vicinanzo, the Court-appointed receiver (the "Receiver") of defendants, Bradford C. Bleidt ("Bleidt") and Allocation Plus Asset Management Company, Inc. ("APAM") and his counsel, Nixon Peabody LLP ("Nixon Peabody") hereby submit their Second Interim Report.

## INTRODUCTION AND OVERVIEW

1.     This Second Interim Report provides a detailed summary of the Receiver's and his counsel, Nixon Peabody's activities since the Receiver's Initial Report was filed with the Court on February 22, 2005 (the "Second Report Period") and was served on defrauded investors and other parties-in-interest shortly thereafter. The Report also brings current the Receiver's preliminary conclusions and recommendations set forth in the Initial Report.

2.      During the Second Report Period, the Receiver liquidated substantially all of Bleidt's and APAM's tangible and intangible property.  Given the magnitude of Bleidt's fraud and the proceeds of the assets liquidated to date, however, any meaningful recovery by client-victims in this case depends almost entirely on recoveries from future third party litigation. Potentially responsible parties and expected recoveries from such litigation are detailed below.

**SUMMARY OF THE RECEIVER'S ACTIVITIES DURING
THE SECOND REPORT PERIOD**

**A.      Developments Since the Initial Report.**

3.      **The United States' Information Against Bleidt**. On June 9, 2005, the United States of America filed an Information against Bleidt charging Bleidt with mail fraud in violation of 18 U.S.C. §1341 and engaging in monetary transactions in property derived from unlawful activity in violation of 18 U.S.C. §1957. As detailed below, the allegations contained in the information are consistent with the Receiver's analysis of Bleidt's fraudulent investment scheme originally set out in the Initial Report.

4.      In its Information, the United States alleges that Bleidt defrauded approximately 125 investors of more than $27 million. The United States further alleges that Bleidt obtained money from investors by falsely representing that their funds would be invested in legitimate securities instruments, such as money market funds, mutual funds, Treasury Notes and annuities. The United States alleges that Bleidt instead used the funds he received from client-victims for a variety of personal and business purposes, including operation of radio station WBIX and Financial Perspectives Planning Services, Inc. ("FPPS).

5.      Consistent with the Receiver's Initial Report, the United States also alleges that Bleidt induced investors to deliver checks payable to "APAM" to him and that he deposited those checks into a bank account named "APAM ALLOCATION PLUS ASSET

MANAGEMENT INC. BRADFORD C. BLEIDT." The Information further alleges that Bleidt

had sole authority to withdraw funds from this account and continually did so for his own

personal and business purposes.

6.      The Information also alleges that Bleidt concealed his fraudulent scheme from

APAM's employees, his and APAM's broker-dealers and other interested parties by having

account statements and canceled checks from the fraudulent bank account sent to his personal

residence. The United States alleges that Bleidt also camouflaged his scheme by causing

fraudulent APAM account statements to be mailed to client-victims. These account statements

falsely represented that client-victims' funds were invested in legitimate securities through a

legitimate brokerage firm and misrepresented the current value of the client-victims' accounts,

dividends and interest earned, and gains and losses incurred in the account. Finally, the

Information alleges, among other things, that when requested, Bleidt made partial or full

payment of funds to client-victims, using funds he had obtained from other victims. A copy of

the Information which further details the specifics of Bleidt's fraudulent scheme is attached

hereto as <u>Exhibit A.</u>

7.      **<u>Bleidt's Retention of Counsel in this Action</u>**. The principal development in this

litigation since the Initial Report is that Bleidt has retained Gregory D. Oberhauser of the

Oberhauser Law Office to represent him in the above-captioned civil action. On March 21,

2005, Bleidt filed a Motion (the "Funds Motion") seeking an order that his counsel's fees and

expenses in this case be paid from all the assets held by the Receiver irrespective of whether they

were held in the name of Bleidt, APAM or APAM's affiliates on the Appointment Date. In the

Funds Motion, Bleidt further represented that his counsel had agreed to limit his compensation to

$150 per hour and that all compensation paid to his counsel would be subject to prior review and approval by the Court.

8.      On March 28, 2005, both the Receiver and the Securities and Exchange Commission (the "SEC") vigorously opposed the Funds Motion on the grounds that funds and assets held by the Receiver constitute the proceeds of Bleidt's fraud and may not properly be used to defend this civil fraud action. The Receiver and the SEC further objected to the Funds Motion on the grounds that it improperly sought to use funds standing in the name of APAM, FPPS and their affiliates to finance Bleidt's defense in this action.

9.      On May 6, 2005, the Court entered an electronic order rejecting the Receiver's and the SEC's opposition and granting the Funds Motion. In response on May 11, 2005, the Receiver and the SEC filed a motion seeking reconsideration of the Court's May 6, 2005 order on the Funds motion. Alternatively, and without waiving objections to the Funds Motion, the Receiver and the SEC sought an order expressly declaring that Bleidt's counsel may only seek compensation from the assets held in Bleidt's name as of the commencement of this civil action and capping Bleidt's fees in a liquidated amount.

10.      On June 2, 2005, the Court allowed the Receiver's and the SEC's alternative prayer for relief and entered an order limiting Bleidt's counsel compensation in this case to the lesser of $12,000 or the net proceeds of the assets standing in Bleidt's name as of the Appointment Order.

11.      Shortly after Bleidt's counsel's appearance in this case, the Court established June 13, 2005 as the deadline to answer or otherwise respond to the SEC's complaint in this case.  On June 13, 2005, Bleidt filed an assented to notice to extend the deadline to answer to

June 27, 2005.   On July 11, 2005, Bleidt filed his answer in which he substantially denied the allegations of the SEC's complaint.

**B.**     **Liquidation of Estate Assets During the Second Report Period.**

12.    **WBIX Rescission Agreement**.  As reported initially, the principal asset in these estates is Bleidt's indirect ownership interest in WBIX Corp. f/k/a Langer Broadcasting Corp. WBIX Corp. operates an AM radio broadcasting business under the call letters WBIX 1060 AM (the "Station") which broadcasts from separate tower sites located in Ashland, Massachusetts and Framingham, Massachusetts.  Perspectives Broadcasting, Inc. ("PBI") presently owns all of the shares of WBIX Corp. and Bleidt, in turn, owns all of the shares of PBI.

13.    Through an affiliate, Shared Visions, Inc. ("Shared Visions"), Bleidt began operating the Station in July, 2002.  Bleidt, through PBI, acquired the stock in WBIX Corp. on or about January 13, 2004, from Alexander G. Langer for a recited purchase price of approximately $10,000,000.  The sale of the stock to Bleidt was evidenced by and governed by a Stock Purchase and Sale Agreement dated July 16, 2002 (the "Station Acquisition Agreement").  In accordance with the terms of the Station Acquisition Agreement, $3,050,000 of the purchase price was paid in cash and other credits and the remaining balance was satisfied by a note in favor of Langer in the principal amount of $7,318,000 (the "Note").  Transaction documents also recite that obligations under the Note were secured by a pledge of the stock in WBIX Corp. and PBI, a purchase money security interest in all of PBI's and WBIX Corp.'s other assets, and a guaranty from Bleidt in favor of Langer.

14.    Prior to the commencement of this case, the Station, while under Bleidt's management, booked substantial operating losses.  In contrast, since entry of the Appointment Order, with the important day to day management assistance of Langer as described in the Initial

Report, the Receiver has successfully managed to operate the Station on a break even/marginally profitable basis as a going concern without any investment of estate funds.

15.     During this Second Report Period, while stabilizing operations at the Station, the Receiver, again with the assistance of Langer, also vigorously marketed the Station.  Because Langer holds a guaranty from Bleidt and asserts a security interest in PBI's and WBIX Corp.'s stock and substantially all of the Station's assets, absent a judicial determination or agreement with Langer to the contrary, any sale of the stock or the Station's assets would presumptively be subject to Langer's asserted lien of not less than $7,318,000 plus accrued interest.

16.     In addition, during the Second Reporting Period, the Receiver engaged RL Sharpe Associates, a business broker specializing in the sale of radio stations and other media businesses to sell the Station on a commission basis.  At the same time, the Receiver and Nixon Peabody, with the assistance of Langer, also directly marketed the station to various private equity funds and other interested parties and pursued numerous expressions of interest received from potential buyers since entry of the Appointment Order.  To date, however, none of these efforts have produced cash offers in excess of Langer's asserted lien on the Station.  One informal proposal was made jointly to the Receiver and to Langer by a private equity firm who proposed that the station be sold to its nominee at a steeply discounted price (and less than Langer's asserted interest), that Langer convert his debt claims against WBIX Corp. to an equity interest in the purchaser and thereafter manage the Station for the purchaser all for an undetermined amount of cash to come to the Receiver and these estates.  That proposal was never formalized and was, on information and belief, not of interest to Langer.

17.     Faced with the absence of a cash buyer for the Station, the Receiver began exploring alternatives to a sale that would maximize recoveries to these estates and, ultimately,

defrauded investors and other estate creditors. Those efforts have culminated in the negotiation of an agreement in principle between the Receiver and Langer to rescind the Station Acquisition Agreement. In essence, the proposed rescission agreement contemplates that the stock in WBIX Corp. shall be returned to Langer in exchange for:

- A cash payment from Langer to the Receiver in the amount of $1,500,000;
- Langer's assumption of pre-receivership Station liabilities of $433,000;
- Twenty-five (25%) percent of the net proceeds of any sale of the Station in excess of ten million ($10,000,000) dollars made within 36 months of the closing of the rescission agreement; and
- Langer's release of these estates from any liability for Bleidt's obligations under the guaranty issued to Langer in connection with the Station Acquisition Agreements.

18.    Under the circumstances, the Receiver believes that rescission of the Station Acquisition Agreement is in the best interests of defrauded investors and other creditors and the only feasible way to liquidate the Station in the near future. After nearly nine months of marketing efforts, the Receiver has been unable to find a buyer willing to purchase the Station for more than the asserted secured debt encumbering it or on terms otherwise providing a recovery for these estates. The proposed rescission agreement allows Bleidt's estate to realize $1.5 million in "equity" in the Station and share in the proceeds of any sale of the Station during the next three years at a price above $10,000,000. In addition, the proposed rescission will relieve these estates of claims of no less than $7,318,000 held by Langer under the guaranty issued by Bleidt and avoid any dilution of defrauded investors' claims arising from that liability.

19.    Finally, the parties' obligations under the proposed rescission agreement will be conditioned on this Court entering an order approving the agreement on proper notice to client-victims, creditors and other parties-in-interest. The Receiver expects that the documentation in

connection with the recession agreement will be finalized shortly and that he will seek Court approval of the agreement by the end of this month.

20.    <u>Liquidation of Bleidt's Other Personal Property</u>.  During the Second Report Period, the Receiver also liquidated substantially all of Bleidt's other personal property, including Bleidt's art collection, Steinway piano, furniture, certain computers and automobiles. The vast majority of this property other than Bleidt's automobiles was sold for $29,123.38 at public auction on July 7, 2005.  The auction was conducted by the Paul E. Saperstein Co., Inc. ("Saperstein"), who advertised the auction in the *Boston Globe, Boston Herald, Arts & Antiques Weekly* and on his own web page.  The sale was also publicized through a direct mailing to approximately 400 potential buyers in a database maintained by Saperstein.  A detailed accounting of the purchase price obtained for each lot of goods auctioned as well as the costs of the sale are attached hereto as <u>Exhibit B</u>.

21.    Bleidt's automobiles were sold for $45,595.30 through private sales brokered by FAV, Inc. d/b/a R.C. Muirhead.  Those vehicles, however, were subject to purchase money liens in the aggregate amount of $18,714.37, yielding these estates a net recovery of $26,880.93.  A description of the vehicles and a detailed accounting of the amounts obtained for each vehicle is attached hereto as <u>Exhibit C</u>.

**C.    Receiver's Efforts to Negotiate a Global Settlement of Client-Victim Claims Against APAM's Broker-Dealers and Their Insurance Carriers**

22.    Given the magnitude of Bleidt's fraud and the expected proceeds for the rescission of the Station Acquisition Agreement, any meaningful recovery by client-victims depends on recoveries from third parties.  Based on the information developed to date, the Receiver has determined that (a) the resolution of investor claims against Bleidt's and APAM's former broker-dealers and their insurers, and (b) the estates' claims against the financial

institutions Bleidt used to operate his fraudulent scheme are the most likely means of meaningful recoveries for client victims and other creditors injured by Bleidt's fraud.

23.     As detailed in the Initial Report, from approximately January 1991 through November 2004, Bleidt was registered with, and an agent of, three separate brokerage firms. Furthermore, at its core, Bleidt's fraudulent scheme was to exploit his status as a registered representative of these brokerage firms and to solicit investors to purchase securities from those brokerage firms which APAM, in turn, would manage on behalf of investors.  The record in this case demonstrates that Bleidt took custody of investor funds as both an apparent and actual agent of the brokerages.  Rather than depositing the entrusted funds with the brokerage firms, however, he instead converted the funds entrusted to him as an agent of the brokerages—in effect stealing the funds intended for investment through the brokerages—and used them for a variety of personal and business purposes.  Bleidt concealed his conversion from his brokerage firm employers by reporting to the defrauded investors that the securities had been purchased and that APAM was managing these assets when in fact such reports were a fiction.  The defrauded investors were further misled by Bleidt's fictional reports and communications which generally contained references to securities being offered by the brokerage firms.

24.     Although the Receiver has concluded that the broker-dealers have liability for Bleidt's conversion of their customers' funds, recoveries from broker-dealers, as a practical matter, are limited by their capitalization and available insurance.  In addition to their own capital, each of the broker-dealers is required to maintain fidelity bonds covering losses "resulting directly from dishonest or fraudulent acts committed by an employee."  The Receiver

believes, accordingly, that the following fidelity bonds should be available to fund client-victim recoveries[1]:

| Broker Dealer | Insurance Carrier | Policy Limits |
|---|---|---|
| Winslow, Evans & Crocker ("WEC") | St. Paul Fire &Marine ("St. Paul") | $1,000,000 |
| Detwiler, Mitchell, Fenton, Graves, Inc. ("Detwiler") | Lloyds of London ("Lloyds") | $1,000,000 |
| Commonwealth Financial Network ("Commonwealth") | National Union Fire Insurance Company of Pittsburg, PA, a division of AIG ("National Union") | $2,000,000 |

25.     As the successor to Bleidt and APAM, the Receiver arguably does not have independent standing to commence direct lawsuits on behalf of individual defrauded investors against Bleidt's former broker-dealers unless those investors so agree.  The costs of litigating 140 separate lawsuits against the broker-dealers, however, would substantially deplete, if not entirely dissipate, funds otherwise available for settlement and distribution to defrauded investors.  Furthermore, as a result of his almost nine month investigation and access to Bleidt's and APAM's business records and other confidential documents, the Receiver has unique resources and knowledge concerning the scope of Bleidt's fraud, and how he operated his scheme to convert funds entrusted to the brokerages and the damages incurred by individual investors.  Recognizing those practical realities, during the Second Report Period, the Receiver

---

[1] The brokerage firms are also covered by errors and omissions insurance policies.  Each of these policies contains, among other things, an exclusion for claims "based upon, arising out of, or attributable to any criminal or deliberately fraudulent act, or any willful violation of law or regulation."  The Receiver, however, continues to investigate theories under which the coverage of these policies may be made available to fund the recoveries to these estates and defrauded investors.

attempted to negotiate a global settlement of client-victims' claims against Bleidt's former broker-dealers.  The Receiver notes that it has received exemplary cooperation from each of the brokerages (as contrasted with their insurers) during these discussions and credits them and their counsel for their seriousness and responsiveness to date in pursuit of the resolution of investor claims.

26.    Before pursuing those negotiations, however, in March 2005, the Receiver polled all of the client-victims identified to date (and their respective counsel) and sought their permission to pursue a global settlement.  More than 95% of defrauded investors surveyed representing claims in the aggregate in excess of $27,000,000 authorized the Receiver to pursue negotiations on their behalf.  More importantly, since March, at the Receiver's request, all polled defrauded investors have forebeared from attempting to bring individual claims against the broker-dealers until the possibility of a global settlement has been fully explored.

27.    Since March, the Receiver has vigorously pursued negotiations with both broker-dealers and their respective insurance carriers.  Among other things, the Receiver has provided each of the broker-dealers with a detailed analysis of losses incurred by specific defrauded investors, produced many thousands of documents, and presented comprehensive and detailed analyses of the facts and law that give rise to claims against the brokerage firms which should be covered by the fidelity bonds.  The Receiver has also consummated tolling agreements with each of the broker-dealers to maintain the status quo while the possibility of settlement is being explored.

28.    While continuing to reserve their respective rights to litigate liability, the Receiver and the broker-dealers have made considerable progress during the Second Report Period

towards settlement of client-victim claims.  Again, the Receiver has been pleased with the earnestness of the brokerages throughout these discussions.

29.    Most importantly, the Receiver understands that each of the broker-dealers have requested that their fidelity bond carriers acknowledge that coverage will be available under their respective bonds.  The principal impediment to reaching such settlement, however, has been the unwillingness to date of St. Paul, Lloyds and National Union to confirm that coverage will be provided.  Although, on information and belief, none of these insurers have formally denied coverage, they are suggesting that Bleidt's fraud may not be within the coverage of fidelity bonds issued to the broker-dealers and thus are arguably assessing the merits of piecemeal coverage litigation with the broker-dealers and the risks of potentially resulting bad faith and unfair settlement practice claims by the brokerages.  The Receiver anticipates continuing discussions with the broker-dealers and their carriers for approximately another sixty (60) days. If no settlement is obtained or if coverage is denied during that period, a global resolution of claims with the brokerage firms is highly unlikely and the Receiver expects he would thereafter inform all defrauded investors of his intent to abandon efforts to negotiate on their behalf and that they would then be free to commence private litigation.  The Receiver understands that among the suggestions being advanced by the insurers is that although the bonds apply when the brokerages' assets are embezzled and they may not apply when client funds in the custody of the brokerages and their agents are embezzled by an employee.  The Receiver believes, however, that such suggestion is contrary to the brokerages' expectations when they purchased the fidelity bonds, is contrary to the reasoning behind the NASD customer protection rules requiring brokerages to maintain fidelity bonds, and, therefore, if asserted, would be an unsupportable coverage position.

**D.        Potential Claims against Fleet National Bank and Sovereign Bank.**

30.    As detailed in the Initial Status Report, Bleidt used accounts at Fleet National Bank ("Fleet") and Sovereign Bank ("Sovereign") to perpetrate his fraudulent scheme. The Receiver believes that APAM's estate may have direct claims against those financial institutions for various failings including their failure to detect and report Bleidt's fraud.  The Receiver has preliminary observed, among other things, that statements from those accounts (bearing both APAM's name and Bleidt's and into which investor funds were being deposited) were mailed to Bleidt's residence rather than to APAM's address which was located physically near the branch where he maintained accounts, and that the incompatibility of the investors as the apparent source of deposits for those accounts with the patently personal use of funds withdrawn from them, suggests notice that funds in the accounts were being converted and otherwise used for improper purposes.  Notwithstanding this misuse of the APAM accounts, on information and belief, no suspicious activity reports were filed with the Comptroller of Currency until well after Bleidt's wrongdoing became public.  Finally, the Receiver understands that certain client checks ultimately deposited and paid into such accounts were neither made payable to APAM nor Bleidt nor endorsed to the order of APAM or Bleidt.

31.    Because of conflicts affecting the Receiver's counsel, Nixon Peabody, the Receiver expects, within the next ninety (90) days and after completion of consultation with the SEC, to seek the Court's permission to employ independent outside counsel, either on an hourly or contingent fee basis, to investigate and, as appropriate, pursue those claims.

**E.        Recoveries from Bleidt Transferees.**

32.    During the Second Report Period, the Receiver recovered transfers totaling $36,000 made on the eve of the commencement of this enforcement action and continues to pursue the return of similar small amounts or other funds.

**F.    Completion of the Wind-Up of APAM's, FPPS's and their Affiliates' Businesses.**

33.    During the Second Report Period, the Receiver completed the wind-up of APAM, FPPS and their affiliates' businesses.  As detailed in the Initial Report, commencement of this enforcement action irreparably harmed APAM and FPPS's investment advisory and other businesses and required the Receiver and his professionals to immediately wind-up those businesses following entry of the Appointment Order.  The Receiver completed those efforts during the Second Report Period.  Specifically, the Receiver, with conscientious assistance and cooperation from WEC, completed his investigation of the approximately 1,822 APAM and FPPS customer accounts at WEC which were frozen by the preliminary injunction entered by the Court in this action.  The Receiver, in accordance with Court-approved procedures developed with WEC and the SEC, has released the estates' hold on each of those accounts and customers are now free to trade and make withdrawals from the accounts.

34.    During the Second Report Period, the Receiver also arranged for distribution of substantially all of the funds in FPPS's 401(k) Plan to beneficiaries and is continuing to work with the Plan's outside administrator to complete termination of the Plan.  Finally, the Receiver has also now coordinated the surrender of leased premises to the landlords for each the following premises:

- 639 Granite Street, Suite 28
  Braintree, MA 02184;

- 205 Portland Street
  Boston, MA; and

- 164 Canal Street
  Boston, MA 02144.

G.    <u>**Investor Communications.**</u>

35.    The Receiver continues to have regular communications with defrauded investors, investor groups, creditors and other parties-in-interest and their counsel.  During the Second Report Period, the Receiver served each of the approximately 140 client-victims identified to date in this case with (a) his Initial Report; and (b) a detailed analysis of the theories of recovery that could be asserted against Bleidt and APAM's broker-dealers.  In addition, during the same period, the Receiver established a web page at http://extranet30.nixonpeabody.com.  The Receiver's web page, among other things, contains contact information for the Receiver, the SEC and the United States Attorney, as well as links to the Appointment Order, Initial Report and other important orders and pleadings in this case.

<u>**THE RECEIVERSHIP ESTATES' CASH POSITION AS OF THE APPOINTMENT DATE AND CURRENT FINANCIAL CONDITION**</u>

36.    To date, the Receiver has recovered cash in the amount of $ 507,286.60 and has expended funds in the amount of $ 321,007.49 in connection with the wind-up of APAM's and FPPS's businesses.  The substantial majority of those expenditures ($271,913.03) were for wages, commissions, benefits and withholding taxes due to APAM's, FPPS's and their affiliates' employees.  In accordance with paragraph 15 of the Appointment Order, a detailed accounting of the funds in the Receiver's possession is attached hereto as <u>Exhibit D.</u>

<u>**PROFESSIONAL FEES INCURRED BY THE RECEIVER**</u>.

37.    Due to the nature and exigencies of this case, the legal fees and expenses incurred by the Receiver to date have been substantial.  The Receiver was required to employ counsel that are experienced and familiar with litigation, securities, bankruptcy and insolvency, communications, tax, and employment law and a host of other practice areas.  Collectively those professionals from the firm of Nixon Peabody LLP have spent in excess of 2,334 hours

providing legal services to this estate through the date of this status report.  The accumulated but as yet unpaid fees due Nixon Peabody LLP now total in excess of $900,000.  Copies of Nixon Peabody's invoices detailing all time and expenses claimed for that work and the nature of the services performed have been provided to, and reviewed by, counsel for the SEC.  There continues, however, to be insufficient cash in this estate to pay these fees and expenses at this time, and the Receiver believes that the limited funds presently available to this estate are better spent at this time on other wind-up expenses.  Nixon Peabody agrees with this assessment.  Given the magnitude and aging of the accrued fees, however,  the Receiver and Nixon Peabody expect to seek approval and payment of their reasonable fees and expenses within the next reporting period when funds are available from this estate to pay them, e.g., from the proceeds of the above-described transaction involving WBIX and/or settlements.

July 15, 2005                                    Respectfully submitted,

                                                 DAVID A. VICINANZO, RECEIVER


                                                 /s/Kevin M. Fitzgerald
                                                 Kevin M. Fitzgerald (admitted pro hac vice)
                                                 Steven N. Fuller (BBO #550224)
                                                 Francis C. Morrissey (BBO #567589)
                                                 Nixon Peabody LLP
                                                 100 Summer Street
                                                 Boston, MA  02110
                                                 (617) 345-1000

BOS1508867.6

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL NO. *05-10144-WG Y* |
| | ) |
| BRADFORD C. BLEIDT, | ) VIOLATIONS: |
| Defendant | ) 18 U.S.C. §1341 (MAIL FRAUD) |
| | ) 18 U.S.C. §1957 (MONETARY |
| | ) TRANSACTIONS IN PROPERTY DERIVED |
| | ) FROM SPECIFIED UNLAWFUL ACTIVITY) |
| | ) |

INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

I.   BACKGROUND AND SCHEME TO DEFRAUD

1.   At all times material to this Information, defendant
**BRADFORD C. BLEIDT** ("**BLEIDT**") was an individual living in
Manchester-By-The-Sea, Massachusetts.

2.   At all times material to this Information, Allocation
Plus Asset Management Company, Inc. ("APAM") was an entity doing
business in Massachusetts.  Since on or about January 31, 1994,
APAM was registered with the United States Securities and
Exchange Commission ("SEC") as an investment adviser.  At all
times material to this Information, **BLEIDT** was the president and
sole shareholder of APAM.

3.   At all times material to this Information, Financial
Perspectives Planning Services, Inc. ("FPPS") was an entity doing
business in Massachusetts.  Since on or about April 28, 1986,

1

FPPS was registered with the United States Securities and Exchange Commission ("SEC") as an investment adviser. At all times material to this Information, **BLEIDT** was the chief executive officer and majority shareholder of FPPS.

4. Beginning in or about a date uncertain but no later than January 1998, and continuing until on or about November 12, 2004, in the District of Massachusetts and elsewhere, the defendant herein, **BRADFORD C. BLEIDT**, did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

5. The scheme consisted essentially of **BLEIDT** obtaining funds from individuals and entities (hereafter "client-victims") by representing to them that their funds would be invested through his APAM business in legitimate securities instruments, including money market funds, mutual funds, and Treasury Notes. Instead, **BLEIDT** used those funds for **BLEIDT**'s personal and business purposes.

6. By this fraudulent scheme, **BLEIDT** defrauded approximately 125 client-victims of more than $27 million.

7. **BLEIDT** used the funds he received from client-victims for a variety of personal and business purposes. **BLEIDT** used approximately $15 million for the operation and purchase of radio station WBIX. **BLEIDT** used approximately $2-3 million for the

2

operation of FPPS. **BLEIDT** used approximately $4-5 million for his own personal expenses and those of others related and/or associated with him.

8.    **BLEIDT** did a variety of actions in furtherance of his fraudulent scheme, including the following:

a.    **BLEIDT** obtained money from client-victims by representing falsely that their funds would be invested in legitimate securities instruments, including but not limited to money market funds, mutual funds, Treasury Notes, and annuities;

b.    **BLEIDT** induced some client-victims to liquidate other legitimate investments, including withdrawing substantial funds from bank and brokerage accounts. **BLEIDT** induced some client-victims to give him all or most of their savings based on the false representation that the funds would be safely invested.

c.    **BLEIDT** used his position as a member of a fraternal organization to induce other members to invest their funds with him.

d.    **BLEIDT** induced client-victims to issue checks to him payable to "APAM," and then deposited those checks into a bank account named "APAM ALLOCATION PLUS ASSET MANAGEMENT INC. BRADFORD C. BLEIDT." **BLEIDT** kept this account separate and apart from the legitimate books

3

and records of the APAM business by, among other things, causing the account statements and cancelled checks to be sent by the bank to **BLEIDT**'s personal residence. **BLEIDT** had sole authority to withdraw funds from this account and routinely did so for his own personal and business purposes.

e.  **BLEIDT** caused regular account statements to be prepared and mailed to client-victims. Those account statements represented falsely that client-victims' funds were invested in legitimate securities through a legitimate brokerage firm, and further falsely represented the current value of the accounts, dividends and interest earned, and gains and losses incurred;

f.  **BLEIDT** caused false and fraudulent IRS Form 1099's to be prepared and mailed to some client-victims. Those documents reflected falsely the gains and/or losses purportedly incurred by **BLEIDT**'s client-victims during the tax year;

g.  **BLEIDT** represented to some client-victims that their funds would be invested in annuities and they would receive regular monthly payments from their accounts. For those client-victims, **BLEIDT** caused regular monthly payments to be made; however, he made those payments using funds obtained from other client-victims.

h.  When requested, **BLEIDT** made partial or full payment of

4

funds to client-victims, using funds he had obtained from other client-victims. **BLEIDT** made such payments in order to keep his scheme from being discovered, which would have resulted from not making such payments.

i.     **BLEIDT** concealed his scheme from his employees and government regulators by, among other things, keeping the files relating to his fraudulent scheme in a file drawer in his locked office, and limiting communications between his client-victims and other APAM and FPPS employees.

## II.  COUNTS 1-114 - MAIL FRAUD (18 U.S.C. §1341)

9.   The allegations contained in paragraphs 1-8 of this Information are hereby re-alleged and incorporated by reference.

10.   On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant herein,

**BRADFORD C. BLEIDT,**

having devised and intending to devise a scheme and artifice to defraud, and obtain money and property by means of false and fraudulent pretenses, representations and promises concerning material facts and matters, for the purpose of executing the scheme and artifice to defraud and attempting to do so, did knowingly cause to be delivered by the United States Postal Service or any private or commercial interstate carrier according to directions thereon Portfolio Summaries which purported to

5

reflect the details of funds invested with and through APAM, to the following client-victims (who, in the case of individuals, are identified by their initials):

| COUNT | CUSTOMER/VICTIM | DATE (ON OR ABOUT) |
|-------|-----------------|--------------------|
| 1 | F. A. | August 2003 |
| 2 | S. J. B. | July 2003 |
| 3 | E. A. B. | October 2003 |
| 4 | S. B. | July 2003 |
| 5 | A. B. | July 2004 |
| 6 | B. B. | July 2003 |
| 7 | M. F. B. | July 2003 |
| 8 | Mr. and Mrs. L. B. | July 2004 |
| 9 | G. B. and N. B. | July 2004 |
| 10 | C. B. | July 2003 |
| 11 | P. R. B. | January 2004 |
| 12 | R. B. | July 2004 |
| 13 | M. C. | July 2003 |
| 14 | E. J. C. | August 2004 |
| 15 | B. C. | July 2004 |
| 16 | J. C. | July 2003 |
| 17 | J. C. and M. C. | November 2004 |
| 18 | D. C. and L. C. | July 2003 |
| 19 | L. D. | January 2004 |
| 20 | L. D. | July 2004 |
| 21 | E. E. | January 2004 |
| 22 | J. E. | July 2004 |
| 23 | L. F. | July 2003 |
| 24 | R. E. F. and J. I. F. | July 2004 |

6

| 25 | J. F. | July 2004 |
| 26 | A. M. F. | July 2003 |
| 27 | J. A. G. | July 2004 |
| 28 | A. A. G. | July 2003 |
| 29 | T. G. G. | July 2004 |
| 30 | D. R. G. | July 2004 |
| 31 | N. J. G. | July 2003 |
| 32 | P. E. H. | July 2004 |
| 33 | A. D. I. and C. Z. | July 2003 |
| 34 | D. I. | November 2003 |
| 35 | T. F. J. and D. J. | July 2004 |
| 36 | T. F. K., Jr. | July 2003 |
| 37 | W. H. K. | July 2004 |
| 38 | M. C. K. | July 2003 |
| 39 | S. R. K. | July 2004 |
| 40 | C. K. | July 2003 |
| 41 | R. L. and M. L. | July 2004 |
| 42 | J. L. | July 2003 |
| 43 | D. B. L. | July 2004 |
| 44 | M. L. | July 2003 |
| 45 | B. L. | July 2004 |
| 46 | R. M. and L. M. | November 2004 |
| 47 | W. M. and P. M. | August 2004 |
| 48 | S. M. | July 2003 |
| 49 | A. M. and S. M. | July 2003 |
| 50 | F. M. and E. M. | January 2004 |
| 51 | Mr. and Mrs. W. M. | July 2003 |
| 52 | R. A. M. | January 2004 |
| 53 | C. M. and W. M. | July 2003 |

| 54 | C. L. M. | July 2004 |
| 55 | J. W. M. | July 2004 |
| 56 | B. N. | July 2004 |
| 57 | M. N. | October 2004 |
| 58 | C. F. N. | July 2003 |
| 59 | B. P. | July 2004 |
| 60 | E. M. P. | July 2003 |
| 61 | R. P. | July 2003 |
| 62 | B. B. P. | July 2004 |
| 63 | M. P. | July 2003 |
| 64 | S. P. | July 2003 |
| 65 | D. P. | January 2004 |
| 66 | W. P. and L. P. | August 2004 |
| 67 | A. P. | September 2004 |
| 68 | D. R. and M. R. | September 2004 |
| 69 | A. R. and G. R. | July 2004 |
| 70 | M. J. R. | July 2003 |
| 71 | F. R. | July 2003 |
| 72 | S. R. | July 2003 |
| 73 | B. R. R. | July 2003 |
| 74 | M. S. | July 2003 |
| 75 | G. S. | July 2004 |
| 76 | R. S. | July 2004 |
| 77 | L. J. S. | July 2003 |
| 78 | R. L. S. | July 2003 |
| 79 | J. S. | September 2004 |
| 80 | L. K. T. | July 2004 |
| 81 | H. T. | September 2004 |
| 82 | M. N. T. | July 2003 |

| 83 | A. T. and D. T. | October 2003 |
| 84 | E. J. T. | September 2004 |
| 85 | M. T. | July 2003 |
| 86 | L. C. T. | August 2004 |
| 87 | T. C. | July 2003 |
| 88 | V. V. | July 2003 |
| 89 | A. M. W. | July 2004 |
| 90 | R. W. | July 2003 |
| 91 | L. W. | July 2003 |
| 92 | D. J. Y. | November 2003 |
| 93 | E. J. Y. | July 2004 |
| 94 | Masons of Mass. Sutton Royal | July 2004 |
| 95 | Bay State Lodge | October 2004 |
| 96 | Cardarelli Family Trust | July 2004 |
| 97 | Masons of Mass Bethlehem Lodge | July 2003 |
| 98 | Flagship Travel Agency, Inc. | December 2003 |
| 99 | J & J Sales and Marketing, Inc. | August 2003 |
| 100 | G. Sidney MacFarlane Permanent Fund | July 2004 |
| 101 | Permanent Fund of Tyrian Lodge | August 2003 |
| 102 | Lynn Masonic Temple Association | July 2003 |
| 103 | Robert L. Gove Trust | July 2004 |
| 104 | Greek Orthodox Church | June 2004 |
| 105 | Healthcare Financial, Inc. | July 2003 |
| 106 | Sophie E. Hersey Family Trust | July 2003 |

| 107 | Ipswich-Ferson Royal Arch Chapter | October 2004 |
| 108 | The Master's Lodge | September 2003 |
| 109 | Jordon Masonic Temple Trust | July 2003 |
| 110 | Landry Architect Retirement Plan | July 2004 |
| 111 | Mount Carmel Lodge | July 2004 |
| 112 | Salem Zebulun Council | July 2004 |
| 113 | Stephen David Johnson Scholarship Fund | July 2004 |
| 114 | Tunxis Village Condo Association | July 2004 |

All in violation of 18 U.S.C. §1341 and 2.

### III. COUNT 115 - MAIL FRAUD (18 U.S.C. §1341)

11. The allegations contained in paragraphs 1-8 of this Information are hereby re-alleged and incorporated by reference.

12. On or about September 20, 2004, in the District of Massachusetts and elsewhere, the defendant herein,

**BRADFORD C. BLEIDT,**

having devised and intending to devise a scheme and artifice to defraud, and obtain money and property by means of false and fraudulent pretenses, representations and promises concerning material facts and matters, for the purpose of executing the scheme and artifice to defraud and attempting to do so, did knowingly cause to be delivered by the United States Postal

10

Service according to directions thereon a copy of an executed Annuity Surrender Request form and handwritten note to a client-victim with the initials M.A.

All in violation of 18 U.S.C. §1341 and 2.

IV. **COUNT 116 - MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM SPECIFIED UNLAWFUL ACTIVITY (18 U.S.C. §1957)**

13. The allegations contained in paragraphs 1-8 and 10 of this Information are hereby re-alleged and incorporated by reference.

14. On or about January 14, 2004, in the District of Massachusetts and elsewhere,

**BRADFORD C. BLEIDT**

did knowingly engage and attempted to engage in a monetary transaction in criminally derived property that was of a value greater than $10,000 and was derived from specified unlawful activity (to wit, mail fraud), including the following transaction: the transfer of approximately $1,301,000 from Sovereign Bank Account No. 61000016545 to Sovereign Bank Account No. 61004945798 in the name of Perspectives Broadcasting Inc.

All in violation of 18 U.S.C. §1957 and 2.

MICHAEL J. SULLIVAN
United States Attorney

By: _____
MARK J. BALTHAZARD
Assistant U.S. Attorney

11

EXHIBIT B



**Saperstein**
AUCTIONEERS & APPRAISERS

07-14-2005

Frank Morrissey
Nixon Peabody
100 Summer St.
Boston, MA 02110

Re:   Receiver's Sale @ Public Auction
      SEC vs. Bradford C. Bleidt
      1 Burlington Ave., Wilmington, MA
      Thursday, July 7, 2005 @ 11 AM

Dear Frank,

Enclosed please find a check in the amount of $29,123.38 that represents the net proceeds from the above named sale. I have also included copies of the paperwork pertaining to the sale and Invoice #05-5057 in the amount of $10,943.37 and marked "PAID".

If we may be of further assistance in this or other matters, please do not hesitate to contact me at your earliest convenience.

Very truly yours,

Paul E. Saperstein Co., Inc.

Michael Saperstein
Mes

By fax & regular mail

w/enclosures

617/227-6553  Main
781/767-9686  Fax
144 Centre Street
Holbrook, MA  02343-1011
www.pesco.com



Paul E Saperstein Company

144 Centre Street
Holbrook, MA 02343
Phone #  617-227-6553
Fax #    781-767-9686

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/14/2005 | 05-5057 |

**PAID**

Bill To

Nixon Peabody LLP
Frank Morrissey
100 Summer Street
Boston, MA 02110-2131

| Description | Amount |
|-------------|--------|
| Receiver's Sale @ Public Auction | |
| Bleidt, Civil Action #04-12415-NG | |
| 1 Burlington Ave., Wilmington, MA | |
| Thursday, July 7, 2005 @ 11 AM | |
| | |
| STATEMENT OF CHARGES: | |
| Gross Deposits          $ 40,961.27 | |
| Buyer Premium           $  3,644.25 | 3,644.25 |
| Net Money               $ 37,317.02 | |
| Sales Tax Collected     $    874.52 | |
| Gross Sales             $ 36,442.50 | |
| Auction Costs | |
| 06-26-2005  Boston Globe | 838.00 |
| 06-26-2005  Boston Herald | 475.00 |
| 07-03-2005  Boston Globe | 807.00 |
| 07-03-2005  Boston Herald | 465.00 |
| Arts & Antiques | 392.00 |
| Move Labor | 2,500.00 |
| Commission (5%) | 1,822.12 |

| **Total** | $10,943.37 |



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

# Bidder Summary
## Auction #21 - 7/7/2005

| 1 | Nancy Singer | | | | | 617-527-7093 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | | LotPrice | Total |
| 1 | 143 | FRAMED OIL ON CANVAS | One Lot | 1 | | $1400.00 | $1400.00 |
| 1 | 165 | FRAMED SIGNED OIL ON " | One Lot | 1 | | $1050.00 | $1050.00 |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $2,450.00 | Total Deposits | $0.00 |
| Lots | | Buyers Premium | $245.00 | Total Payments | $2,695.00 |
| Items | | Total Tax | $0.00 | Total Paid | **$2,695.00** |
| Deposit Left | | Invoices Total | **$2,695.00** | Balance Due | **$0.00** |

| 12 | Thomas Riquier | | | | | 978-777-5000 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | | LotPrice | Total |
| 12 | 134 | FRAMED CARLEEN MUNIZ OIL RIES" | One Lot | 1 | | $225.00 | $225.00 |
| 12 | 142 | FRAMED OIL ON CANVAS ART | One Lot | 1 | | $2000.00 | $2000.00 |
| 12 | 156 | FRAMED SIGNED RATCLIFF | One Lot | 1 | | $800.00 | $800.00 |
| 12 | 157 | FRAMED OIL ON CANVAS | One Lot | 1 | | $500.00 | $500.00 |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $3,525.00 | Total Deposits | $0.00 |
| Lots | | Buyers Premium | $352.50 | Total Payments | $4,053.75 |
| Items | | Total Tax | $176.25 | Total Paid | **$4,053.75** |
| Deposit Left | | Invoices Total | **$4,053.75** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.

· 2



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 – 7/7/2005

| 14 | Svetlana Zemel | | | | 781-631-5932 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 14 | 81 | LOT- COINS AND ONE STAMP | One Lot | 1 | $50.00 | $50.00 |
| 14 | 112 | UNFRAMED ABSTRACT ART | One Lot | 3 | $10.00 | $10.00 |
| 14 | 141 | FRAMED ELIZBETH RICKERT | One Lot | 1 | $500.00 | $500.00 |
| 14 | 149 | FRAMED OIL ON CANVAS | One Lot | 1 | $100.00 | $100.00 |
| 14 | 158 | FRAMED OIL ON CANVAS GT HARBOR TWILIGHT | One Lot | 1 | $950.00 | $950.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $1,610.00 | Total Deposits | $100.00 |
|---|---|---|---|
| Buyers Premium | $161.00 | Total Payments | $1,751.50 |
| Total Tax | $80.50 | Total Paid | $1,851.50 |
| Invoices Total | $1,851.50 | Balance Due | $0.00 |

| 15 | Tom Markham | | Nashaway | | | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 15 | 41 | PEAVEYEPMCAP KEYBOARD | One Lot | 1 | $150.00 | $150.00 |
| 15 | 82 | MAUIJIM SUN GLASSES WITH | One Lot | 1 | $65.00 | $65.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $215.00 | Total Deposits | $20.00 |
|---|---|---|---|
| Buyers Premium | $21.50 | Total Payments | $216.50 |
| Total Tax | $0.00 | Total Paid | $236.50 |
| Invoices Total | $236.50 | Balance Due | $0.00 |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.

3



## Paul E. Saperstein Co., Inc.
## BLEIDT ARTWORK
144 Centre Street
Holbrook, MA 02343
617-227-6553

# Bidder Summary
Auction #21 - 7/7/2005

| 17 | Patricia Abrams | | | | 978-667-3703 | |
|----|----|----|----|----|----|----|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 17 | 25 | BROIL MASTER GAS GRILL | One Lot | 1 | $25.00 | $25.00 |
| 17 | 95 | SONY DVD/ CD/ VIDEO CD | One Lot | 1 | $25.00 | $25.00 |
| 17 | 108 | WOOD DRESSER | One Lot | 1 | $25.00 | $25.00 |

**Uninvoiced Lots**

| Bid | |
|----|----|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $75.00 | Total Deposits | $20.00 |
|----|----|----|----|
| Buyers Premium | $7.50 | Total Payments | $66.25 |
| Total Tax | $3.75 | Total Paid | $86.25 |
| Invoices Total | $86.25 | Balance Due | $0.00 |

| 19 | JANICE PARADY | | | | 781 246 2680 | |
|----|----|----|----|----|----|----|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 19 | 97 | SHREDDER | One Lot | 1 | $10.00 | $10.00 |
| 19 | 199 ED 2002 | UNFRAMED ACRYLIC ON | One Lot | 1 | $1150.00 | $1150.00 |
| 19 | 203 | FRAMED ART ON BOARD | One Lot | 1 | $10.00 | $10.00 |
| 19 | 211 | FRAMED MIRROR | One Lot | 1 | $20.00 | $20.00 |

**Uninvoiced Lots**

| Bid | |
|----|----|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $1,190.00 | Total Deposits | $300.00 |
|----|----|----|----|
| Buyers Premium | $119.00 | Total Payments | $1,068.50 |
| Total Tax | $59.50 | Total Paid | $1,368.50 |
| Invoices Total | $1,368.50 | Balance Due | $0.00 |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 – 7/7/2005

| 21 | Jackie Beckwith | | | | 7812090166 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 21 | 132 | FRAMED OIL ON BOARD AA N SNOW" | One Lot | 1 | $225.00 | $225.00 |
| 21 | 151 | FRAMED OIL ON CANVAS ND" | One Lot | 1 | $650.00 | $650.00 |
| 21 | 185 | FRAMED PASTEL SIGNED NANTUCKET | One Lot | 1 | $450.00 | $450.00 |
| 21 | 186 | FRAMED PASTEL SIGNED HE SHORE" NANTUCKET | One Lot | 1 | $0.00 | $0.00 |
| 21 | 192 | UNFRAMED ACRYLIC ON | One Lot | 1 | $10.00 | $10.00 |
| 21 | 209 | OIL ON CANVAS, BYGG TION II" | One Lot | 1 | $750.00 | $750.00 |
| 21 | 210 | OIL ON CANVAS, BY GG ATION III" | One Lot | 1 | $0.00 | $0.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $2,085.00 | Total Deposits | $100.00 |
|---|---|---|---|
| Buyers Premium | $208.50 | Total Payments | $2,297.75 |
| Total Tax | $104.25 | Total Paid | **$2,397.75** |
| Invoices Total | **$2,397.75** | Balance Due | **$0.00** |

| 23 | Adam Slezik | | | | 978-42--0157 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 23 | 10 | WOODEN CHAIRS | One Lot | 2 | $10.00 | $10.00 |
| 23 | 11 | WOODEN CHAIRS | One Lot | 2 | $0.00 | $0.00 |
| 23 | 12 | WOODEN BENCH | One Lot | 1 | $0.00 | $0.00 |
| 23 | 13 | WOODEN TABLE | One Lot | 1 | $0.00 | $0.00 |
| 23 | 19 | ORIENTAL STYLE RUG | One Lot | 1 | $225.00 | $225.00 |
| 23 | 79 | TIVO | One Lot | 1 | $10.00 | $10.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $245.00 | Total Deposits | $100.00 |
|---|---|---|---|
| Buyers Premium | $24.50 | Total Payments | $169.50 |
| Total Tax | $0.00 | Total Paid | **$269.50** |
| Invoices Total | **$269.50** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 – 7/7/2005

| 25 | | Secco | | | 617-620-9444 | |
|----|----|----|----|----|----|----|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 25 | 28 | COMPUTER HUTCH | One Lot | 1 | $25.00 | $25.00 |
| 25 | 65 | RADIOSHACK CORDLESS | One Lot | 1 | $5.00 | $5.00 |
| 25 | 67 | SONY VCR | One Lot | 1 | $10.00 | $10.00 |
| 25 | 88 | LAPTOP BAG | One Lot | 1 | $5.00 | $5.00 |

**Uninvoiced Lots**

| Bid |
| Lots |
| Items |
| Deposit Left |

**Invoiced Lots**

| Total Amount Bid | $45.00 | Total Deposits | $0.00 |
|----|----|----|----|
| Buyers Premium | $4.50 | Total Payments | $49.50 |
| Total Tax | $0.00 | Total Paid | $49.50 |
| Invoices Total | **$49.50** | Balance Due | **$0.00** |

| 26 | MARK KUZNETS | REMTEC | | | 781-762-9191 | |
|----|----|----|----|----|----|----|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 26 | 66 | AIWA DSP SURROUND AMP | One Lot | 1 | $40.00 | $40.00 |
| 26 | 70 | CAMBRIDGE SOUNDWORK | One Lot | 2 | $75.00 | $75.00 |
| 26 | 71 | ASSORTED SPEAKERS | One Lot | 3 | $0.00 | $0.00 |
| 26 | 72 | ENSEMBALE SPEAKERS | One Lot | 2 | $0.00 | $0.00 |

**Uninvoiced Lots**

| Bid |
| Lots |
| Items |
| Deposit Left |

**Invoiced Lots**

| Total Amount Bid | $115.00 | Total Deposits | $0.00 |
|----|----|----|----|
| Buyers Premium | $11.50 | Total Payments | $132.25 |
| Total Tax | $5.75 | Total Paid | **$132.25** |
| Invoices Total | **$132.25** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.

6



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

# Bidder Summary
### Auction #21 – 7/7/2005

## 27    Carol Whittaker         Forthill Antiques              978-465-5739

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 27 | 39 | WOODEN CABINET | One Lot | 1 | $130.00 | $130.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $130.00 | Total Deposits | $100.00 |
| Buyers Premium | $13.00 | Total Payments | $43.00 |
| Total Tax | $0.00 | Total Paid | **$143.00** |
| Invoices Total | **$143.00** | Balance Due | **$0.00** |

## 28    Edward Gillis         Casco Bay Refinishing              207-874-1981

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 28 | 111 | STEINWAY BABY GRAND | One Lot | 1 | $7500.00 | $7500.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $7,500.00 | Total Deposits | $0.00 |
| Buyers Premium | $750.00 | Total Payments | $8,250.00 |
| Total Tax | $0.00 | Total Paid | **$8,250.00** |
| Invoices Total | **$8,250.00** | Balance Due | **$0.00** |

## 3    Brett Downer         Brett Downer Art and Antiques              508-358-1148

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 3 | 115 | CHARLES C ALLEN (1886-1950) | One Lot | 1 | $650.00 | $650.00 |
| 3 | 124 | FRAMED OIL ON BOARD | One Lot | 1 | $500.00 | $500.00 |
| 3 | 126 | FRAMED CASTELLANET NVAS "BOSTON GARDEN" | One Lot | 1 | $40.00 | $40.00 |
| 3 | 133 | FRAMED ON CANVAS SIGNED | One Lot | 1 | $300.00 | $300.00 |
| 3 | 148 | FRAMED DOUGHERTY SIGNED Y ROAD" | One Lot | 1 | $350.00 | $350.00 |
| 3 | 164 | FRAMED OIL ON CANVAS | One Lot | 1 | $400.00 | $400.00 |
| 3 | 168 | FRAMED OIL ON CANVAS | One Lot | 1 | $100.00 | $100.00 |
| 3 | 173 | FRAMED GEORGE THOMAS OIL ON BOARD | One Lot | 1 | $150.00 | $150.00 |
| 3 | 174 | FRAMED OIL ON BOARD | One Lot | 1 | $300.00 | $300.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $2,790.00 | Total Deposits | $200.00 |
| Buyers Premium | $279.00 | Total Payments | $2,869.00 |
| Total Tax | $0.00 | Total Paid | **$3,069.00** |
| Invoices Total | **$3,069.00** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 – 7/7/2005

---

**30      Eric Swanzey**                                                           **978-526-9953**

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 30 | 87 | LOT- IN BOX | One Lot | 1 | $20.00 | $20.00 |
| 30 | 205 | FRAMED PASTEL JEFF APE" | One Lot | 1 | $87.50 | $87.50 |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $107.50 | Total Deposits | $20.00 |
| Lots | | Buyers Premium | $10.75 | Total Payments | $103.63 |
| Items | | Total Tax | $5.38 | Total Paid | **$123.63** |
| Deposit Left | $0.00 | Invoices Total | **$123.63** | Balance Due | **$0.00** |

---

**33      Tony Rosa              Baystate Solutions**                             **781-284-3666**

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 33 | 86 | WOODEN TABLE WITH GLASS | One Lot | 1 | $60.00 | $60.00 |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $60.00 | Total Deposits | $0.00 |
| Lots | | Buyers Premium | $6.00 | Total Payments | $69.00 |
| Items | | Total Tax | $3.00 | Total Paid | **$69.00** |
| Deposit Left | | Invoices Total | **$69.00** | Balance Due | **$0.00** |

---

**34      Ron Pelletier**

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 34 | 37 | GEODE | One Lot | 1 | $187.50 | $187.50 |
| 34 | 190 | FRAMED SIGNED AND 1983 | One Lot | 1 | $30.00 | $30.00 |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $217.50 | Total Deposits | $0.00 |
| Lots | | Buyers Premium | $21.75 | Total Payments | $239.25 |
| Items | | Total Tax | $0.00 | Total Paid | **$239.25** |
| Deposit Left | | Invoices Total | **$239.25** | Balance Due | **$0.00** |

---

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
**Auction #21 - 7/7/2005**

---

| 35 | Henry Garrity | | Central Furniture | | | | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | | LotAuctionType | Qty | LotPrice | Total |
| 35 | 34 | WOOD FILE CABNIET | | One Lot | 1 | $30.00 | $30.00 |
| 35 | 35 | WOODEN TABLE | | One Lot | 1 | $0.00 | $0.00 |
| 35 | 98 | LOT- WICKER FURNITURE | | One Lot | 1 | $25.00 | $25.00 |
| 35 | 107 | WOOD END TABLE | | One Lot | 1 | $0.00 | $0.00 |
| 35 | 119 | CHALMERS OIL ON CANVAS ND" | | One Lot | 1 | $450.00 | $450.00 |
| 35 | 152 | FRAMED CHALMERS | | One Lot | 1 | $450.00 | $450.00 |
| 35 | 166 | INK AND PENCIL BY CC BELL | | One Lot | 1 | $575.00 | $575.00 |
| 35 | 170 | OIL ON CANVAS SIGNED NG CHARLESTOWN" | | One Lot | 1 | $700.00 | $700.00 |
| 35 | 179 | FRAMED SIGNED AND | | One Lot | 1 | $10.00 | $10.00 |
| 35 | 180 | FRAMED SIGNED AND | | One Lot | 1 | $20.00 | $20.00 |
| 35 | 188 | FRAMED THOMAS SIGNED | | One Lot | 1 | $10.00 | $10.00 |
| 35 | 191 | FRAMED SIGNED AND COPLEY SQUARE | | One Lot | 1 | $30.00 | $30.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $2,300.00 | Total Deposits | $420.00 |
| Buyers Premium | $230.00 | Total Payments | $2,110.00 |
| Total Tax | $0.00 | Total Paid | **$2,530.00** |
| Invoices Total | **$2,530.00** | Balance Due | **$0.00** |

---

| 36 | Sheila Swales | | | | | 617-242-5588 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | | LotAuctionType | Qty | LotPrice | Total |
| 36 | 42 | WALL SHELVES | | One Lot | 3 | $30.00 | $30.00 |
| 36 | 90 | AMERICAN FLAG | | One Lot | 1 | $20.00 | $20.00 |
| 36 | 127 | FRAMED JAN PERRY | | One Lot | 1 | $25.00 | $25.00 |
| 36 | 150 | OIL ON CANVAS SIGNED | | One Lot | 1 | $50.00 | $50.00 |
| 36 | 159 | FRAMED NANCY ROSSI "NEW | | One Lot | 1 | $125.00 | $125.00 |
| 36 | 178 | FRAMED SIGNED AND | | One Lot | 1 | $30.00 | $30.00 |
| 36 | 197 | FRAMED WATERCOLOR ON R | | One Lot | 1 | $25.00 | $25.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $305.00 | Total Deposits | $20.00 |
| Buyers Premium | $30.50 | Total Payments | $330.75 |
| Total Tax | $15.25 | Total Paid | **$350.75** |
| Invoices Total | **$350.75** | Balance Due | **$0.00** |

---

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 – 7/7/2005

| 37 | JIM PUOPOLO | LEVAGGI | | | 781-335-1231 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 37 | 14 | CONTENTS OF CHEST | One Lot | 1 | $40.00 | $40.00 |
| 37 | 15 | CHEST | One Lot | 1 | $0.00 | $0.00 |
| 37 | 22 | TREK 7200 BICYCLE | One Lot | 1 | $200.00 | $200.00 |
| 37 | 33 | WOODEN HUTCH | One Lot | 1 | $25.00 | $25.00 |
| 37 | 36 | WOODEN TABLE | One Lot | 1 | $20.00 | $20.00 |
| 37 | 52 | LOT- SIX ASSORTED BOXES | One Lot | 1 | $10.00 | $10.00 |
| 37 | 56 | BROKEN CHAIR | One Lot | 1 | $5.00 | $5.00 |
| 37 | 68 | FOLDING TABLE | One Lot | 1 | $10.00 | $10.00 |
| 37 | 69 | BROOKSTONE PORTABLE | One Lot | 1 | $0.00 | $0.00 |
| 37 | 85 | SONY LCD MONITOR | One Lot | 1 | $50.00 | $50.00 |
| 37 | 92 | HP PHOTOSMART 7660 | One Lot | 1 | $75.00 | $75.00 |
| 37 | 109 | WOOD CABINET | One Lot | 1 | $10.00 | $10.00 |
| 37 | 110 | GLASS MIRROR | One Lot | 1 | $5.00 | $5.00 |
| 37 | 117 | FRAMED LITHOGRAPH | One Lot | 2 | $10.00 | $10.00 |
| 37 | 120 | FRAMED CONTEMPORARY | One Lot | 1 | $30.00 | $30.00 |
| 37 | 121 | FRAMED BOMBAY PRINT | One Lot | 1 | $10.00 | $10.00 |
| 37 | 122 | FRAMED OIL ON BOARD | One Lot | 1 | $10.00 | $10.00 |
| 37 | 123 | FRAMED CONTEMPORARY | One Lot | 1 | $10.00 | $10.00 |
| 37 | 125 | FRAMED WATERCOLOR "HOT GILMORE | One Lot | 1 | $10.00 | $10.00 |
| 37 | 128 | FRAMED 1996 | One Lot | 1 | $10.00 | $10.00 |
| 37 | 162 | FRAMED TF DOUGHERTY NVAS | One Lot | 1 | $200.00 | $200.00 |
| 37 | 163 | FRAMED RACHAD | One Lot | 1 | $10.00 | $10.00 |
| 37 | 176 | FRAMED SIGNED AND | One Lot | 1 | $10.00 | $10.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $760.00 | Total Deposits | $0.00 |
| Buyers Premium | $76.00 | Total Payments | $836.00 |
| Total Tax | $0.00 | Total Paid | **$836.00** |
| Invoices Total | **$836.00** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 – 7/7/2005

| 39 | Robert Simonds | | | | | 781-933-0243 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | | LotPrice | Total |
| 39 | 104 | SPEAKER STANDS | One Lot | 2 | | $25.00 | $25.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $25.00 | Total Deposits | $20.00 |
| Buyers Premium | $2.50 | Total Payments | $8.75 |
| Total Tax | $1.25 | Total Paid | $28.75 |
| Invoices Total | $28.75 | Balance Due | $0.00 |

| 4 | Joseph Clark | C&C Auctions | | | | 914-833-8336 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | | LotPrice | Total |
| 4 | 30 | ROUND WOODEN TABLE WITH | One Lot | 1 | | $37.50 | $37.50 |
| 4 | 32 | CHAIR WITH PILLOW | One Lot | 1 | | $25.00 | $25.00 |
| 4 | 38 | TWO PIECE HUTCH | One Lot | 1 | | $25.00 | $25.00 |
| 4 | 44 | CAT TABLE | One Lot | 1 | | $10.00 | $10.00 |
| 4 | 45 | LOT- ASSORTED LAMPS | One Lot | 1 | | $60.00 | $60.00 |
| 4 | 57 | UPHOLSTERED CHAIR | One Lot | 1 | | $0.00 | $0.00 |
| 4 | 59 | MARNTZ SR73 RECIEVER | One Lot | 1 | | $40.00 | $40.00 |
| 4 | 74 | GLASS TOP TABLE | One Lot | 1 | | $10.00 | $10.00 |
| 4 | 75 | METAL CANDLE HOLDER | One Lot | 1 | | $5.00 | $5.00 |
| 4 | 189 | FRAMED PRINT | One Lot | 1 | | $10.00 | $10.00 |
| 4 | 193 | FRAMED OIL ON CANVAS K ROAD" | One Lot | 1 | | $750.00 | $750.00 |
| 4 | 194 | FRAMED SOFT PASTEL BERNARD DOCKS" | One Lot | 1 | | $475.00 | $475.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $1,447.50 | Total Deposits | $500.00 |
| Buyers Premium | $144.75 | Total Payments | $1,164.63 |
| Total Tax | $72.38 | Total Paid | $1,664.63 |
| Invoices Total | $1,664.63 | Balance Due | $0.00 |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.          **11**



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 – 7/7/2005

## 40    Marc Hoffman                                         978-682-6994

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 40 | 5 | ASSORTED CLOCKS | One Lot | 5 | $10.00 | $10.00 |
| 40 | 8 | METAL RACKS | One Lot | 2 | $5.00 | $5.00 |
| 40 | 9 | LOT- ASSORTED PLASTIC | One Lot | 1 | $0.00 | $0.00 |
| 40 | 21 | FLOWER DESIGN RUG | One Lot | 1 | $10.00 | $10.00 |
| 40 | 27 | BICYCLE RACK | One Lot | 1 | $25.00 | $25.00 |
| 40 | 61 | PHILMORE SUPER RADIO | One Lot | 1 | $10.00 | $10.00 |
| 40 | 63 | BRIGHT ID'ER | One Lot | 1 | $10.00 | $10.00 |
| 40 | 73 | LOT- ALPINE STEREO | One Lot | 1 | $10.00 | $10.00 |
| 40 | 96 | TOSHIBIA CINEMA SERIES DVD | One Lot | 1 | $25.00 | $25.00 |
| 40 | 100 | CELTICS JERSEY | One Lot | 1 | $20.00 | $20.00 |
| 40 | 113 | SIGNED AND DATED | One Lot | 8 | $25.00 | $25.00 |
| 40 | 147 | FRAMED OIL ON CANVAS | One Lot | 1 | $100.00 | $100.00 |
| 40 | 172 | FRAMED ART ON BOARD | One Lot | 1 | $20.00 | $20.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $270.00 | Total Deposits | $0.00 |
| Buyers Premium | $27.00 | Total Payments | $310.50 |
| Total Tax | $13.50 | Total Paid | **$310.50** |
| Invoices Total | **$310.50** | Balance Due | **$0.00** |

## 42    ED MCDONOUGH        VANTAGE                      781-293-9332

| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
|---|---|---|---|---|---|---|
| 42 | 40 | PORTABLE TV | One Lot | 1 | $15.00 | $15.00 |
| 42 | 80 | PELLET GUN | One Lot | 1 | $25.00 | $25.00 |
| 42 | 101 | LOT- SPORTS CARDS | One Lot | 1 | $25.00 | $25.00 |

**Uninvoiced Lots**

| | |
|---|---|
| Bid | |
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| | | | |
|---|---|---|---|
| Total Amount Bid | $65.00 | Total Deposits | $0.00 |
| Buyers Premium | $6.50 | Total Payments | $74.75 |
| Total Tax | $3.25 | Total Paid | **$74.75** |
| Invoices Total | **$74.75** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

# Bidder Summary
## Auction #21 - 7/7/2005

| 44 | Stanley Robinson | | | | 781-944-4136 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 44 | 1 | METAL BAKERS RACK | One Lot | 1 | $10.00 | $10.00 |
| 44 | 2 | SINGER SEWING MACHINE | One Lot | 1 | $0.00 | $0.00 |
| 44 | 4 | LOT- METAL ACCESSORIES | One Lot | 1 | $0.00 | $0.00 |
| 44 | 29 | BASKETS | One Lot | 2 | $10.00 | $10.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| Total Amount Bid | $20.00 | Total Deposits | $0.00 |
|---|---|---|---|
| Buyers Premium | $2.00 | Total Payments | $23.00 |
| Total Tax | $1.00 | Total Paid | **$23.00** |
| Invoices Total | **$23.00** | Balance Due | **$0.00** |

| 45 | Lourdes Barrozl | | | | 617-717-8076 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 45 | 16 | GLASS & METAL CORNER | One Lot | 1 | $10.00 | $10.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| Total Amount Bid | $10.00 | Total Deposits | $0.00 |
|---|---|---|---|
| Buyers Premium | $1.00 | Total Payments | $11.50 |
| Total Tax | $0.50 | Total Paid | **$11.50** |
| Invoices Total | **$11.50** | Balance Due | **$0.00** |

| 48 | Judy Donovan | | | | 978-443-7623 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 48 | 93 | HP DESKJET 970CXI PRINTER | One Lot | 1 | $10.00 | $10.00 |
| 48 | 99 | OFFICE CHAIR | One Lot | 1 | $10.00 | $10.00 |
| 48 | 131 | FRAMED POSTER "THE D" | One Lot | 1 | $10.00 | $10.00 |
| 48 | 208 | FRAMED PRINT | One Lot | 1 | $5.00 | $5.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $35.00 | Total Deposits | $10.00 |
|---|---|---|---|
| Buyers Premium | $3.50 | Total Payments | $30.25 |
| Total Tax | $1.75 | Total Paid | **$40.25** |
| Invoices Total | **$40.25** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 - 7/7/2005

| 51 | Keith Doersam | | | | 603-930-0369 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 51 | 84 | DELL DIMESIONS 340 P4 | One Lot | 1 | $175.00 | $175.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $175.00 | Total Deposits | $100.00 |
|---|---|---|---|
| Buyers Premium | $17.50 | Total Payments | $101.25 |
| Total Tax | $8.75 | Total Paid | **$201.25** |
| Invoices Total | **$201.25** | Balance Due | **$0.00** |

| 54 | Robert Norris | Piano Mill | | | 781-826-6600 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 54 | 62 | TIVOLI AUDIO RADIO | One Lot | 1 | $50.00 | $50.00 |
| 54 | 64 | V-TECH TWO PIECE | One Lot | 1 | $25.00 | $25.00 |
| 54 | 94 | HP 4110 PRINTER/ SCANNER/ | One Lot | 1 | $30.00 | $30.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| Total Amount Bid | $105.00 | Total Deposits | $0.00 |
|---|---|---|---|
| Buyers Premium | $10.50 | Total Payments | $120.75 |
| Total Tax | $5.25 | Total Paid | **$120.75** |
| Invoices Total | **$120.75** | Balance Due | **$0.00** |

| 57 | STEVE PIGNATO | COMMON GROUND | | | 617 298 1020 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 57 | 6 | WOODEN TABLE | One Lot | 1 | $10.00 | $10.00 |
| 57 | 7 | TRUNK | One Lot | 1 | $0.00 | $0.00 |
| 57 | 43 | LOT- BEDDING | One Lot | 1 | $37.50 | $37.50 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| Total Amount Bid | $47.50 | Total Deposits | $0.00 |
|---|---|---|---|
| Buyers Premium | $4.75 | Total Payments | $54.63 |
| Total Tax | $2.38 | Total Paid | **$54.63** |
| Invoices Total | **$54.63** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.

14



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

# Bidder Summary
## Auction #21 – 7/7/2005

| 58 | Michael Hayes | | | | 781-395-2121 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 58 | 114 | SIGNED SUTHERLAND | One Lot | 6 | $10.00 | $10.00 |
| 58 | 118 | OIL ON BOARD SIGNED AA | One Lot | 1 | $50.00 | $50.00 |
| | NCHESTER, MA" | | | | | |
| 58 | 129 | FRAMED CHALMERS OIL | One Lot | 1 | $900.00 | $900.00 |
| 58 | 130 | FRAMED WORK ON PAPER | One Lot | 1 | $100.00 | $100.00 |
| 58 | 146 | FRAMED SIGNED PRINT | One Lot | 1 | $50.00 | $50.00 |
| 58 | 155 | FRAMED AND NUMBERED | One Lot | 1 | $150.00 | $150.00 |
| 58 | 161 | FRAMED SIGNED AND | One Lot | 1 | $50.00 | $50.00 |
| | T | | | | | |
| 58 | 167 | FRAMED WATERCOLOR | One Lot | 1 | $100.00 | $100.00 |
| | E | | | | | |
| 58 | 171 | FRAMED SIGNED FIORAVANTI, | One Lot | 1 | $50.00 | $50.00 |
| 58 | 177 | FRAMED OIL ON BOARD | One Lot | 1 | $525.00 | $525.00 |
| | E HEAD" | | | | | |
| 58 | 181 | FRAMED SIGNED AND DATED | One Lot | 1 | $25.00 | $25.00 |
| 58 | 201 | FRAMED PRINT SIGNED | One Lot | 1 | $50.00 | $50.00 |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $2,060.00 | Total Deposits | $0.00 |
| Lots | | Buyers Premium | $206.00 | Total Payments | $2,369.00 |
| Items | | Total Tax | $103.00 | Total Paid | **$2,369.00** |
| Deposit Left | | Invoices Total | **$2,369.00** | Balance Due | **$0.00** |

| 59 | Nelson Cognac | Kouzina | | | 617-558-7677 | |
|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | LotPrice | Total |
| 59 | 23 | GARDEN CART | One Lot | 1 | $10.00 | $10.00 |
| 59 | 26 | SETS OF GOLF CLUBS | One Lot | 1 | $25.00 | $25.00 |
| 59 | 60 | SONY 5 CD CHANGER | One Lot | 1 | $20.00 | $20.00 |
| 59 | 116 | SIGNED AND NUMBERED | One Lot | 1 | $10.00 | $10.00 |
| 59 | 154 | FRAMED SIGNED DH WESTON | One Lot | 1 | $75.00 | $75.00 |
| 59 | 160 | FRAMED CLARECE NORTON | One Lot | 1 | $150.00 | $150.00 |
| | ERCOLOR ON PAPER "BIRCHES" | | | | | |
| 59 | 175 | FRAMED SIGN E.P. BLEIDT | One Lot | 1 | $40.00 | $40.00 |
| 59 | 204 | COLLECTION OF FOUR | One Lot | 1 | $50.00 | $50.00 |
| | S | | | | | |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $380.00 | Total Deposits | $20.00 |
| Lots | | Buyers Premium | $38.00 | Total Payments | $417.00 |
| Items | | Total Tax | | Total Paid | |
| Deposit Left | $0.00 | Invoices Total | **$437.00** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.

15



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 - 7/7/2005

| 6 | Anthony Capodilupo | | Capodilupo Fine Art Inc | | | 617-232-7425 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | | LotPrice | Total |
| 6 | 153 | FRAMED AND MATTED PRINT | One Lot | 1 | | $50.00 | $50.00 |
| 6 | 169 | FRAMED OIL ON BOARD | One Lot | 1 | | $2100.00 | $2100.00 |
| | " 1968 | | | | | | |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $2,150.00 | Total Deposits | $620.00 |
| Lots | | Buyers Premium | $215.00 | Total Payments | $1,745.00 |
| Items | | Total Tax | $0.00 | Total Paid | **$2,365.00** |
| Deposit Left | $0.00 | Invoices Total | **$2,365.00** | Balance Due | **$0.00** |

| 61 | Anne Will | | | | | | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | LotAuctionType | Qty | | LotPrice | Total |
| 61 | 47 | LOT- WINES | One Lot | 1 | | $387.50 | $387.50 |
| 61 | 77 | SHARP LCD FLAT SCREEN 20 | One Lot | 1 | | $325.00 | $325.00 |
| 61 | 78 | SHARP LCD 13 SIU TELEVISION | One Lot | 1 | | $325.00 | $325.00 |
| 61 | 83 | TAG HEWER WRISTWATCH | One Lot | 1 | | $525.00 | $525.00 |
| 61 | 91 | STAND | One Lot | 1 | | $5.00 | $5.00 |
| 61 | 103 | ZENETH LCD PROJECTION | One Lot | 1 | | $675.00 | $675.00 |
| | | CONTROL | | | | | |
| 61 | 135 | FRAMED MAP OF BOSTON | One Lot | 1 | | $25.00 | $25.00 |
| 61 | 138 | FRAMED SIGNED | One Lot | 1 | | $50.00 | $50.00 |
| 61 | 139 | FRAMED SIGNED AND | One Lot | 1 | | $125.00 | $125.00 |
| 61 | 140 | FRAMED LARGE SIGNED AND | One Lot | 1 | | $150.00 | $150.00 |
| | | CENF | | | | | |
| 61 | 144 | FRAMED MIRROR | One Lot | 1 | | $10.00 | $10.00 |
| 61 | 182 | FRAMED PASTEL ON WOOD | One Lot | 1 | | $350.00 | $350.00 |
| | | CTIONS" | | | | | |
| 61 | 183 | FRAMED SIGNED ART PRINT | One Lot | 1 | | $300.00 | $300.00 |
| 61 | 184 | FRAMED OIL ON BOARD | One Lot | 1 | | $0.00 | $0.00 |
| 61 | 198 | FRAMED LARGE OIL ON | One Lot | 1 | | $150.00 | $150.00 |
| 61 | 202 | FRAMED SIGNED AND | One Lot | 1 | | $75.00 | $75.00 |
| | | "MARBLEHEAD" | | | | | |
| 61 | 206 | FRAMED SIGNED J. BOUCHER | One Lot | 1 | | $50.00 | $50.00 |
| | | NTERVILLE | | | | | |

| Uninvoiced Lots | | Invoiced Lots | | | |
|---|---|---|---|---|---|
| Bid | | Total Amount Bid | $3,527.50 | Total Deposits | $0.00 |
| Lots | | Buyers Premium | $352.75 | Total Payments | $4,056.63 |
| Items | | Total Tax | $176.38 | Total Paid | **$4,056.63** |
| Deposit Left | | Invoices Total | **$4,056.63** | Balance Due | **$0.00** |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.    **16**



**Paul E. Saperstein Co., Inc.**
**BLEIDT ARTWORK**
144 Centre Street
Holbrook, MA 02343
617-227-6553

**Bidder Summary**
Auction #21 - 7/7/2005

| 62 | Edward Smith | | avenue Auction Sales | | | 617-770-1600 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | | LotAuctionType | Qty | LotPrice | Total |
| 62 | 136 | FRAMED SIGNED J GERAGHTY | | One Lot | 1 | $25.00 | $25.00 |
| 62 | 137 | FRAMED SULKOWSKY SIGNED | | One Lot | 1 | $125.00 | $125.00 |
| | | THE PADDOCK" | | | | | |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | |

**Invoiced Lots**

| Total Amount Bid | $150.00 | Total Deposits | $0.00 |
|---|---|---|---|
| Buyers Premium | $15.00 | Total Payments | $165.00 |
| Total Tax | $0.00 | Total Paid | $165.00 |
| Invoices Total | $165.00 | Balance Due | $0.00 |

| 64 | David Gilgun | | | | | 781-935-6666 | |
|---|---|---|---|---|---|---|---|
| Bidder # | Lot Number | LotTitle | | LotAuctionType | Qty | LotPrice | Total |
| 64 | 145 | FRAMED SIGNED PRINT | | One Lot | 1 | $250.00 | $250.00 |

**Uninvoiced Lots**

| Bid | |
|---|---|
| Lots | |
| Items | |
| Deposit Left | $0.00 |

**Invoiced Lots**

| Total Amount Bid | $250.00 | Total Deposits | $100.00 |
|---|---|---|---|
| Buyers Premium | $25.00 | Total Payments | $187.50 |
| Total Tax | $12.50 | Total Paid | $287.50 |
| Invoices Total | $287.50 | Balance Due | $0.00 |

Note: Uninvoiced totals do NOT include Buyer's Premium or Tax. Items must be invoiced to determine these figures.

17

**EXHIBIT C**

**Bleidt Vehicle Sale Analysis**

| Vehicle | VIN Number | Gross Purchase Price | Lien Amount | Sales Commission | Accrued Towing & Storage Charges | Net Recovery |
|---------|-----------|---------------------|-------------|------------------|----------------------------------|--------------|
| 1997 Porsche 911 Carrera | WPOCAZ995VS341-574 | $25,700.00 | $5,708.66 | $1,285.00 | $1,622.00 | $17,084.34 |
| 2000 BMW 323; Wagon | WBAAR3346YJB-35306 | $9,900.00 | N/A | $495.00 | $837.00 | $8,568.00 |
| 2003 Mini Cooper | WMWRC33413TC40-868 | $15,100.00 | $13,005.71 | $755.00 | $1,200.60 | $138.69 |
| 1998 Honda Civic EX | 1HGEJ81145WL-U35256 | $1,950.00 | N/A | $97.50 | $727.60 | $1,124.90 |
| **TOTALS** | | **$52,650.00** | **$18,714.37** | **$2,632.50** | **$4,387.20** | **$26,915.93** |

M123201.1

**EXHIBIT D**

**CASH COLLECTED ON A CONSOLIDATED BASIS FOR ALL RECEIVERSHIP ENTITIES THROUGH JULY 11, 2005**

| | |
|---|---|
| Balance with Fleet and Sovereign as of the Commencement of Case: | $196,828.24 |
| APAM and FPPS Commissions and Fees: | $161,108.47 |
| Miscellaneous Collections: | $149,349.86 |
| | |
| **Total Cash Collected:** | **$507,286.60** |

**FUNDS DISBURSED AS OF JULY 11, 2005**

| | |
|---|---|
| Wages, Commissions, Benefits, Withholding Taxes and Other Employee Related Payments: | $271,913.03 |
| Rent, Utilities and other Non-employee Operational Expenses: | $1,214.42 |
| Moving and Storage Expenses: | $8,837.75 |
| Miscellaneous Expenses: | $39,041.99 |
| | |
| **Total Funds Disbursed:** | **$321,007.19** |
| | |
| **Total Cash on Hand:** | **$186,279.41** |

M123202.1