# RUBIN AND RUDMAN LLP

COUNSELLORS AT LAW

50 ROWES WHARF • BOSTON, MASSACHUSETTS 02110-3319

TELEPHONE: (617) 330-7000 • FACSIMILE: (617) 439-9556 • EMAIL: FIRM@RUBINRUDMAN.COM

Michael Unger
Direct Dial: (617) 330-7075
E-mail: munger@rubinrudman.com

September 21, 2005

*BY HAND DELIVERY & FIRST CLASS MAIL*

The Honorable Nancy Gertner
United States District Court
For the District of Massachusetts
One Courthouse Way
Boston, MA 02210

## RE: *Securities and Exchange Commission v. Bradford C. Bleidt and Allocation Plus Asset Management Company, Inc. ("APAM")*
### Civil Action No. 04-12415-NG

Dear Judge Gertner:

We represent Detwiler, Mitchell, Fenton & Graves, Inc. ("DMFG"), one of the three broker-dealers Mr. Bleidt was registered with during the time period he perpetrated his fraud approximately \$27 million upon approximately 140 investors. Mr. Bleidt was registered with DMFG from October 2001 through February 2004. We write to bring to your attention DMF concern that, to the best of our knowledge, the Receiver has not asserted the claims that the APAM estate may have against the banks through which Bleidt conducted his fraud, Fleet National Bank and Sovereign Bank (the "Banks").

In the Initial Report of the Receiver ("Initial Report") to the court submitted on February 22, 2005, the Receiver noted that he "…has identified potential causes of action that can be pursued by the estate and/or individual investors, spent considerable time developing tl law and facts which support such claims, and had extensive conferences with the Commissior staff, defrauded investors and likely defendants about <u>a potential global settlement of the receivers and defrauded investors' claims</u>." (Initial Report, ¶16, emphasis added). The Receiv also noted that "…the prosecution of litigation against third parties, including… former broke dealers, Fleet, Sovereign, and their respective insurance carriers may result in substantial recoveries to fund distributions to defrauded investors and other creditors of this estate." (Init Report, ¶26, second bullet).

Since the appointment of the Receiver, DMFG and the other broker-dealers have enga; in ongoing and cooperative discussions with Receiver's counsel to try to craft a settlement for the benefit of Bleidt's investor victims. Early on, DMFG inquired as to the views and efforts

## RUBIN AND RUDMAN LLP

The Honorable Nancy Gertner
September 21, 2005
Page 2

the Receiver's counsel concerning the Banks' participation in such discussions since it appea
that they could be subject to claims by the Receiver. Indeed, the Receiver noted in his Initial
Report and Second Interim Report that there are claims that can be asserted on behalf of the
APAM estate against the Banks derived from their conduct or omissions concerning Bleidt's
of his accounts at those institutions.

As matters presently stand, the likelihood of a global settlement being reached withou
the participation of the Banks is small. To date, because of conflicts of interest affecting his
counsel, the Receiver has not yet brought the Banks into the global settlement process, even
though the Receiver has stated that he "believes that APAM's estate may have direct claims
against those financial institutions...". (Second Interim Report, ¶30). While the Receiver no
that the lack of cooperation from the broker-dealers' insurance carriers has delayed and impe
progress toward settlement (Second Interim Report, ¶29), DMFG believes that without
substantial participation by the Banks and insurers, it is unlikely that sufficient funds will be
available to create a settlement pool acceptable to APAM's investor claimants.

In his Second Interim Report, the Receiver said that the vast majority of defrauded
investors "have forebeared from attempting to bring individual claims against the broker-deal
until the possibility of a global settlement has been fully explored." (Second Interim Report,
¶26). As noted above, the discussions have been ongoing, but it is fair to say that a full
exploration of a global settlement cannot take place without participation by the Banks. If the
opportunities for a global settlement do not appear likely, as DMFG believes to be the case
without the participation of the Banks, the ability of counsel for the Receiver to continue to
persuade Bleidt's investor victims from commencing their own lawsuits or arbitrations agains
the broker-dealers will rapidly diminish. This would be a result that would favor no one. As
noted by the Receiver, "The cost of litigating 140 separate lawsuits against the broker-dealers
however, would substantially deplete, if not entirely dissipate, funds otherwise available for
settlement and distribution to defrauded investors." (Second Interim Report, ¶25).

The above discussion is our effort to provide you with the background and a descriptio
of the efforts to resolve the claims of the victims of Bleidt's fraud. However, as noted, the Ba
have not yet been brought into the global settlement process. Noting the conflicts affecting hi
counsel, Nixon Peabody, with respect to the pursuit of claims against the Banks, the Receiver
said he plans to consult with the SEC and "to seek the court's permission to employ independ
outside counsel...". (Second Interim Report, ¶31).

DMFG has become increasingly concerned that the delay in requesting the employme
of independent outside counsel to pursue claims against the Banks will severely impede the
chance of a successful global settlement. First, we are rapidly approaching the first anniversa
of Mr. Bleidt's confession (which took place on or about November 11, 2004), raising the
possibility that various statutes of limitation with respect to claims against the Banks might ru
without a claim being asserted. Second, to date, the investor victims and their counsel have be

## RUBIN AND RUDMAN LLP

The Honorable Nancy Gertner
September 21, 2005
Page 3


both patient and cooperative in forebearing the bringing of any claims. Their patience and cooperativeness is not likely to continue unless there is a realistic prospect of a palatable financial global settlement.

On behalf of our client, we request that Your Honor exercise her good offices and/or equitable powers to effectuate promptly the appointment of special counsel to initiate the pur of the appropriate claims against the Banks on behalf of the APAM estate and the victims of Bleidt's fraud. While not a party in the referenced case, we remain available to provide what     r information or assistance you request.

Very truly yours,

Michael Unger

cc:     Philip Koski, Esq., SEC
        Michele Perillo, Esq., SEC
        Gregory D. Oberhauser, Esq., Attorney for Bradford C. Bleidt
        David Vicinanzo, Esq., Nixon Peabody, Receiver for Bradford Bleidt et al
        Steven N. Fuller, Esq., Nixon Peabody, Counsel to Receiver
        Kevin Fitzgerald, Esq., Nixon Peabody, Counsel to Receiver