UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br><br>v.<br><br>BRADFORD C. BLEIDT and<br>ALLOCATIONS PLUS ASSET MANAGEMENT<br>COMPANY, INC.,<br>Defendants. | Civil Action No. 04-12415-NG |

**OPPOSITION TO MOTION FOR ORDER TO (A) APPROVING THE WBIX RESCISSION AGREEMENT AND THE RETRANSFER OF ALL OF THE STOCK IN WBIX CORP. TO ALEXANDER G. LANGER FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, AND (B) GRANTING RELATED RELIEF BY DAVID A. VICINANZO**

### BACKGROUND

Robert M. Thomas, Jr. and Rory Delaney of Thomas & Associates represent Donna Brandt Lawrence ("Lawrence"), one of the investors injured by the collapse of Allocation Plus Asset Management ("APAM") and Financial Perspective Planning Services ("FPPS"). Ms. Lawrence is a single woman of retirement age, who lost her life savings of approximately $1.8 million in this tragedy.

On December 14, 2004, Lawrence filed a complaint for negligence against three former employees of APAM and FPPS: James X. McCarty (former Chief Financial Officer); James Keefe (former Chief Investment Manager); and Maja Stojaonvic (former "Individual Account Representative"). The case was filed in Suffolk Superior Court, and assigned to the Business Litigation Session (04-5432). It remains pending, and a Rule 16 conference has been scheduled for next week, Tuesday, October 25, 2005.

Apparently, Ms. Lawrence's is the only case which has been brought by an individual investor against any of the APAM or FPPS entities or against any former agents or employees of those entities. This is so notwithstanding the Receiver's legal obligation to pursue all available claims on behalf of all the injured parties.

## THE PROPOSED SALE OF WBIX

On behalf of Lawrence, the undersigned have considered the terms of the proposed sale of WBIX set forth in the Receiver's submission of September 27, 2005. While we have no information or expertise to object to the sale itself, we do object to the *structure* of the payment, for the reasons described below.

According to the Receiver, the overall consideration for the transaction is approximately $8.2 million. This figure comprises:

- The cancellation of a Note in the sum of $7,751,000;

- The assumption of liabilities of $433,000;

- The prospect of a potential payment if the radio station is sold for more than $10 million within the next three years; and

- "Cash" in the sum of $1.5 million. $1.1 million to be paid immediately, $100,000 ninety days later, and $300,000 (4% of the total amount) to be paid in $100,000 installments over the next three years.[1]

The Receiver was appointed in this case on November 18, 2004. It was not until September 21, 2005, that the Receiver submitted an application for compensation in the sum of $1 million. The Receiver justified the timing of the application thus:

---

[1] Receiver's Motion for an Order: (A) Approving the WBIX Rescission Agreement and the Retransfer of All Stock in WBIX Corp. To Alexander G. Langer Free and Clear of all Liens, Claims, Encumbrances and Interests, and (B) Granting Related Relief, para 16, the "Motion for Approval of the WBIX Transaction")

2

"NP and the Receiver seek interim allowance of those fees and expenses *at this time* so that the Court, defrauded investors, and other parties-in-interest will be aware of the full scope of the services NP has provided to the Receiver in this case to date and the estates' obligation to compensate NP for that substantial work."[2]

Within a week, on September 27, 2005, the Receiver followed its Interim Application with its Motion for Approval of the WBIX Transaction, which, as proposed, will result in the immediate liquidation of $1.1 million, with further installments of $100,000, all going to the Receiver and none to the defrauded investors. The timing of the Receiver's request for compensation and the structure of the proposed sale strongly suggest that the events are related. Furthermore, if the $1.4 million cash were paid in one sum, rather than parsed out over the next three years, there would be a cash surplus of $300,000 to $400,000, presumably available for distribution to the defrauded parties. The proposed structure takes the cash surplus off the table and prevents any distribution to the injured parties.

## OBJECTION TO THE RECEIVER'S PROPOSAL

On behalf of our client, it is our duty to consider the Receiver's proposals with professional skepticism. It appears that the Receiver has a conflict of interest arising from the competing aims of maximizing the estate's recovery and the desire to be paid in full for its services.

The Court's charge to the Receiver was twofold: to wind up the estate and to litigate claims where appropriate. Now that the initial housekeeping has been done, there is no sign that the Receiver intends to sue anyone. Quite the contrary, despite the fact that 95% of defrauded investors representing $27,000,000 of assets, authorized the Receiver to pursue negotiations and

---

[2] (First Interim Application of Nixon Peabody LLP, Counsel for the Receiver for Compensation and Reimbursement of Expenses, page 2, emphasis added)

3

litigation with the insurers on their behalf, the Receiver has indicated that when negotiations break down those investors will "be free to commence private litigation, i.e., at their own expense."[3] In the year since their appointment, the Receiver has neither initiated suit, reached any settlement, nor proposed any distribution except to itself. Defrauded investors, like Donna Lawrence, might ask in what way has the Receiver furthered their interests beyond the initial housekeeping.

Illustrative of this inaction has been the Receiver's lack of interest in pending litigation potentially affecting all of the victims. The <u>Lawrence</u> case in Suffolk Superior Court has since its inception carried the threat of creating precedent for other victims or of proving that individual officers may be held liable for their negligence. Whichever way the case goes, it has wide ranging implications for the banks, the insurers and the investors. So far the undersigned have written to the Receiver three times by mail and eight times by email and have received a single email response on February 28, 2005, which was without substance. Since then the case has overcome a motion to dismiss, of which the Receiver had notice but in which he elected not to intervene. The <u>Lawrence</u> case's success so far at a minimum raises the stakes for insurance companies who refuse to intervene and defend such actions.

We are not alone in expressing these concerns. Detwiler, Mitchell, Fenton & Graves, Inc. through counsel, Rubin and Rudman, LLP, has also expressed its concern to the Court at the Receiver's failure to appoint special counsel to pursue Fleet National Bank and Sovereign Bank. Thus it is not only victims, but other interested third parties, who have expressed concern over the Receiver's conflicts of interest and inertia.

In the circumstances, we express our concern that the Receiver has failed to fulfill its duties to "institute, prosecute, defend, compromise, adjust, intervene in or become party to such

---

[3] Second Interim Report of Receiver, para 29.

4

legal or equitable actions, claims or proceedings on behalf of Allocation as the Receiver deems necessary and appropriate to carry out the Receiver's mandate to pursue this order."[4]  On behalf of our client, it is therefore our duty to object to the sale as currently structured, which appears to benefit only the Receiver's law firm.

**REQUEST FOR RELIEF**

Ms. Lawrence requests that the Court, or an independent party, review the terms of the proposed sale of WBIX and confirm that it is indeed in the interests of the estate.  If so, we request that the Court place the proceeds of the sale in escrow, until the conclusion of the Receivership, and the litigation which the Receiver should be pursuing.

DONNA BRANDT LAWRENCE,
By her attorneys,

/s/ Rory Delaney
Robert M. Thomas, Jr., BBO# 645600
Rory Delaney, BBO# 655666
Thomas & Associates
Federal Reserve Building
600 Atlantic Avenue
Boston, MA 02210
(617) 371-1072

Dated: October 20, 2005

CERTIFICATE OF SERVICE

I, Rory Delaney, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by electronic filing service on October 20, 2005.

/s/ Rory Delaney

---

[4] Order for the Appointment of Receiver, November 18, 2004, paragraphs 2(g) and 3(g)