UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) Plaintiff, ) ) vs. ) ) BRADFORD C. BLEIDT and ) ALLOCATION PLUS ASSET MANAGEMENT ) COMPANY, INC., ) ) Defendants. ) | Civil Action No. 04-12415-NG |

**THE RECEIVER'S MOTION FOR LEAVE TO REPLY TO THE OPPOSITIONS FILED BY BRADFORD C. BLEIDT AND DONNA BRANDT LAWRENCE TO HIS MOTION FOR AN ORDER: (A) (A) APPROVING THE WBIX RESCISSION AGREEMENT AND THE RETRANSFER OF ALL OF THE STOCK IN WBIX CORP. TO ALEXANDER G. LANGER FREE AND CLEAR OF LIENS, CLAIMS, <u>ENCUMBRANCES AND INTERESTS, AND (B) GRANTING RELATED RELIEF</u>**

Pursuant to Local Rule 7.1, David A. Vicinanzo, the Court-appointed Receiver in the above-captioned civil action hereby moves for leave to file the replies attached hereto as <u>Exhibits</u> <u>A</u> and <u>B</u> to the Oppositions filed by Bradford C. Bleidt and Donna Brandt Lawrence to his Motion for an Order : (A) Approving the WBIX Rescission Agreement and the Restransfer of all of the Stock in WBIX Corp. to Alexander G. Langer Free and Clear of Liens, Claims, Encumbrances and Interests, and (B) Granting Related Relief (the "Rescission Motion").  In support of his motion, the Receiver respectfully states as follows:

1.     On October 20, 2005 and October 21, 2005, respectively, Ms. Lawrence and Mr. Bleidt filed oppositions to the Rescission Motion.

2.      The attached Replies respond to certain arguments made in those Oppositions and will assist the Court in its consideration of the pending Rescission Motion.

3.      It is in the interest of justice to permit the Receiver to file the Replies and the filing thereof will neither prejudice Mr. Bleidt or Ms. Lawrence, nor delay resolution of the pending Motion.

WHEREFORE, the Receiver respectfully requests that the Court enter an Order:

A.      Granting him leave to file the Replies attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>; and

B.      Granting such other and further relief as is deemed appropriate and just.

Respectfully submitted,

DAVID A. VICINANZO, RECEIVER

By his attorneys,

Dated:  October 23, 2005

        /s/ Francis C. Morrissey
Kevin M. Fitzgerald (admitted pro hac vice)
Francis C. Morrissey (BBO #567589)
Lee Harrington, Esq. (BBO # 643932)
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 04-12415-NG |
| ) | |
| BRADFORD C. BLEIDT and ) | |
| ALLOCATION PLUS ASSET MANAGEMENT ) | |
| COMPANY, INC., ) | |
| ) | |
| Defendants. ) | |

THE RECEIVER'S REPLY TO DEFENDANT BRADFORD C. BLEIDT'S OPPOSITION TO
HIS MOTION FOR AN ORDER: (A) APPROVING THE WBIX RESCISSION AGREEMENT
AND THE RETRANSFER OF ALL OF THE STOCK IN WBIX CORP. TO ALEXANDER G.
LANGER FREE AND CLEAR OF LIEANS, CLAIMS, ENCUMBRANCES AND
INTERESTS, AND (B) GRANTING RELATED RELIEF.

David A. Vicinanzo, the Court-appointed receiver in the above-captioned civil action (the

"Receiver") hereby replies to Bradford C. Bleidt's ("Bleidt") Opposition to his Motion for an

Order: (a) Approving the WBIX Rescission Agreement and the Retransfer of All of the Stock in

WBIX Corp. to Alexander G. Langer Free and Clear of Liens, Claims, Encumbrances and

Interests, and (b) Granting Relief (the "Rescission Motion" or the "Motion").

## PRELIMINARY STATEMENT

After losing millions and millions of stolen investor dollars acquiring and operating the

Station, the gist of Bleidt's objection is that the Court should not approve the proposed rescission

transaction because the Receiver can somehow magically bifurcate Langer's claim against the

Station into secured and unsecured components and thereby conjure up greater equity in the

Station for this estate. Bleidt's advice on this proposition is of a quality similar to that he

BOS1537928.1

peddled to investors. Bleidt fundamentally misunderstands bankruptcy law and his opposition has no merit whatsoever.

Generally speaking, as applied in reorganization cases, bankruptcy law differs dramatically from nonbankruptcy law in that the former provides a statutory mechanism for a debtor to avoid foreclosure and retain a secured creditor's collateral. The pragmatic purpose of bifurcation of a secured creditor's claim into secured and unsecured components, under § 506(a) of the Bankruptcy Code is to fix "the value of a secured creditor's legal entitlements associated with its security interest" when the debtor is allowed to retain and use collateral. 4 Collier on Bankruptcy § 506.03[4][a] (15th ed. 2005). For instance, both a secured creditor's rights to adequate protection in a bankruptcy case prior to confirmation of a plan of reorganization and the payments to be made to creditors holding collateral under a plan of reorganization are largely, if not exclusively, determined by fixing the value of the creditor's collateral under § 506(a) of the Bankruptcy Code

Bifurcation of a secured claim under § 506(a), however, has no application outside of bankruptcy. This is especially so in a case like this where (a) the debtor is liquidating rather than reorganizing, and (b) as a matter of law, has no legal or equitable entitlement to retain collateral absent payment of the entire face amount of the lien holder's debt. More importantly, notwithstanding Bleidt's advice, bifurcation of a claim whether inside or outside of bankruptcy simply does not alchemically create equity for creditors without liens in the collateral being sold or otherwise liquidated. The simple fact is that whether the Station is sold in or out of bankruptcy, and whether Langer's secured claim is bifurcated or not, the face amount of Langer's approximately $9 million lien (and potentially significant additional claims) must be paid in full before there is any equity in the Station for this estate. The reality in this case is that

the Station in the current circumstances has a market value far less than $9 million and,

accordingly, put bluntly, every dollar realized by the Receiver from this asset is a premium

recovery. In further support of his response the Receiver respectfully states as follows:

## BACKGROUND

1.     Through the Rescission Motion, the Receiver seeks to liquidate the principal asset

in this receivership proceeding: Bleidt's indirect interest in WBIX Corp. WBIX Corp. operates

an AM radio broadcasting business under the letters of WBIX 1060 AM which services the

Boston, Massachusetts metropolitan market.

2.     As detailed in the Motion, on or about July 16, 2002, Bleidt entered into a Stock

Purchase and Sale Agreement with Langer to acquire all of the stock of Langer Broadcasting

Corp. (whose name was changed after the closing of the Stock Purchase and Sale Agreement to

WBIX Corp. (hereinafter "WBIX Corp.")) for a purchase price of approximately $10,000,000.

Simultaneously, as part of that transaction, WBIX Corp. and Shared Visions, Inc. ("SVI"), a

corporation wholly owned by Bleidt, entered into a Time Brokerage Agreement whereby SVI

undertook to manage the Station in anticipation of the eventual closing of the sale the WBIX

Corp. stock to Bleidt or his nominee.[1]

3.     Subsequently, Bleidt formed Perspectives Broadcasting, Inc. ("PBI") for the

express purpose of acquiring WBIX Corp.'s stock and the Station's FCC license. On or about

January 13, 2004, PBI, also a corporation wholly owned by Bleidt, acquired all of the issued and

outstanding shares of stock of WBIX Corp. from Langer.

---

[1]    Prior to the transaction, beginning in 2000, however, SVI also operated the Station through other temporary
arrangements with Langer.

4.     At the closing of the transaction, Bleidt tendered $1,300,000 in cash. The remaining portion of the purchase price for the WBIX stock was satisfied by:

- Credits of $750,000 and $1,000,000, respectively for Bleidt's pre-closing deposits and for monies expended by Bleidt for capital improvements and operating deficits Bleidt incurred at the Station; and

- A promissory note in the favor of Langer in the principal amount of $7,318,000 (the "Langer Note").

5.     As of October 13, 2005, PBI's obligations under the Langer Note for unpaid principal and interest were not less than **$8,863,000**. This amount is exclusive of costs of collection and other charges also collectible by Langer under the terms of the note.

6.     Transaction documents also recite that PBI's obligations under the Langer Note are secured by a pledge of 100% of the issued and outstanding shares of the stock in both WBIX Corp. and PBI, a security interest in all of PBI's and WBIX Corp.'s assets and a guaranty from Bleidt in favor of Langer.

7.     Shortly thereafter, in or about the Spring of 2004, Bleidt, PBI and SVI entered into an Asset Purchase Agreement (the "APA") for WBIX Corp. and the Station with Egan Communications, LLC. ("Egan"). Although in January 2004, Bleidt exchanged consideration with a recited aggregate value of $10,368,000, for the stock in WBIX Corp., just months later, pursuant to the APA, Bleidt, PBI and SVI agreed to sell all their interest in the Station and WBIX Corp. to Egan for an aggregate purchase price of only $7,000,000.

8.     To state the obvious, this purchase price coming just weeks after the acquisition from Langer is approximately $3,500,000 less than the consideration secured by the Receiver as described in the pending Motion and reflects that Bleidt was never able to operate the Station on anything even remotely approaching a break-even basis. To the contrary, from December 31,

2001 to November 12, 2004, the period it was operated by Bleidt, the Station hemorrhaged operational losses of not less than **$7,152,816.00**, virtually all of it defrauded investor money.

9.    Furthermore, immediately following Bleidt's very public confession of fraud at the commencement of this case, Egan terminated the APA. In short, Egan was not willing to purchase the Station even for the deeply discounted $7 million purchase price or frankly for any other amount.

## THE RECEIVER'S RESPONSE TO BLEIDT'S OBJECTION TO HIS RESCISSION MOTION

10.    In his objection to the Rescission Motion, Bleidt does not contend that he and PBI owe Langer less than $8,863,000, or that those obligations are not secured by a lien on WBIX Corp's and PBI's stock and the Station's assets. Nor does Bleidt challenge the perfection and priority of Langer's lien. Similarly, Bleidt does not dispute that just months after purchasing the Station from Langer for approximately $10,000,000 he tried to sell it to Egan for $7,000,000 and that deeply discounted deal imploded when he publicly disclosed that he defrauded investors of tens of millions of dollars; nor does Bleidt claim that the Station has a value in excess of Langer's lien. He could not, in fact, credibly make such a claim.

11.    Instead, Bleidt suggests that this Court should not approve the proposed rescission agreement (and thereby risk losing it altogether) because in his view, the Receiver can better help those he defrauded by somehow bifurcating Langer's claim against the Station into secured and unsecured components and thereby conjure up equity in the Station for this estate. Bleidt's bizarre claim is contrary to both law and common sense and may be summarily rejected by this Court.

12.    Bleidt's opposition is premised on a fundamentally flawed understanding of the effect of "bifurcating" or "stripping" a "secured claim" in bankruptcy. Outside of bankruptcy, a

debt is usually referred to as "secured" if the creditor has a lien against collateral, even though the collateral would not be sufficient to satisfy the debt. Under the Bankruptcy Code, a claim is considered "secured" only to the extent of the value of the collateral. 11 U.S.C. § 506(a). If the collateral is worth less than the amount of the debt, the creditor will have a secured claim for an amount equal to the value of the collateral and an unsecured claim for the remainder that is owing. Id. Using Bleidt's example, if a creditor is owed $10,000 but its collateral is worth only $4,000 at the commencement of a bankruptcy case, pursuant to § 506(a) of the Bankruptcy Code, the creditor's claim against the debtor is bifurcated into a secured component of $4,000 and an unsecured component of $6,000.

13.    Bifurcation of claims into secured and unsecured components in bankruptcy, however, simply does <u>not</u> create, as Bleidt contends, any equity for other creditors. Both within and outside of bankruptcy, the proceeds of the sale of collateral <u>continue to be subject to the secured creditor's lien.</u> Again using Bleidt's example, if collateral subject to a $10,000 lien is sold for $4,000 in bankruptcy the lien continues to encumber the entire $4,000 in proceeds and no "equity" for other unsecured creditors is magically created. Instead, in bankruptcy, the proceeds of the collateral (or their monetary equivalent) are tendered to the secured creditor and the creditor's unsecured claim is satisfied <u>pro rata</u> from other unencumbered estate assets (if any).

14.    Nor may Bleidt in particular credibly contend that in the wake of the havoc he created, the value of the Station now exceeds the amount of Langer's lien on its assets and the WBIX Corp. stock. Bleidt does not dispute, nor could he, (a) that the Station incurred losses of not less than $7,152,816 during his stewardship; (b) that just weeks after he acquired the Station in 2004 for the largely unpaid purchase price of $10,368,000, he tried to sell the Station to Egan

for $7,000,000 (approximately $2,000,000 less than what is currently owed to Langer); and (c) that in the wake of the damage to the Station's good will and marketability caused by Bleidt's public confession of fraud, Egan was unwilling to purchase the Station on any terms. Nor may Bleidt dispute that during the last eleven months the Receiver has not received a single offer for the Station. The Receiver's judgment is that the only conclusion to be drawn from this uncontested record is that the Station has a market value far less than Langer's lien, and that the proposed rescission transaction, as a practical matter, is the only opportunity this estate will have to realize any value whatsoever from the Station.

15.    In short, if a secured creditor is undersecured (i.e., the value of its collateral is worth less than the face amount of its lien), as Langer surely is, by definition, there is no equity for other creditors whether inside or outside of bankruptcy. Bleidt's legal advice to the court overlooks this fundamental concept. By contrast, under the proposed rescission transaction, this estate will realize, in addition to relief from significant debts, cash consideration of not less than $1.5 million above and beyond Langer's nearly $9,000,000 lien on the Station; this is the functional equivalent of at least a $10,500.00 price for the Station. Bifurcating Langer's lien will not change a thing about the core economics of the proposed transaction, and Bleidt's invocation of § 506(a) to suggest otherwise is plainly wrong. Quite the contrary, were the Court to follow Bleidt's advice, his victims would once again be left at significant risk of recovering nothing.

WHEREFORE, the Receiver respectfully requests that the Court issue an Order:

A.    Overruling Bleidt's opposition to the Rescission Motion, in its entirety;

B.    Granting the Receiver's pending Motion and;

C.    Granting such other and further relief as is deemed appropriate and just.

Respectfully submitted,

DAVID A. VICINANZO, RECEIVER

By his attorneys,

Dated:  October 21, 2001

/s/ Kevin M. Fitzgerald
Kevin M. Fitzgerald (admitted pro hac vice)
Francis C. Morrissey (BBO #567589)
Jeffrey P. Gilbreth (BBO #661496)
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

**EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 04-12415-NG |
| | ) |
| BRADFORD C. BLEIDT and | ) |
| ALLOCATION PLUS ASSET MANAGEMENT | ) |
| COMPANY, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

THE RECEIVER'S REPLY TO DONNA BRANDT LAWRENCE'S OPPOSITION TO HIS
MOTION FOR AN ORDER: (A) APPROVING THE WBIX RESCISSION AGREEMENT
AND THE RETRANSFER OF ALL OF THE STOCK IN WBIX CORP. TO ALEXANDER G.
LANGER FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS,
AND (B) GRANTING RELATED RELIEF.

David A. Vicinanzo, the Court-appointed receiver in the above-captioned civil action (the

"Receiver") hereby replies to Donna Brandt Lawrence's Opposition to his Motion for an Order:

(A) Approving the WBIX Rescission Agreement and the Retransfer of All of the Stock in WBIX

Corp. to Alexander G. Langer Free and Clear of Liens, Claims, Encumbrances and Interests, and

(b) Granting Related Relief (the "Rescission Motion" or the "Motion"). In a nutshell, Ms.

Lawrence does not object to the proposed rescission transaction and liquidation of the Station.

Instead, she gives preemptive notice of her objection to payment of any of the proceeds of the

transaction to the Receiver and his counsel for the substantial professional fees that have been

incurred in this case. That distribution objection, of course, simply has no bearing on the merits

of the proposed rescission transaction. It is also premature and any consideration of that

objection by the Court should be deferred until the as yet unscheduled hearing to consider

- 2 -

payment of professional fees in this case.  In further support of his reply, the Receiver respectfully states as follows:

1.     Although Ms. Lawrence's objection is styled as an objection to the proposed rescission transaction between this estate and Alexander G. Langer, her objection does not criticize the economics of that transaction, the terms of the proposed rescission agreement, or otherwise discuss the value or marketability of the Station.  In fact, Ms. Lawrence and her counsel concede in the objection itself that they have no grounds to challenge the proposed rescission transaction: "[W]e have no information or expertise to object to the sale [sic] itself," and request that "the Court, or an independent party review the terms of the proposed sale [sic]."

2.     Ms. Lawrence's objection instead focuses exclusively on the distribution of the proceeds of the proposed transaction.  In particular, she objects to the use of those proceeds to pay the Receiver's counsel fees in this case because the Receiver has not commenced litigation with the defendants' broker-dealers and other financial institutions and requests that "the Court place the proceeds of the sale in escrow, until the conclusion of the Receivership, and the litigation which the Receiver should be pursuing"

3.     Laying aside for the present purposes the Receiver's rebuttal of the merits of the assertions made, that objection, of course, is not directed at the proposed rescission transaction. It is also unnecessary in light of the express terms of this Court's previous orders appointing the Receiver.  Pursuant to the terms of that order, all of the proceeds of the rescission transaction will be held in trust in a segregated client account and no payment of the Receiver or his counsel's fee will be made from those funds unless and until this Court enters an order expressly approving such a payment.

- 3 -

4.    Furthermore, although the Receiver and his counsel have filed an interim fee application to provide parties-in-interest like Ms. Lawrence ample time to consider the application, the Receiver is not seekng payment of any of his or his counsel's fees at this time and no hearing to consider the fee applications has been scheduled.  At the hearing to consider the Receiver's fee application, Ms. Lawrence, as well as every other party-in-interest in this case, will have a full opportunity to express an opinion on the effectiveness of the Receiver's efforts on their behalf and object to the substantial professional fees that have been incurred in this case. In short, consideration of Ms. Lawrence's contentions is premature and should be deferred until the Court holds a hearing on the Receiver's fee application.

WHEREFORE, the Receiver respectfully requests that the Court an Order:

A.    Overruling Ms. Lawrence's objection to the extent it applies to the Rescission Motion;

B.    Deferring consideration of Ms. Lawrence's objection until the hearing to consider the Receivership and his counsel's professional fees in this case;

C.    Granting the Rescission Motion; and

D.    Granting such other and further relief as is deemed appropriate and just.

Respectfully submitted,

DAVID A. VICINANZO, RECEIVER

By his attorneys,

Dated:  October 23, 2005

_/s/ Kevin M.Fitzgerald_____
Kevin M. Fitzgerald (admitted pro hac vice)
Francis C. Morrissey (BBO #567589)
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000