UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BRADFORD C. BLEIDT and ) <br> ALLOCATION PLUS ASSET MANAGEMENT ) <br> COMPANY, INC. ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 04-12415-NG |

# RECEIVER'S THIRD INTERIM REPORT

In accordance with this Court's Orders dated November 22, 2004 (the "Appointment Order") and October 18, 2005, David A. Vicinanzo, the Court-appointed receiver (the "Receiver") of defendants, Bradford C. Bleidt ("Bleidt") and Allocation Plus Asset Management Company, Inc. ("APAM") and his counsel, Nixon Peabody LLP ("Nixon Peabody") hereby submit their Third Interim Report.

## INTRODUCTION AND OVERVIEW

1.      This Third Interim Report provides a summary of the Receiver's and his counsel, Nixon Peabody's activities since the Receiver's Second Report was filed with the Court on July 15, 2005 (the "Third Report Period") and was served on defrauded investors and other parties-in-interest shortly thereafter. The Report also brings current the Receiver's preliminary conclusions and recommendations as set forth in the Third Report.

2.      When the Receiver was appointed in this case approximately a year ago, he succeeded to less than $200,000, almost all of which were subject to set off claims by Bleidt and APAM's banks.  During the Third Report Period, as detailed below, the Receiver made considerable progress towards liquidating these estates' principal assets – Bleidt's indirect ownership interest in WBIX Corp. and claims against third parties.  First, the Receiver negotiated, documented and obtained Court approval for a transaction that will monetize Bleidt's interest in the radio station and yield not less than $1,500,000 net cash for these estates and relieve it of more than $9,296,000 in debt.  Second, the Receiver has made significant progress in negotiations for global settlement of investor claims against Bleidt and APAM's pre-receivership broker-dealers, as detailed in this Third Report.

### SUMMARY OF THE RECEIVER'S ACTIVITIES DURING THE THIRD REPORT PERIOD

**A.      Bleidt's Plea Agreement with the United States Attorney and Proposed Stipulation to Judgment in this Case.**

3.      As detailed in the Receiver's Second Interim Report, on June 9, 2005, the United States Attorney filed an Information against Bleidt.  In the Information, the United States alleged that Bleidt defrauded approximately 125 investors of more than $27 million and charged Bleidt with 115 counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957.

4.      On July 26, 2005, Bleidt and the United States Attorney entered into a plea agreement pursuant to Fed. R. Crim. P. 11 (the "Plea Agreement").  A copy of the Plea Agreement is attached hereto as Exhibit A.

5. In accordance with the terms of Plea Agreement, on July 26, 2005, Bleidt plead guilty to all 116 counts in the Information and "expressly and unequivocally admit[ed] that he in fact knowingly, intentionally, and willfully committed the crimes charged in the Information, and is in fact guilty of those offenses."

6. In addition, in the Plea Agreement, the U.S. Attorney and Bleidt agreed that the following was an appropriate disposition of his criminal case:

- A sentence of imprisonment of 135 months;
- No fine (because any available funds should be paid in restitution);
- Restitution in an amount to be determined by the Court;
- A mandatory special assessment in an amount to be determined by the Court; and
- Five years of supervised release.

7. A hearing to consider the Plea Agreement and impose a sentence against Bleidt in the criminal action is scheduled for Monday, December 5, 2005 before the Honorable William G. Young.

8. Since entry of the Plea Agreement, counsel for the Receiver, in concert with counsel for the Securities and Exchange Commission ("SEC"), have proposed to Bleidt's counsel that he stipulate to entry of judgment in this pending civil action, thus obviating the need for trial and procedurally facilitating potential investor recoveries. Bleidt and his counsel have indicated a willingness to proceed with such a stipulation. The Receiver is now working with counsel for the SEC to define the parameters of the proposed stipulation which, once approved by the SEC, will be presented to Bleidt's counsel for review and signature by Bleidt, and then submitted to the court for approval

9.      To facilitate the conclusion of a stipulation to judgment and to further assist the Receiver and the SEC in understanding the details of Bleidt's fraud, counsel for the Receiver and the SEC interviewed and deposed Bleidt over a period of 3 days following entry of the Plea Agreement.  This was the first opportunity since the opening of this case in November of 2004 to directly question Bleidt concerning the details of his activities including the modalities he employed to perpetrate his crimes.  Bleidt's testimony in this respect has been of material assistance to the Receiver, inter alia, in his ongoing effort to evaluate and pursue potential recoveries for these estates.

### B.      The Court's and the Federal Communication Commission Approval of the WBIX Rescission Agreement.

10.     During the Third Report Period, the Receiver made substantial progress towards liquidating the principal asset in these estates – Bleidt's indirect ownership interest in WBIX Corp. f/k/a Langer Broadcasting Corp.

11.     As detailed in the Receiver's previous reports, WBIX Corp. operates an AM radio broadcasting business under the call letters WBIX 1060 AM (the "Station") from separate tower sites located in Ashland, Massachusetts and Framingham, Massachusetts.

12.     On September 21, 2005, the Receiver and Langer entered into definitive agreement to rescind Bleidt and PBI's purchase of the WBIX stock (the "Rescission Agreement").

13.     In essence, the rescission transaction contemplated that the stock in WBIX Corp. shall be returned to Langer in exchange for:

- Aggregate cash payments from Langer to the Receiver in the amount of $1,500,000;

- Langer's assumption of pre-receivership station liabilities of $433,000;

- Twenty-five percent of the net proceeds of any sale of the station in excess of ten million dollars made within 36 months of the closing of the Rescission Agreement; and

- Langer release of these estates from liabilities arising from Bleidt acquisition of the station in excess of $8,863,000.

14. On October 24, 2005 the Court entered an order approving that transaction and granting related relief and, on November 11, 2005 the Federal Communication Commission conditionally granted the Receiver's application to retransfer the license to the Station to Langer. The Receiver anticipates that the transaction will close on or before November 30, 2005.

### C.  Potential Settlement with Bleidt's Former Broker-Dealers

15. As previously disclosed to the Court, from approximately January 1991 through November 2004, Bleidt was registered with, and an agent of, three separate brokerage firms, so-called broker-dealers. During the Third Report Period, the Receiver's efforts have resulted in significant progress toward a proposed global settlement of defrauded investors' claims against Bleidt's and APAM's former broker-dealers.

16. In summary, the three broker-dealers (Commonwealth Financial, Detwiler, and Winslow, Evans & Crocker) have been in active discussions with the Receiver concerning the terms and conditions of an offer to pay defrauded investors an aggregate sum of cash to settle substantially all claims that might be asserted against the broker-dealers arising from Bleidt's misappropriation of investor funds. Although the terms and conditions of a proposed settlement have not yet been finalized, significant progress has been made and the Receiver expects to report on the outcome of settlement negotiations shortly.

17. Such a settlement with the broker-dealers, if consummated, would relieve individual investors of the costs and risks of protracted individual lawsuits or arbitrations with the broker-dealers. Participation in the global settlement would be voluntary and thus investors

would be free to pursue individual remedies if they elected to opt out of the global settlement, provided, however, that unless substantially all claimants opted to participate, the proposed aggregate settlement would likely fail.

18.     When a settlement proposal is finalized, the Receiver will publish a further supplemental report and call an informational meeting with all investors to review the proposed settlement in detail and poll investors for their assent.

### D.      The Receiver's Investigation of Potential Claims Against Financial Institutions.

19.     During the Third Report Period, the Receiver has continued to investigate the potential claims against Bank of America (successor to BayBank and Fleet Bank) and Sovereign Bank arising from Bleidt's fraudulent scheme. That effort is ongoing. The Receiver has been in communication with counsel for both institutions and has proposed to enter into tolling agreements with each to protect the interests of the estates while, inter alia, the Receiver pursues discussions with each institution. Sovereign Bank for its part has cooperated with the Receiver and has entered in to a tolling agreement through January 31, 2006. Counsel for Bank of America, however, has declined the Receiver's direct request for a tolling agreement. As such, the Receiver expects that, with the assistance of special counsel, it will be necessary to commence proceedings involving Bank of America in the near term. The Receiver expects to file a supplemental report with respect to those proceedings.

### E.      Investor Communications.

20.     The Receiver continues to have regular communications with defrauded investors, investor groups, creditors and other parties-in-interest and their counsel. During the Third Report Period, the Receiver served each of the approximately 125 client-victims identified to date in this case with (a) his Second Interim Report; (b) the rescission agreement between him

and Langer; (c) his motion to approve the rescission agreement; and (d) his first interim fee application.  In addition, during that period, the Receiver continued to maintain a web page at http://extranet30.nixonpeabody.com.  The Receiver's web page, among other things, contains contact information for the Receiver, the SEC and the United States Attorney, as well as links to the Appointment Order, the First and Second Status Reports and other important orders and pleadings in this case.

### THE RECEIVERSHIP ESTATES' CASH POSITION AS OF THE APPOINTMENT DATE AND CURRENT FINANCIAL CONDITION

21. To date, the Receiver has recovered cash in the amount of $566,779.02 and has expended funds in the amount of $273,581.78 in connection with the wind-up of APAM's and FPPS's businesses.  The substantial majority of those expenditures ($271,913.03) were for wages, commissions, benefits and withholding taxes due to APAM's, FPPS's and their affiliates' employees.  In accordance with paragraph 15 of the Appointment Order, a detailed accounting of the funds in the Receiver's possession is attached hereto as Exhibit B.

### PROFESSIONAL FEES INCURRED BY THE RECEIVER.

22. Due to the nature and exigencies of this case, the legal fees and expenses incurred by the Receiver to date have been substantial.  The Receiver was required to employ counsel that are experienced and familiar with litigation, securities, bankruptcy and insolvency, communications, tax, and employment law and a host of other practice areas.

23. On September 21, 2005 Nixon Peabody, counsel for the Receiver, filed its first interim application for compensation and reimbursement of expenses (the "First Application"). As detailed in the First Application, during the period from November 18, 2004 through July 31, 2005, Nixon Peabody spent a total of 2,857.9 hours providing legal services to these estates and is owed $966,207 for that work.  The First Application contains a detailed narrative

report of all of the professional services performed by Nixon Peabody and is available to investors, creditors and other parties-in-interest upon request.

24. Although Nixon Peabody filed its First Application in September, it has deferred requesting a hearing on the application until the rescission transaction has closed and matters involving a proposed broker-dealer settlement have been determined.

25. For the period from August 2, 2005 through October 31, 2005, Nixon Peabody spent a total of 717.80 hours providing legal services to these estates. That work will be the subject matter of subsequent fee applications filed with the Court. In accordance with the Appointment Order, invoices detailing all of the time and expenses incurred during that period and the nature of the work performed will be provided to the SEC.

November 14, 2005                                            Respectfully submitted,

                                                             DAVID A. VICINANZO, RECEIVER


                                                             /s/Kevin M. Fitzgerald
                                                             Kevin M. Fitzgerald (admitted pro hac vice)
                                                             Francis C. Morrissey (BBO #567589)
                                                             Nixon Peabody LLP
                                                             100 Summer Street
                                                             Boston, MA  02110
                                                             (617) 345-1000

**Certificate of Service**

I, Kevin M. Fitzgerald, hereby certify that on November 14, 2005, a copy of the Receiver's Third Interim Report has been served upon the parties by electronic filing service and a copy mailed via first class prepaid mail to:

Richard L. Gemma
MacAdams & Wieck
101 Dyer Street – Suite 400
Providence, RI 02903

-9-

/s/ Kevin M. Fitzgerald

M126536.1



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

July 26, 2005

Edward J. Lee, Esq.
65 Franklin Street
Boston, MA 02110

    Re:  <u>Bradford C. Bleidt</u>
           <u>Criminal No. 05-10144-WGY</u>

Dear Mr. Lee:

    This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Bradford C. Bleidt ("Bleidt"), in the above-captioned case. The Agreement is as follows:

    1.    <u>Waiver of Indictment and Change of Plea</u>

    At the earliest practicable date but in no event later than July 26, 2005, Bleidt shall waive indictment and plead guilty to all counts of the above-captioned Information charging him with 115 counts of mail fraud in violation of 18 U.S.C. §1341 and one count of engaging in a monetary transaction with property derived from specified unlawful activity in violation of 18 U.S.C. §1957. Bleidt expressly and unequivocally admits that he in fact knowingly, intentionally and willfully committed the crimes charged in the attached Information, and is in fact guilty of those offenses.

    2.    <u>Penalties</u>

    Bleidt faces the following maximum penalties: With respect to the mail fraud violations (18 U.S.C. §1341), on each count, 20 years in prison, a $250,000 fine, five years of supervised release, a $100 special assessment and an order of restitution; with respect to the monetary transaction violation (18 U.S.C. §1957), 10 years in prison, a fine of either $250,000 or not more than twice the amount of the criminally derived property involved

in the transaction, three years of supervised release, a $100 special assessment and an order of restitution.

    3.   <u>Sentencing Guidelines</u>

The sentence to be imposed upon Bleidt is within the discretion of the sentencing Court, subject to the statutory maximum penalties set forth above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 125 S.Ct. 738, 2005 WL 50108 (January 12, 2005). In imposing the sentence, the Court must consult and take into account the United States Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. §3553(a).

The parties will take the following positions at sentencing with respect to the application of the United States Sentencing Guidelines:

    (a)   The parties agree to take the positions that, with respect to the mail fraud violations: 1) the applicable sentencing guideline is U.S.S.G. §2B1.1; 2) the base offense level is 7, because the offense of conviction has a statutory maximum term of imprisonment of 20 years or more, pursuant to §2B1.1(a)(1)(B); 3) the loss is more than $20 million, but less than $50 million, for a 22 level increase, pursuant to §2B1.1(b)(1)(L); 4) the number of victims is more than 50, for a 4 level increase, pursuant to §2B1.1(b)(2)(B); 5) the offense involved the abuse of a position of trust, for a 2 level increase, pursuant to §3B1.3; and 6) there are no vulnerable victims as defined by §3A1.1. The parties agree, therefore, that the total offense level for the mail fraud offenses, before any reduction for acceptance of responsibility, is a level 35.

    (b)   The parties agree to take the positions that, with respect to the monetary transaction violation: 1) the applicable sentencing guideline is U.S.S.G. §2S1.1; 2) the base offense level is 35, that being the offense level for the underlying mail fraud offenses from which the laundered funds were derived, pursuant to §2S1.1(a)(1); and 3) one additional level is added for the §1957 offense itself, pursuant to §2S1.1(b)(2)(A). The parties

      agree, therefore, that the total offense level for the mail fraud offenses, before any reduction for acceptance of responsibility, is a level 36.

(c) The parties agree to take the positions that: 1) the mail fraud and money laundering counts are grouped, pursuant to §2S1.1, comment (n. 6); 2) since the money laundering offense level has the highest offense level, that is the total offense level for all counts combined, pursuant to §3D1.3(a); and 3) assuming a 3 level reduction for acceptance of responsibility and a Criminal History Category of I, Bleidt's total offense level is 33, for a guideline sentencing range of 135-168 months.

The U.S. Attorney and Bleidt agree that there is no basis for a departure from the sentencing range established by the United States Sentencing Guidelines. Accordingly, neither the U.S. Attorney nor Bleidt will seek a departure on any ground from the Sentencing Guidelines.

Based on Bleidt's prompt acceptance of personal responsibility for the offenses of conviction in this case, and information known to the U.S. Attorney at this time, the U.S. Attorney agrees to recommend that the Court reduce by three levels Bleidt's Adjusted Offense Level under U.S.S.G. §3E1.1.

The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. §3E1.1 if, at any time between his execution of this Agreement and sentencing Bleidt:

(a) Fails to admit a complete factual basis for the plea;

(b) Fails to truthfully admit his conduct in the offenses of conviction;

(c) Falsely denies, or frivolously contests, relevant conduct for which Bleidt is accountable under U.S.S.G. §1B1.3;

(d) Fails to provide truthful information about his financial status;

(e) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case and any relevant conduct for

        which Bleidt is accountable under U.S.S.G. §1B1.3;

(f) Engages in acts which form a basis for finding that Bleidt has obstructed or impeded the administration of justice under U.S.S.G. §3C1.1;

(g) Intentionally fails to appear in Court or violates any condition of release;

(h) Commits a crime;

(i) Transfers any asset protected under any provision of this Agreement; and/or

(j) Attempts to withdraw his guilty plea.

Bleidt expressly understands that he may not withdraw his plea of guilty, unless the Court rejects this Agreement under Fed. R. Crim. P. 11(c)(5).

4. **Agreed Disposition**

The U.S. Attorney and Bleidt agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following is the appropriate disposition of this case:

(a) A sentence of imprisonment of 135 months;

(b) No fine (because any available funds should be paid in restitution);

(c) Restitution in an amount to be determined by the Court with the assistance of the U.S. Probation Office. Bleidt agrees to submit to interviews and/or depositions to be conducted by agents of the Federal Bureau of Investigation, Postal Inspection Service, Internal Revenue Service and/or the Securities and Exchange Commission to assist them in identifying and locating potential assets for payment to creditors;

(d) A mandatory special assessment in an amount to be determined by the Court. The U.S. Attorney will recommend a mandatory special assessment in the amount of $11,600. Bleidt reserves the right to recommend a lesser, or no, special assessment in light of his financial circumstances;

4

    (e)   Five years of supervised release.

Bleidt agrees that he will provide to the U.S. Attorney expert reports, motions, memoranda of law and documentation of any kind on which he intends to rely at sentencing not later than twenty-one days before sentencing. Any basis for sentencing with respect to which all expert reports, motions, memoranda of law and documentation have not been provided to the U.S. Attorney at least twenty-one days before sentencing shall be deemed waived.

In the event of an appeal from, or collateral challenge to, Bleidt's sentence, the U.S. Attorney reserves his right to argue the correctness of Bleidt's sentence and the manner in which the District Court determines it.

5.   Payment of Mandatory Special Assessment

Bleidt agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Bleidt establishes to the satisfaction of the Court that Bleidt is financially unable to do so.

6.   Protection of Assets for Payment of Restitution, Forfeiture and Fine

Bleidt agrees not to transfer, or authorize the transfer of, any asset which has been restrained by Order of the Court in this case or any asset, whether or not restrained, which Bleidt has agreed to forfeit pursuant to this Agreement.

Bleidt agrees not to transfer, or authorize the transfer of any other asset in which he has an interest without prior express written consent of the U.S. Attorney, except for:

    (1)   Assets subject to superior, secured interests of innocent third parties, in which Bleidt has an equity interest of less than $5,000; and

    (2)   Attorney's fees incurred in connection with this criminal case.

This prohibition shall be effective as of the date of Bleidt's execution of this Agreement and continue until the fine, forfeiture and/or restitution ordered by the Court at sentencing is satisfied in full.

Bleidt further agrees that, prior to sentencing, he will truthfully and accurately complete the sworn financial statement

enclosed with this Agreement.

7. Waiver of Rights to Appeal and to Bring Collateral Challenge

Bleidt is aware that he has the right to challenge his sentence and guilty plea on direct appeal. Bleidt is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. §2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Bleidt knowingly and voluntarily waives his right to appeal or collaterally challenge:

(1) Bleidt's guilty plea and any other aspect of Bleidt's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

(2) The imposition by the District Court of the sentence agreed to by the parties, as set out in paragraph 4, even if the Court rejects one or more positions advocated by the parties with regard to the application of the U.S. Sentencing Guidelines.

Bleidt's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. §3742(b), and the U.S. Attorney therefore retains his appeal rights.

8. Probation Department Not Bound By Agreement

The sentencing disposition agreed upon by the parties and their respective calculations under the Sentencing Guidelines are not binding upon the United States Probation Office. Bleidt's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). Bleidt cannot withdraw his plea of guilty unless the sentencing judge rejects this Agreement. If the sentencing judge rejects this Agreement, this Agreement shall be null and void at the option of either the United States or Bleidt. In this regard,

6

Bleidt hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

9. <u>Information For Presentence Report</u>

Bleidt agrees to provide all information requested by the U.S. Probation Office concerning his assets.

10. <u>Civil Liability</u>

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Bleidt may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph one of this Agreement. Bleidt agrees to cooperate with employees of the IRS, the Civil Division of the U.S. Attorney's Office, and law enforcement agents working with attorneys in the Civil Division of the U.S. Attorney's Office, in making an assessment of his civil liabilities. Bleidt specifically authorizes release by the FBI, IRS or other investigative agency to the aforementioned agencies and their representatives of information for purposes of making that assessment. Bleidt further agrees to assent to the filing and allowance of a motion under Rule 6(e) of the Federal Rules of Criminal Procedure, to permit the disclosure of matters occurring before the grand jury for this purpose.

11. <u>Rejection of Plea By Court</u>

Should Bleidt's guilty plea not be accepted by the Court for whatever reason, or should Bleidt move to withdraw his guilty plea at any time, this Agreement shall be null and void at the option of the U.S. Attorney.

12. <u>Breach of Agreement</u>

If the U.S. Attorney determines that Bleidt has failed to comply with any provision of this Agreement, has violated any condition of his pretrial release, or has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Bleidt, through counsel or otherwise, in writing. The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement. Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this

Agreement. Bleidt recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Bleidt understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Bleidt before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation. In this regard, Bleidt hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

13. <u>Who Is Bound By Agreement</u>

This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

14. <u>Complete Agreement</u>

This letter contains the complete and only agreement between the parties. No promises, representations or agreements have been made other than those set forth in this letter. This Agreement supersedes prior understandings, if any, of the parties, whether written or oral. This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

If this letter accurately reflects the Agreement between the U.S. Attorney and Bleidt, please have Bleidt sign the Acknowledgment of Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Mark J. Balthazard.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: *[signature]*
DIANE C. FRENIERE
Section Chief

MARK J. BALTHAZARD
Assistant U.S. Attorney

8

### ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter in its entirety and discussed it with my attorney. I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts. I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

_____
BRADFORD C. BLEIDT

Date: 7/26/05

I certify that Bradford C. Bleidt has read this Agreement and that we have discussed its meaning. I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

_____
EDWARD J. LEE, Esq.
Attorney for Bradford C. Bleidt

Date: 7/26/05

**EXHIBIT B**

**CASH COLLECTED ON A CONSOLIDATED BASIS FOR ALL RECEIVERSHIP ENTITIES THROUGH NOVEMBER 10, 2005**

| | |
|---|---:|
| Balance with Fleet and Sovereign as of the Commencement of Case: | $196,828.24 |
| APAM and FPPS Commissions and Fees: | $186,167.57 |
| Miscellaneous Collections: | $183,783.21 |
| **Total Cash Collected:** | **$566,779.02** |

**FUNDS DISBURSED AS OF NOVEMBER 10, 2005**

| | |
|---|---:|
| Wages, Commissions, Benefits, Withholding Taxes and other Employee Related Payments: | $273,581.78 |
| Rent, Utilities and other Non-employee Operational Expenses: | $1,214.42 |
| Moving and Storage Expenses: | $12,784.75 |
| Miscellaneous Expenses: | $42,932.00 |
| **Total Funds Disbursed:** | **$330,512.95** |
| **Total Cash on Hand:** | **$236,266.07** |

BOS1543178.1