UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BRADFORD C. BLEIDT and )<br>ALLOCATION PLUS ASSET MANAGEMENT )<br>COMPANY, INC. )<br>)<br>Defendants. )<br>) | Civil Action No. 04-12415-NG |

### SUPPLEMENT TO THE RECEIVER'S THIRD INTERIM REPORT

In accordance with this Court's Orders dated November 22, 2004 (the "Appointment Order") and October 18, 2005, David A. Vicinanzo, the Court-appointed receiver (the "Receiver") of defendants, Bradford C. Bleidt ("Bleidt") and Allocation Plus Asset Management Company, Inc. ("APAM") and his counsel, Nixon Peabody LLP ("Nixon Peabody") hereby supplement their Third Interim Report of November 14, 2005.

### INTRODUCTION AND OVERVIEW

1. This Supplement summarizes several significant events in this case since filing of the Receiver's Third Interim Report on November 14, 2005. As detailed below, since filing the Third Interim Report, the Receiver has closed the WBIX rescission transaction and obtained cash and noncash consideration for these estates in excess of **$10,796,000**. In addition, subject only to investor approval, the Receiver has now negotiated on behalf of investors a global settlement with Bleidt's and APAM's former broker-dealers fully resolving all investor claims

against the broker-dealers in exchange for the aggregate cash payment of approximately **$6.33 million** which is proposed to be distributed to investors on a pro rata basis. Assuming Bleidt misappropriated between approximately $27 million (the amount charged in Bleidt's criminal indictment) and $31.7 million from investors (a current estimate), the proposed settlement, if approved, will result in a recovery of between approximately **20% to 23%** of misappropriated investor funds.

## SIGNIFICANT EVENTS SINCE THE THIRD INTERIM REPORT

### A.   Closing of the WBIX Recission Transaction.

2. As detailed in the Receiver's previous report to the Court, the principal asset of these estates was Bleidt's indirect ownership interest in WBIX Corp. which operates an AM radio broadcasting business under the call letters WBIX 1060 AM (the "Station") from separate tower sites located in Ashland, Massachusetts and Framingham, Massachusetts.

3. On October 24, 2005, the Court entered an order approving the rescission of Bleidt and Perspective Broadcasting, Inc.'s acquisition of all of WBIX Corp. stock from Alex G. Langer ("Langer"). On December 28, 2005, the WBIX rescission transaction closed, and these estates realized aggregate cash and noncash (e.g., discharge of secured debt and assumption of trade payables) consideration in excess of **$10,796,000**. Specifically, upon the closing of the rescission transaction, Langer, in accordance with the WBIX Rescission Agreement:

- Made an initial cash payment to the Receiver in the amount of $1,101,046.35;

- Delivered a promissory note to the Receiver evidencing Langer's obligation to make additional cash payments of $400,000 to the Receiver in four separate installments of $100,000 each, due 90 days from the closing date and on the first, second and third anniversaries of the closing date, respectively;

- Assumed pre-receivership Station liabilities of $433,000;

- Released these estates from liabilities in excess of $8,863,000 which were formerly secured by the Station and related assets; and

- Contractually committed to pay the Receiver twenty-five percent of the net proceeds of any sale of the Station in excess of ten million dollars, made within 36 months of the closing.

B.    **Global Settlement with Bleidt's Former Broker-Dealers.**

4.    As previously disclosed to the Court, from approximately January 1991 through November 2004, Bleidt was registered with, and was the agent of, three separate broker-dealers – Commonwealth Financial; Detwiler, Mitchell Fenton, Greaves, Inc.; and Winslow, Evans & Crocker. Defrauded investors, accordingly, held potential claims with respect to the brokerages and their agencies arising from Bleidt's fraudulent conduct. As detailed in his Second Interim Report, during this case, with the assent of the overwhelming majority of defrauded investors (more than 95%), the Receiver has vigorously pursued settlement negotiations with the broker-dealers and their respective insurance companies. Among other things, the Receiver provided each of the broker-dealers with a detailed analysis of the losses incurred by specific defrauded investors, produced thousands of documents and presented each of the brokerages with a comprehensive and detailed analysis of the facts and law that give rise to the claims against them.

5.    Recently, the Receiver successfully negotiated, in principal, a global settlement with Bleidt and APAM's former broker-dealers that fully resolves all investor claims. Generally speaking, under the terms of this settlement, the broker-dealers will pay a total of **$6.33 million** in cash to settle all claims arising from Bleidt's fraud and those settlement funds are proposed by the Receiver to be distributed to defrauded investors on a pro rata basis. This proposed settlement is conditioned solely on at least 98% of defrauded investors holding claims as to each broker-dealer and representing not less than 95% of the total dollar amounts misappropriated by Bleidt voting to approve the settlement and tendering releases to the broker-dealers and their agencies.

6. The Receiver is presently documenting the settlement with the broker-dealers and their counsel. The Receiver will shortly be distributing to each defrauded investor (and his or her adviser) a detailed description of the proposed settlement agreement and discussion of the risks and benefits of the proposed settlement together with a ballot to approve the proposed settlement. In those materials, the Receiver, among other things, expects to emphasize that, if approved, the settlement would relieve individual investors of the substantial costs and risks of protracted individual lawsuits or arbitration with the broker-dealers. The Receiver will also announce in those materials the scheduling during the month of February of an informational meeting of investors and their advisors at the offices of Nixon Peabody LLP in Boston to discuss the proposed settlement in detail and to address any questions investors may have regarding the proposed settlement. Following the informational meeting the Receiver proposes to allow investors an additional ten (10) days to cast their ballots with respect to acceptance of the settlement. If approved, the Receiver expects the settlement proceeds to be available upon the execution of settlement documentation by the requisite number of investors.

### THE RECEIVERSHIP ESTATES' CASH POSITION AS OF THE APPOINTMENT DATE AND CURRENT FINANCIAL CONDITION

7. To date, the Receiver has recovered cash in the amount of $1,685,552.18 and has expended funds in the amount of $331,252.45 in connection with the wind-up of APAM's and FPPS's businesses. Cash on hand as of this filing now totals $1,354,299.73. The substantial majority of expenditures ($273,581.78) were for wages, commissions, benefits and withholding taxes due to APAM's, FPPS's and their affiliates' employees. In accordance with paragraph 15 of the Appointment Order, a detailed accounting of the funds in the Receiver's possession through January 17, 2005 is attached hereto as **Exhibit A**.

**PROFESSIONAL FEES INCURRED BY THE RECEIVER.**

8. Due to the nature and exigencies of this case, the legal fees and expenses incurred by the Receiver to date have been substantial. The Receiver was required to employ counsel that are experienced and familiar with litigation, securities, bankruptcy and insolvency, communications, tax, and employment law and a host of other practice areas.

9. On September 21, 2005 Nixon Peabody, counsel for the Receiver, filed its first interim application for compensation and reimbursement of expenses (the "First Application"). As detailed in the First Application, during the period from November 18, 2004 through July 31, 2005, Nixon Peabody spent a total of 2,857.9 hours providing legal services to these estates and is owed $966,207 for that work. The First Application contains a detailed narrative report of all of the Professional Services performed by Nixon Peabody and was served on all investors, creditors and other parties in interest in this case. The First Application will be heard January 20, 2006 at 3:00 p.m.

10. Since August 1, 2005 through December 31, 2005, Nixon Peabody LLP has spent 1,169 hours providing services to these estates and amounting to approximately $421,066 in additional but as yet unbilled fees. The Receiver does not, however, yet seek compensation for this amount.

January 18, 2006                                          Respectfully submitted,

                                                          DAVID A. VICINANZO, RECEIVER

                                                          /s/Kevin M. Fitzgerald
                                                          Kevin M. Fitzgerald (admitted pro hac vice)
                                                          Francis C. Morrissey (BBO #567589)
                                                          Nixon Peabody LLP
                                                          100 Summer Street
                                                          Boston, MA  02110
                                                          (617) 345-1000

-6-

## Certificate of Service

    I, Kevin M. Fitzgerald, hereby certify that on January 18, 2006, a copy of the above Supplement to the Receiver's Third Interim Report has been served upon the parties by electronic filing service and a copy mailed via first class prepaid mail to:

Richard L. Gemma
MacAdams & Wieck
101 Dyer Street – Suite 400
Providence, RI 02903

                                                /s/Kevin M. Fitzgerald

**EXHIBIT A**

**CASH COLLECTED ON A CONSOLIDATED BASIS FOR ALL RECEIVERSHIP ENTITIES THROUGH JANUARY 17, 2006**

| | |
|---|---:|
| Balance with Fleet and Sovereign as of the Commencement of Case: | $196,828.24 |
| APAM and FPPS Commissions and Fees: | $203,894.34 |
| Miscellaneous Collections: | $183,783.21 |
| Proceeds from WBIX Rescission Transaction | $1,101,046.39 |
| **Total Cash Collected:** | **$1,685,552.18** |

**FUNDS DISBURSED AS OF JANUARY 17, 2006**

| | |
|---|---:|
| Wages, Commissions, Benefits, Withholding Taxes and other Employee Related Payments: | $273,581.78 |
| Rent, Utilities and other Non-employee Operational Expenses: | $1,214.42 |
| Moving and Storage Expenses: | $13,524.25 |
| Miscellaneous Expenses: | $42,932.00 |
| **Total Funds Disbursed:** | **$331,252.45** |
| **Total Cash on Hand:** | **$1,354,299.73** |

BOS1543178.2