UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE
 COMMISSION,
                    Plaintiff,
                         v.                           Civil No. 04-12415-NG
BRADFORD C. BLEIDT, et al.
                    Defendants.

## UNITED STATES' NOTICE CONCERNING VICTIMS INTERESTS RELATIVE TO FIRST INTERIM APPLICATION OF NIXON PEABODY LLC FOR COMPENSATION AND REIMBURSEMENT

The United States Attorney's Office, through its undersigned counsel, submits this

memorandum to the Court in connection with the application by Nixon Peabody LLP seeking an

interim fee payment that represents more than seventy one percent of the assets currently

available for distribution to victims of Bradford Bleidt.  The United States Attorney[1] is

concerned (1) with the scope of the request, given the current monies available for distribution,

(2) with the timing of the request, given representations made by Nixon Peabody in filings made

this past fall, and (3) with the sudden change in the date of the hearing on the request.  All of

these factors taken together may suggest that the full amount of the application should not be

addressed until after the closing of any settlement with the broker-dealers to assure proper notice

to all victims of Bleidt's crimes, and to assure fair consideration of Nixon Peabody's request and

the entry of an order for appropriate and reasonable payment.  To be fair to Nixon Peabody in the

---

[1]Pursuant to 18 U.S.C. § 3771(c)(1), the United States Attorney's Office has a duty on behalf of these victims to use its best efforts to see that crime victims are notified of, and afforded the rights set forth in the Crime Victim's Rights Act, 18 U.S.C. § 3771(a) & (b), which include under subsection (a)(6) the right to full and timely restitution as provided in law.  This memorandum is filed in discharge of that obligation.

interim, the United States Attorney recognizes that a partial fee payment may be appropriate at this time.

For many of his victims, Bradford Bleidt wiped out their entire life savings. Many are now facing their retirement years penniless. Some, expecting a comfortable retirement that they had frugally saved for, have had to return to work to make ends meet. The Victim Impact Statements on file with the Criminal Court, as well as the oral statements at the sentencing hearing, are a moving testament to their suffering and the bleak futures that they face as a result of Bleidt's crime. For these victims, any distribution from the monies recovered will have a substantial impact, however small that might be in light of their full loss. As this Court knows, those victims suffered an aggregate loss of $31,734,192.75; on December 5, 2005, this Court (per Young, J.) entered an order of restitution in that amount during the sentencing hearing for Bleidt, at the request of the United States Attorney. <u>United States v. Bradford Bleidt</u>, 05 CR 10144-WGY. *See* copy attached as Exhibit A.

Several factors support the United States Attorney's concerns. First, Nixon Peabody's fee request seeks interim compensation totaling $966,207.02 to be paid immediately. That firm's further filings suggest future fee applications of at least an additional $500,000, for a total likely fee request of almost $1,500,000. At present, only $1,354,299.73 in assets are currently available for payment of the restitution order to victims. While additional monies may well be recovered to supplement the $1.35 million presently in the fund, the reasonableness of a fee request seeking payment of 71% of the existing fund raises significant issues at this time.

The United States Attorney's Office is concerned about whether the notice was adequate and provided a meaningful opportunity to these victims to consider and to object should they so

desire, to the fee application.  Tomorrow's hearing was originally set for February 1, 2006; the

date was moved up eleven days just last Friday (and thus on only seven days notice).  The new

notice was mailed on the January 12, 2006, just one week and a day before the scheduled

hearing.   The Receiver's Supplemental Report of a proposed new settlement was not issued until

January 18, 2006, just two days before this hearing.  While the government appreciates that the

Receiver has been working very hard and is entitled to payment of some amount of fee, the

change in the timing raises the specter that some victims have not received notice of the new

hearing date.

Third, this issue of potential lack of notice is increased by Nixon Peabody's earlier filings

with the Court indicating that no response was yet due.  When Nixon Peabody's application was

filed in September 2005, Nixon Peabody informed the Court and counsel of record, including the

United States and at least some of the victims, that it was not yet seeking an actual award of

compensation.  See Exhibit B (9/28/05 Letter from Kevin Fitzgerald to Maryellen Molloy).   In

that letter, Mr. Fitzgerald stated:

> [T]his letter will confirm that at this juncture netiher the Receiver nor Nixon
> Peabody LLP seeks to have the court schedule a hearing or call for responsive
> pleading on the Application or to enter any order of relief.  Rather, the
> Application has been filed to provide this court and interested parties with an
> adequate opportunity to consider the merits of the Application in advance of an
> eventual hearing in the context of the status of the Receivership generally.  In this
> connection, the Receiver intends to make a further filing with this court
> specifically requesting a hearing on the Application and calling at that point for
> the filing of any responsive pleadings either in support or opposition in advance
> of the requsted hearing on the Application.  The Receiver does not contemplate
> making such a filing until further progress has been made with respect to the
> recovery of assets for the investors.

Exh. B.  Moreover, Nixon Peabody again took this position in November 2005, when it further

represented that it would not seek to have its fees allowed until the pending negotiations with the

broker/dealers had been concluded.  Nixon, Peabody stated:

> Although Nixon Peabody filed its First Application in September, it has deferred requesting a hearing on the application until the recision transaction has closed and matters involving a proposed broker-dealer settlement have been determined.

See Exh. C,  Receiver's Third Interim Report at 8.  As the United States Attorney has been informed, the broker-dealer settlement has not been closed.

Fourth, when Nixon Peabody sought this hearing and requested action on its fee application on December 16, 2005, it appropriately sought that the date be set several weeks in advance "in order to give parties-in-interest sufficient notice to participate meaningfully at the hearing." Exh. D.  Nixon Peabody may well have also requested a later date for the hearing given its prior representation not to seek a hearing until after the closing on the broker-dealer settlement.  This Court then set the hearing for February 1, 2006.  Just last week, on or about January 12, 2006, the United States Attorney's Office learned that the date of the hearing had been moved up to January 20, 2006, despite the fact that the broker dealer settlement had not yet closed and was not expected to close by January 20, 2006 (indeed, it has not yet been approved by the victims).

The sudden change in the hearing date, coupled with the filings this week, raises, the United States Attorney believes, a serious question whether all of the victims have been formally given notice of the hearing and that it was now time to file any responsive pleading and have had an adequate opportunity to respond.  The January 12, 2006 electronic notice did not state this. Moreover, that notice did not state that Nixon Peabody was now seeking a fee payment in advance of the broker-dealer settlement closing. While counsel for two of the victims have entered appearances and thus have received electronic notices, it is unclear whether the other

victims who are not represented by counsel are even aware that this hearing is taking place.

Moreover, at least one of the victims has filed an objection to the full amount being paid at this

time and to the lack of notice of the time for filing objections or responsive pleadings.  <u>See</u>

Response of St. Demetrios Greek Orthodox Church filed 1/18/06 (Docket #89).   It raises a

serious concern of unfairness to the victims for the receiver to receive, under this cloud

concerning notice to victims, a payout of 71% of the recovered funds.

 While the present fee request of almost one million dollars might be reasonable if the

broker-dealer settlement is approved and consummated (assuming payment of the total $7-8

million), at present, those funds have not been recovered and it may not happen.  The current fee

application if allowed in full would almost completely deplete the presently recovered funds and

thus once again put these victims at risk of recovering almost nothing.   Under these

circumstances, perhaps the victims could be given notice and an opportunity to be heard on the

full amount of the fees at the same time that they are notified about and weigh in on the proposed

settlement.  A further hearing could be set as soon as the proposed settlement is final to review

the remainder of Nixon, Peabody's fee requests.

 Respectfully submitted,

 UNITED STATES OF AMERICA

 By its attorneys,


 MICHAEL J. SULLIVAN
 United States Attorney

By:

   /s/ Sara Miron Bloom
 SARA MIRON BLOOM
 Assistant United States Attorney
 Suite 9200, Moakley Courthouse

5

Boston, MA 02210

(617) 748-3265

DATED: January 19, 2006

### Certificate of Service

I, Sara Miron Bloom, hereby certify that on January 19, 2006, a copy of the above Notice Concerning Victims' Interest Relative to First Interim Application of Nixon Peabody LLP, has been served upon the parties of record by electronic filing service.

/s/ Sara Miron Bloom

Sara Miron Bloom

# EXHIBIT A



AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1 - D. Massachusetts - 10/05

# UNITED STATES DISTRICT COURT
### District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**V.**<br><br>**BRADFORD BLEIDT** | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: **1: 05 CR 10144 - 001 - WGY**<br><br>USM Number: 25433-038<br><br>Edward Lee |

Defendant's Attorney

☑ Additional documents attached

Transcript Excerpt of Sentencing Hearing

☐

**THE DEFENDANT:**

☑ pleaded guilty to count(s)    1-116

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

Additional Counts - See continuation page ☐

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 1341 | Mail Fraud | 11/30/04 | 1-115 |
| 18 USC § 1957 | Monetary Transfer in Property Derived from Specified unlawful activity | 01/14/04 | 116 |

The defendant is sentenced as provided in pages 2 through ___10___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/05/05
Date of Imposition of Judgment

/s/ William G. Young
Signature of Judge

The Honorable William G. Young
Chief Judge, U.S. District Court
Name and Title of Judge

12/6/05
Date



DOCKETED
DATE 12/7/05
INITIALS KB

✎AO 245B(05-MA)        (Rev. 06/05) Judgment in a Criminal Case
                       Sheet 2 - D. Massachusetts - 10/05

| | Judgment — Page _____ of ____ 10 |
| --- | --- |

DEFENDANT:    **BRADFORD BLEIDT**
CASE NUMBER: **1: 05 CR 10144  - 001 - WGY**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:    135    month(s)

on counts 1-115, the sentence on each count to run concurrent one count with the other; 120 months on count 116, the sentence on count 116 to run concurrent with the sentence on counts 1-115.

☑ The court makes the following recommendations to the Bureau of Prisons:

Incarceration at Otisville or Fort Dix. The court recommends credit for time served from 11/22/04 to the present.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:




Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.


_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

✎AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3 - D. Massachusetts - 10/05

| | Judgment—Page _____ of _____ 10 |
|---|---|

DEFENDANT: **BRADFORD BLEIDT**
CASE NUMBER: **1: 05 CR 10144 - 001 - WGY**

### SUPERVISED RELEASE

☑ See continuation page

Upon release from imprisonment, the defendant shall be on supervised release for a term of :    36    month(s)

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed   104   tests per year, as directed by the probation officer.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

### STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B(05-MA)   (Rev. 06/05) Judgment in a Criminal Case
Sheet 4A - Continuation Page - Supervised Release/Probation -10/05

DEFENDANT:   **BRADFORD BLEIDT**
CASE NUMBER:   **1: 05 CR 10144   - 001 - WGY**

Judgment—Page _____ of __10__

## ADDITIONAL ☐ SUPERVISED RELEASE ☐ PROBATION TERMS

The defendant is to pay the balance of the restitution owed according to a court ordered repayment

The defendant is prohibited from incurring new credit charges or opening new lines of credit without approval of the probation officer.

The defendant is to provide the probation officer access to any requested financial information.
The financial information provided may be shared with the Financial Litigation Unit of the US Attorney Office.

The defendant is to participate in a mental health treatment program as directed by probation. The de shall be required to contribute to the cost of services for such treatment based on the ability to pay or availability of third party payment.

The defendant is to participate in an alcohol abuse treatment program as directed by probation. The shall be required to contribute to the cost of services for such treatment based on the ability to pay or availability of third party payment.

## Continuation of Conditions of ☐ Supervised Release ☐ Probation

AO 245B(05-MA)  (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 - D. Massachusetts - 10/05

DEFENDANT: **BRADFORD BLEIDT**

Judgment — Page _____ of _10_

CASE NUMBER: **1: 05 CR 10144 - 001 - WGY**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| **TOTALS** | $    $11,600.00 | $ | $    $31,734,192.75 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☑ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Clerk USDC* | $31,734,192.75 | $31,734,192.75 | |
| *payments to be forwarded to | | | |
| victims as designated by | | | |
| Probation Office | | | |

☐ See Continuation Page

| **TOTALS** | $    $31,734,192.75 | $    $31,734,192.75 |
|---|---|---|

☑ Restitution amount ordered pursuant to plea agreement  $ _$31,734,192.75_

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☑ the interest requirement is waived for the   ☐ fine   ☑ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B(05-MA)    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 - D. Massachusetts - 10/05

| | |
|---|---|
| DEFENDANT: **BRADFORD BLEIDT** | Judgment — Page _____ of ___10___ |
| CASE NUMBER: **1: 05 CR 10144 - 001 - WGY** | |

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  ☒ Lump sum payment of $ ___$31,745,792.75___ due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance ☐ C, ☐ D, ☐ E, or ☒ F below; or

**B**  ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C**  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☒ Special instructions regarding the payment of criminal monetary penalties:

according to a repayment plan established by Probation Office

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

☐ See Continuation Page

     Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

AO 245B    (Rev. 06/05) Criminal Judgment
Attachment (Page 1) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:    **BRADFORD BLEIDT**                          Judgment — Page    of    10
CASE NUMBER: **1: 05 CR 10144   - 001 - WGY**
DISTRICT:       **MASSACHUSETTS**

# STATEMENT OF REASONS

**I    COURT FINDINGS ON PRESENTENCE INVESTIGATION REPORT**

A    ✓    **The court adopts the presentence investigation report without change.**

B    ☐    **The court adopts the presentence investigation report with the following changes.**
         (Check all that apply and specify court determination, findings, or comments, referencing paragraph numbers in the presentence report, if applicable.)
         (Use Section VIII if necessary.)

   1    ☐    **Chapter Two of the U.S.S.G. Manual** determinations by court (including changes to base offense level, or
              specific offense characteristics):

   2    ☐    **Chapter Three of the U.S.S.G. Manual** determinations by court (including changes to victim-related adjustments,
              role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

   3    ☐    **Chapter Four of the U.S.S.G. Manual** determinations by court (including changes to criminal history category or
              scores, career offender, or criminal livelihood determinations):

   4    ☐    **Additional Comments or Findings** (including comments or factual findings concerning certain information in the
              presentence report that the Federal Bureau of Prisons may rely on when it makes inmate classification, designation,
              or programming decisions):

C    ☐    **The record establishes no need for a presentence investigation report pursuant to Fed.R.Crim.P. 32.**

**II    COURT FINDING ON MANDATORY MINIMUM SENTENCE** (Check all that apply.)

A    ☑    No count of conviction carries a mandatory minimum sentence.

B    ☐    Mandatory minimum sentence imposed.

C    ☐    One or more counts of conviction alleged in the indictment carry a mandatory minimum term of imprisonment, but the
         sentence imposed is below a mandatory minimum term because the court has determined that the mandatory minimum
         does not apply based on

         ☐    findings of fact in this case
         ☐    substantial assistance (18 U.S.C. § 3553(e)) or
         ☐    the statutory safety valve (18 U.S.C. § 3553(f))

**III    COURT DETERMINATION OF ADVISORY GUIDELINE RANGE (BEFORE DEPARTURES):**

Total Offense Level:         35
Criminal History Category:   I
Imprisonment Range:    168    to    210        months
Supervised Release Range:    2        to    3        years
Fine Range: $  17,500    to  $  2,602,000
☑    Fine waived or below the guideline range because of inability to pay.

AO 245B (05-MA)    (Rev. 06/05) Criminal Judgment
Attachment (Page 2) — Statement of Reasons - D. Massachusetts - 10/05

DEFENDANT:    **BRADFORD BLEIDT**
CASE NUMBER:    **1: 05 CR 10144 - 001 - WGY**
DISTRICT:    **MASSACHUSETTS**

Judgment — Page    of    10

# STATEMENT OF REASONS

**IV    ADVISORY GUIDELINE SENTENCING DETERMINATION** (Check only one.)

A    ☐    The sentence is within an advisory guideline range that is not greater than 24 months, and the court finds no reason to depart.

B    ☐    The sentence is within an advisory guideline range that is greater than 24 months, and the specific sentence is imposed for these reasons.
(Use Section VIII if necessary.)

C    ☐    The court departs from the advisory guideline range for reasons authorized by the sentencing guidelines manual.
(Also complete Section V.)

D    ☑    The court imposed a sentence outside the advisory sentencing guideline system.  (Also complete Section VI.)

**V    DEPARTURES AUTHORIZED BY THE ADVISORY SENTENCING GUIDELINES** (If applicable.)

A    **The sentence imposed departs** (Check only one.):
☐    below the advisory guideline range
☐    above the advisory guideline range

B    **Departure based on** (Check all that apply.):

1    **Plea Agreement** (Check all that apply and check reason(s) below.):
☐    5K1.1 plea agreement based on the defendant's substantial assistance
☐    5K3.1 plea agreement based on Early Disposition or "Fast-track" Program
☐    binding plea agreement for departure accepted by the court
☐    plea agreement for departure, which the court finds to be reasonable
☐    plea agreement that states that the government will not oppose a defense departure motion.

2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐    5K1.1 government motion based on the defendant's substantial assistance
☐    5K3.1 government motion based on Early Disposition or "Fast-track" program
☐    government motion for departure
☐    defense motion for departure to which the government did not object
☐    defense motion for departure to which the government objected

3    **Other**
☐    Other than a plea agreement or motion by the parties for departure (Check reason(s) below.):

C    **Reason(s) for Departure** (Check all that apply other than 5K1.1 or 5K3.1.)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ | 4A1.3 | Criminal History Inadequacy | ☐ 5K2.1 | Death | ☐ 5K2.11 | Lesser Harm |
| ☐ | 5H1.1 | Age | ☐ 5K2.2 | Physical Injury | ☐ 5K2.12 | Coercion and Duress |
| ☐ | 5H1.2 | Education and Vocational Skills | ☐ 5K2.3 | Extreme Psychological Injury | ☐ 5K2.13 | Diminished Capacity |
| ☐ | 5H1.3 | Mental and Emotional Condition | ☐ 5K2.4 | Abduction or Unlawful Restraint | ☐ 5K2.14 | Public Welfare |
| ☐ | 5H1.4 | Physical Condition | ☐ 5K2.5 | Property Damage or Loss | ☐ 5K2.16 | Voluntary Disclosure of Offense |
| ☐ | 5H1.5 | Employment Record | ☐ 5K2.6 | Weapon or Dangerous Weapon | ☐ 5K2.17 | High-Capacity, Semiautomatic Weapon |
| ☐ | 5H1.6 | Family Ties and Responsibilities | ☐ 5K2.7 | Disruption of Government Function | ☐ 5K2.18 | Violent Street Gang |
| ☐ | 5H1.11 | Military Record, Charitable Service, Good Works | ☐ 5K2.8 | Extreme Conduct | ☐ 5K2.20 | Aberrant Behavior |
| | | | ☐ 5K2.9 | Criminal Purpose | ☐ 5K2.21 | Dismissed and Uncharged Conduct |
| ☐ | 5K2.0 | Aggravating or Mitigating Circumstances | ☐ 5K2.10 | Victim's Conduct | ☐ 5K2.22 | Age or Health of Sex Offenders |
| | | | | | ☐ 5K2.23 | Discharged Terms of Imprisonment |
| | | | | | ☐ | Other guideline basis (e.g., 2B1.1 commentary) |

D    **Explain the facts justifying the departure.**  (Use Section VIII if necessary.)

AO 245B ( 05-MA)    (Rev. 06/05) Criminal Judgment
Attachment (Page 3) — Statement of Reasons - D. Massachusetts 10/05

DEFENDANT:    **BRADFORD BLEIDT**                                    Judgment — Page    of    10
CASE NUMBER:  **1: 05  CR  10144  - 001 - WGY**
DISTRICT:     **MASSACHUSETTS**

## STATEMENT OF REASONS

**VI    COURT DETERMINATION FOR SENTENCE OUTSIDE THE ADVISORY GUIDELINE SYSTEM**
(Check all that apply.)

A    **The sentence imposed is** (Check only one.):
☑ below the advisory guideline range
☐ above the advisory guideline range

B    **Sentence imposed pursuant to** (Check all that apply.):

1    **Plea Agreement** (Check all that apply and check reason(s) below.):
☑ binding plea agreement for a sentence outside the advisory guideline system accepted by the court
☐ plea agreement for a sentence outside the advisory guideline system, which the court finds to be reasonable
☐ plea agreement that states that the government will not oppose a defense motion to the court to sentence outside the advisory guideline
    system

2    **Motion Not Addressed in a Plea Agreement** (Check all that apply and check reason(s) below.):
☐ government motion for a sentence outside of the advisory guideline system
☐ defense motion for a sentence outside of the advisory guideline system to which the government did not object
☐ defense motion for a sentence outside of the advisory guideline system to which the government objected

3    **Other**
☐ Other than a plea agreement or motion by the parties for a sentence outside of the advisory guideline system (Check reason(s) below.):

C    **Reason(s) for Sentence Outside the Advisory Guideline System** (Check all that apply.)

☐ the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)

☐ to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))

☐ to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B))

☐ to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))

☐ to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner
    (18 U.S.C. § 3553(a)(2)(D))

☐ to avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6))

☐ to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7))

D    **Explain the facts justifying a sentence outside the advisory guideline system.**  (UseSection VIII if necessary.)

AO 243B ( 05-MA) (Rev. 06/05) Criminal Judgment
Attachment (Page 4) — Statement of Reasons - D. Massachusetts - 10/05

Case 1:05-cr-10144-WGY    Document 32    Filed 12/07/2005    Page 10 of 10

| | |
|---|---|
| DEFENDANT: | **BRADFORD BLEIDT** |
| CASE NUMBER: | **1: 05 CR 10144  - 001 - WGY** |
| DISTRICT: | **MASSACHUSETTS** |

Judgment — Page      of      10

# STATEMENT OF REASONS

## VII  COURT DETERMINATIONS OF RESTITUTION

A  ☐  Restitution Not Applicable.

B      Total Amount of Restitution:      31,734,192.75

C      Restitution not ordered (Check only one.):

1  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because the number of identifiable victims is so large as to make restitution impracticable under 18 U.S.C. § 3663A(c)(3)(A).

2  ☐  For offenses for which restitution is otherwise mandatory under 18 U.S.C. § 3663A, restitution is not ordered because determining complex issues of fact and relating them to the cause or amount of the victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim would be outweighed by the burden on the sentencing process under 18 U.S.C. § 3663A(c)(3)(B).

3  ☐  For other offenses for which restitution is authorized under 18 U.S.C. § 3663 and/or required by the sentencing guidelines, restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweigh the need to provide restitution to any victims under 18 U.S.C. § 3663(a)(1)(B)(ii).

4  ☐  Restitution is not ordered for other reasons.  (Explain.)

D  ☐  Partial restitution is ordered for these reasons (18 U.S.C. § 3553(c)):

## VIII  ADDITIONAL FACTS JUSTIFYING THE SENTENCE IN THIS CASE (If applicable.)

Sections I, II, III, IV, and VII of the Statement of Reasons form must be completed in all felony cases.

| | |
|---|---|
| Defendant's Soc. Sec. No.:      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 | Date of Imposition of Judgment |
| | 12/05/05 |
| Defendant's Date of Birth:      54 | |
| | /s/ William G. Young |
| Defendant's Residence Address: | Signature of Judge |
| | The Honorable William G. Young    Chief Judge, U.S. District Court |
| Defendant's Mailing Address: | Name and Title of Judge |
| | Date Signed    12/6/05 |

# EXHIBIT B

100 Summer Street
Boston, MA 02110
(617) 345-1000
Fax: (866) 947-1074
Kevin M. Fitzgerald
Direct Dial: (603) 628-4016
E-Mail: kfitzgerald@nixonpeabody.com

September 28, 2005

Ms. Maryellen Molloy
Chambers of the Honorable Nancy Gertner
United States District Court
of the District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

   RE: <u>Securities and Exchange Commission v. Bradford C. Bleidt, et al</u>
      Civil Action No. 0412415-NG

Dear Maryellen:

  As you know, this firm represents David A. Vicinanzo in his capacity as the court-appointed Receiver in the above-captioned litigation. On September 21, 2005 the Receiver caused to be filed with this Court notice of the First Interim Application of Nixon Peabody LLP, Counsel for the Receiver for Compensation and Reimbursement of Expenses. As discussed by phone with you, this letter will confirm that at this juncture neither the Receiver nor Nixon Peabody LLP seeks to have the Court schedule a hearing or call for responsive pleadings on the Application or to enter any order of relief. Rather, the Application has been filed to provide this Court and interested parties with an adequate opportunity to consider the merits of the Application in advance of an eventual hearing in the context of the status of the Receivership generally. In this connection, the Receiver intends to make a further filing with this Court specifically requesting a hearing on the Application and calling at that point for the filing of any responsive pleadings either in support or in opposition in advance of the requested hearing on the Application. The Receiver does not contemplate making such a filing until further progress has been made with respect to the recovery of assets for investors.

  Thank you for your cooperation and assistance. Please feel free to call if you have additional questions.Sincerely yours,

        <u>/s/Kevin M. Fitzgerald</u>

cc: Counsel of record by Electronic Mail
   Richard L. Gemma by First Class Mail

M125107.1

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) )<br><br>Plaintiff, )<br> )<br>vs. )<br> )<br>BRADFORD C. BLEIDT and )<br>ALLOCATION PLUS ASSET MANAGEMENT )<br>COMPANY, INC. )<br> )<br>Defendants. )<br>_____ ) | Civil Action No. 04-12415-NG |

## **RECEIVER'S THIRD INTERIM REPORT**

In accordance with this Court's Orders dated November 22, 2004 (the "Appointment

Order") and October 18, 2005, David A. Vicinanzo, the Court-appointed receiver (the

"Receiver") of defendants, Bradford C. Bleidt ("Bleidt") and Allocation Plus Asset Management

Company, Inc. ("APAM") and his counsel, Nixon Peabody LLP ("Nixon Peabody") hereby

submit their Third Interim Report.

### **INTRODUCTION AND OVERVIEW**

1.       This Third Interim Report provides a summary of the Receiver's and his counsel,

Nixon Peabody's activities since the Receiver's Second Report was filed with the Court on July

15, 2005 (the "Third Report Period") and was served on defrauded investors and other parties-in-

interest shortly thereafter. The Report also brings current the Receiver's preliminary conclusions

and recommendations as set forth in the Third Report.

2.    When the Receiver was appointed in this case approximately a year ago, he

succeeded to less than $200,000, almost all of which were subject to set off claims by Bleidt and

APAM's banks.  During the Third Report Period, as detailed below, the Receiver made

considerable progress towards liquidating these estates' principal assets – Bleidt's indirect

ownership interest in WBIX Corp. and claims against third parties.  First, the Receiver

negotiated, documented and obtained Court approval for a transaction that will monetize Bleidt's

interest in the radio station and yield not less than $1,500,000 net cash for these estates and

relieve it of more than $9,296,000 in debt.  Second, the Receiver has made significant progress in

negotiations for global settlement of investor claims against Bleidt and APAM's pre-receivership

broker-dealers, as detailed in this Third Report.

### SUMMARY OF THE RECEIVER'S ACTIVITIES DURING
### THE THIRD REPORT PERIOD

**A.    Bleidt's Plea Agreement with the United States Attorney and Proposed**

**Stipulation to Judgment in this Case.**

3.    As detailed in the Receiver's Second Interim Report, on June 9, 2005, the United

States Attorney filed an Information against Bleidt.  In the Information, the United States alleged

that Bleidt defrauded approximately 125 investors of more than $27 million and charged Bleidt

with 115 counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of monetary

transactions in property derived from specified unlawful activity in violation of 18 U.S.C.

§ 1957.

4.    On July 26, 2005, Bleidt and the United States Attorney entered into a plea

agreement pursuant to Fed. R. Crim. P. 11 (the "Plea Agreement").  A copy of the Plea

Agreement is attached hereto as Exhibit A.

5.     In accordance with the terms of Plea Agreement, on July 26, 2005, Bleidt plead guilty to all 116 counts in the Information and "expressly and unequivocally admit[ed] that he in fact knowingly, intentionally, and willfully committed the crimes charged in the Information, and is in fact guilty of those offenses."

6.     In addition, in the Plea Agreement, the U.S. Attorney and Bleidt agreed that the following was an appropriate disposition of his criminal case:

- A sentence of imprisonment of 135 months;

- No fine (because any available funds should be paid in restitution);

- Restitution in an amount to be determined by the Court;

- A mandatory special assessment in an amount to be determined by the Court; and

- Five years of supervised release.

7.     A hearing to consider the Plea Agreement and impose a sentence against Bleidt in the criminal action is scheduled for Monday, December 5, 2005 before the Honorable William G. Young.

8.     Since entry of the Plea Agreement, counsel for the Receiver, in concert with counsel for the Securities and Exchange Commission ("SEC"), have proposed to Bleidt's counsel that he stipulate to entry of judgment in this pending civil action, thus obviating the need for trial and procedurally facilitating potential investor recoveries. Bleidt and his counsel have indicated a willingness to proceed with such a stipulation. The Receiver is now working with counsel for the SEC to define the parameters of the proposed stipulation which, once approved by the SEC, will be presented to Bleidt's counsel for review and signature by Bleidt, and then submitted to the court for approval

9.     To facilitate the conclusion of a stipulation to judgment and to further assist the

Receiver and the SEC in understanding the details of Bleidt's fraud, counsel for the Receiver and

the SEC interviewed and deposed Bleidt over a period of 3 days following entry of the Plea

Agreement. This was the first opportunity since the opening of this case in November of 2004 to

directly question Bleidt concerning the details of his activities including the modalities he

employed to perpetrate his crimes. Bleidt's testimony in this respect has been of material

assistance to the Receiver, inter alia, in his ongoing effort to evaluate and pursue potential

recoveries for these estates.

### B.     The Court's and the Federal Communication Commission Approval of the WBIX Rescission Agreement.

10.     During the Third Report Period, the Receiver made substantial progress towards

liquidating the principal asset in these estates – Bleidt's indirect ownership interest in WBIX

Corp. f/k/a Langer Broadcasting Corp.

11.     As detailed in the Receiver's previous reports, WBIX Corp. operates an AM radio

broadcasting business under the call letters WBIX 1060 AM (the "Station") from separate tower

sites located in Ashland, Massachusetts and Framingham, Massachusetts.

12.     On September 21, 2005, the Receiver and Langer entered into definitive

agreement to rescind Bleidt and PBI's purchase of the WBIX stock (the "Rescission

Agreement").

13.     In essence, the rescission transaction contemplated that the stock in WBIX Corp.

shall be returned to Langer in exchange for:

- Aggregate cash payments from Langer to the Receiver in the amount of $1,500,000;

- Langer's assumption of pre-receivership station liabilities of $433,000;

- Twenty-five percent of the net proceeds of any sale of the station in excess of ten million dollars made within 36 months of the closing of the Rescission Agreement; and

- Langer release of these estates from liabilities arising from Bleidt acquisition of the station in excess of $8,863,000.

14.     On October 24, 2005 the Court entered an order approving that transaction and granting related relief and, on November 11, 2005 the Federal Communication Commission conditionally granted the Receiver's application to retransfer the license to the Station to Langer. The Receiver anticipates that the transaction will close on or before November 30, 2005.

### C.     Potential Settlement with Bleidt's Former Broker-Dealers

15.     As previously disclosed to the Court, from approximately January 1991 through November 2004, Bleidt was registered with, and an agent of, three separate brokerage firms, so-called broker-dealers. During the Third Report Period, the Receiver's efforts have resulted in significant progress toward a proposed global settlement of defrauded investors' claims against Bleidt's and APAM's former broker-dealers.

16.     In summary, the three broker-dealers (Commonwealth Financial, Detwiler, and Winslow, Evans & Crocker) have been in active discussions with the Receiver concerning the terms and conditions of an offer to pay defrauded investors an aggregate sum of cash to settle substantially all claims that might be asserted against the broker-dealers arising from Bleidt's misappropriation of investor funds. Although the terms and conditions of a proposed settlement have not yet been finalized, significant progress has been made and the Receiver expects to report on the outcome of settlement negotiations shortly.

17.     Such a settlement with the broker-dealers, if consummated, would relieve individual investors of the costs and risks of protracted individual lawsuits or arbitrations with the broker-dealers. Participation in the global settlement would be voluntary and thus investors

would be free to pursue individual remedies if they elected to opt out of the global settlement,

provided, however, that unless substantially all claimants opted to participate, the proposed

aggregate settlement would likely fail.

18.    When a settlement proposal is finalized, the Receiver will publish a further

supplemental report and call an informational meeting with all investors to review the proposed

settlement in detail and poll investors for their assent.

**D.    The Receiver's Investigation of Potential Claims Against Financial
        Institutions.**

19.    During the Third Report Period, the Receiver has continued to investigate the

potential claims against Bank of America (successor to BayBank and Fleet Bank) and Sovereign

Bank arising from Bleidt's fraudulent scheme.  That effort is ongoing. The Receiver has been in

communication with counsel for both institutions and has proposed to enter into tolling

agreements with each to protect the interests of the estates while, inter alia, the Receiver pursues

discussions with each institution.  Sovereign Bank for its part has cooperated with the Receiver

and has entered in to a tolling agreement through January 31, 2006.  Counsel for Bank of

America, however, has declined the Receiver's direct request for a tolling agreement.  As such,

the Receiver expects that, with the assistance of special counsel, it will be necessary to

commence proceedings involving Bank of America in the near term.  The Receiver expects to

file a supplemental report with respect to those proceedings.

**E.    Investor Communications.**

20.    The Receiver continues to have regular communications with defrauded investors,

investor groups, creditors and other parties-in-interest and their counsel.  During the Third

Report Period, the Receiver served each of the approximately 125 client-victims identified to

date in this case with (a) his Second Interim Report; (b) the rescission agreement between him

and Langer; (c) his motion to approve the rescission agreement; and (d) his first interim fee application. In addition, during that period, the Receiver continued to maintain a web page at http://extranet30.nixonpeabody.com. The Receiver's web page, among other things, contains contact information for the Receiver, the SEC and the United States Attorney, as well as links to the Appointment Order, the First and Second Status Reports and other important orders and pleadings in this case.

## THE RECEIVERSHIP ESTATES' CASH POSITION AS OF THE APPOINTMENT DATE AND CURRENT FINANCIAL CONDITION

21.    To date, the Receiver has recovered cash in the amount of $566,779.02 and has expended funds in the amount of $273,581.78 in connection with the wind-up of APAM's and FPPS's businesses. The substantial majority of those expenditures ($271,913.03) were for wages, commissions, benefits and withholding taxes due to APAM's, FPPS's and their affiliates' employees. In accordance with paragraph 15 of the Appointment Order, a detailed accounting of the funds in the Receiver's possession is attached hereto as Exhibit B.

## PROFESSIONAL FEES INCURRED BY THE RECEIVER.

22.    Due to the nature and exigencies of this case, the legal fees and expenses incurred by the Receiver to date have been substantial. The Receiver was required to employ counsel that are experienced and familiar with litigation, securities, bankruptcy and insolvency, communications, tax, and employment law and a host of other practice areas.

23.    On September 21, 2005 Nixon Peabody, counsel for the Receiver, filed its first interim application for compensation and reimbursement of expenses (the "First Application"). As detailed in the First Application, during the period from November 18, 2004 through July 31, 2005, Nixon Peabody spent a total of 2,857.9 hours providing legal services to these estates and is owed $966,207 for that work. The First Application contains a detailed narrative

report of all of the professional services performed by Nixon Peabody and is available to
investors, creditors and other parties-in-interest upon request.

24.    Although Nixon Peabody filed its First Application in September, it has deferred
requesting a hearing on the application until the rescission transaction has closed and matters
involving a proposed broker-dealer settlement have been determined.

25.    For the period from August 2, 2005 through October 31, 2005, Nixon Peabody
spent a total of 717.80 hours providing legal services to these estates. That work will be the
subject matter of subsequent fee applications filed with the Court. In accordance with the
Appointment Order, invoices detailing all of the time and expenses incurred during that period
and the nature of the work performed will be provided to the SEC.

November 14, 2005                          Respectfully submitted,

                                           DAVID A. VICINANZO, RECEIVER

                                           /s/Kevin M. Fitzgerald
                                           Kevin M. Fitzgerald (admitted pro hac vice)
                                           Francis C. Morrissey (BBO #567589)
                                           Nixon Peabody LLP
                                           100 Summer Street
                                           Boston, MA 02110
                                           (617) 345-1000

### Certificate of Service

I, Kevin M. Fitzgerald, hereby certify that on November 14, 2005, a copy of the
Receiver's Third Interim Report has been served upon the parties by electronic filing service and
a copy mailed via first class prepaid mail to:

Richard L. Gemma
MacAdams & Wieck
101 Dyer Street – Suite 400
Providence, RI 02903

/s/ Kevin M. Fitzgerald

## EXHIBIT B

**CASH COLLECTED ON A CONSOLIDATED BASIS FOR ALL RECEIVERSHIP ENTITIES THROUGH NOVEMBER 10, 2005**

| | |
|---|---|
| Balance with Fleet and Sovereign as of the Commencement of Case: | $196,828.24 |
| APAM and FPPS Commissions and Fees: | $186,167.57 |
| Miscellaneous Collections: | $183,783.21 |
| **Total Cash Collected:** | **$566,779.02** |

**FUNDS DISBURSED AS OF NOVEMBER 10, 2005**

| | |
|---|---|
| Wages, Commissions, Benefits, Withholding Taxes and other Employee Related Payments: | $273,581.78 |
| Rent, Utilities and other Non-employee Operational Expenses: | $1,214.42 |
| Moving and Storage Expenses: | $12,784.75 |
| Miscellaneous Expenses: | $42,932.00 |
| **Total Funds Disbursed:** | **$330,512.95** |
| **Total Cash on Hand:** | **$236,266.07** |

BOS1543178.1

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff,<br><br>vs.<br><br>BRADFORD C. BLEIDT and<br>ALLOCATION PLUS ASSET MANAGEMENT<br>COMPANY, INC.<br><br>Defendants. | Civil Action No. 04-12415-NG |

## RECEIVER'S REQUEST FOR A HEARING ON HIS FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES (EXPEDITED DETERMINATION REQUESTED)

David A. Vicinanzo, the Court-appointed Receiver in the above-captioned case respectfully requests that the Court schedule a hearing on his First Interim Application for Compensation and Reimbursement of Expenses (the "First Interim Application") during the first two weeks of January 2006. In support of his request, the Receiver respectfully states as follows:

1.     By order dated November 18, 2004, the Court appointed the Receiver in this case and approved the retention of his counsel Nixon Peabody LLP.

2.     Although they were appointed more than a year ago and have spent thousands of hours providing services in this case, to date, neither the Receiver nor Nixon Peabody have received any compensation for their extensive efforts on behalf of defrauded investors, creditors and other parties-in-interest in this case.

BOS1552784.1

3.      On September 27, 2005, the Receiver filed his First Interim Application but deferred seeking a hearing on the application.  Given the progress of the case, the Receiver now believes that a hearing on the First Interim Application is appropriate.

4.      Receiver, accordingly, respectfully requests that the Court schedule a hearing on the First Interim Application during the first two weeks of January.  He anticipates the hearing on the application will take not more than an hour.  In addition, in order to give parties-in-interest sufficient notice to participate meaningfully at the hearing, the Receiver respectfully requests that the Court act on this request for a hearing on an expedited basis so he can promptly notice out any hearing scheduled by the Court.

WHEREFORE, the Receiver respectfully requests that the Court enter an order:

A.      Scheduling a hearing on the First Interim Application during the first two weeks of January 2006; and

B.      Granting such other and further relief as is deemed appropriate and just.

/s/Kevin M. Fitzgerald
Kevin M. Fitzgerald (admitted pro hac vice)
Francis C. Morrissey (BBO #567589)
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110
(617) 345-1000

Date:  December 16, 2005