UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> BRADFORD C. BLEIDT and ) <br> ALLOCATION PLUS ASSET MANAGEMENT ) <br> COMPANY, INC. ) <br> ) <br> Defendants. ) | Case No. CA-04-12415-NG |

ANCILLARY RECEIVER'S FIRST INTERIM REPORT

To comply with paragraph 10 of the Court's March 22, 2006 Order for

Appointment, David J. Fine, the Court-appointed Ancillary Receiver, hereby submits his

first Interim Report.

Background

1.      The facts giving rise to the appointment of Receiver David Vicinanzo

were summarized in the February 22, 2005 Initial Report of Receiver, and in the

"Overview" section of this Court's January 27, 2006 Order regarding Counsel Fees and

Expenses, and need not be repeated here.

2.      As described in paragraph 30 of his July 15, 2005 Second Interim Report,

Receiver Vicinanzo discovered, during the course of his work, a factual basis for

potential claims against Bank of America (as successor in interest to Bay Bank and Fleet Bank) and against Sovereign Bank.

3.    Receiver Vicinanzo has, at all relevant times, been a partner in the law firm of Nixon Peabody LLP, and, from the time of Mr. Vicinanzo's appointment as Receiver, Nixon Peabody performed most of the legal services required by Mr. Vicinanzo to discharge his duties and responsibilities as Receiver.  When Receiver Vicinanzo discovered that the Receivership estate had potential claims against Sovereign Bank and Bank of America, he recognized a potential conflict of interest arising from the fact that Sovereign Bank and Bank of America had used, and continued to use, Nixon Peabody for certain legal services, albeit in matters totally unrelated to the facts involved in the receivership here.

4.    Initially, Receiver Vicinanzo believed that this potential conflict of interest could be effectively avoided by Receiver Vicinanzo's retaining, with regard to the potential claims against Sovereign Bank and Bank of America, independent outside counsel -- counsel with no affiliation to Nixon Peabody and no attorney-client relationship with either bank.  Accordingly, on November 15, 2005, Receiver Vicinanzo retained the undersigned David J. Fine as such independent outside counsel.

5.    While Mr. Vicinanzo believed at first that he could continue to act as Receiver with regard to the potential claims against the banks, after attorney Fine had, in Receiver Vicinanzo's behalf, actually commenced suit against Bank of America on November 18, 2005, Mr. Vicinanzo thought it best to alert the Court and request the Court's guidance for two reasons, which attorney Fine described in a December 27, 2005 letter to the Court as:  (1) "the issue of potential conflict arising from the Receiver's role

2

as a Plaintiff-Receiver in a suit against Bank of America at the same time that Mr. Vicinanzo is a partner at . . . a firm that continues to represent Bank of America in other matters"; and (2) Mr. Vicinanzo's concern that "the relationship of his law firm with both banks may create an appearance of conflict in the mind of investor/victims of Bleidt or his entities." In response to Receiver Vicinanzo's request, the Court held a chambers conference on January 20, 2006 with Receiver Vicinanzo, attorneys from Nixon Peabody, attorney Fine, and representatives of the SEC. At the conclusion of this conference, the Court agreed with Receiver Vicinanzo that it would be best if he had no further role regarding the Receivership estate's claims and potential claims against Sovereign Bank and Bank of America, and the Court asked the SEC to propose an Ancillary Receiver to take over Mr. Vicinanzo's duties and responsibilities regarding such claims.

      6.      On March 3, 2006, the SEC moved that the undersigned be appointed as such Ancillary Receiver, and, on March 22, 2006, the Court issued its Order for Appointment. The Court's Order "authorized, empowered and directed" the Ancillary Receiver, among other things, to: "institute, prosecute . . . compromise . . . or become party to such . . . actions . . . as the Ancillary Receiver deems necessary and appropriate to carry out the Ancillary Receiver's mandate"; "assist the victims of Bleidt's fraud to institute, prosecute, compromise or settle such claims as they may have against banks in their individual capacities, provided that the victims specifically authorize the Ancillary Receiver to do so"; and "engage and employ persons in his discretion and in connection with the Boston District Office of the Commission to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, attorneys, paralegals, investigators and expert consultants and witnesses." 3/22/06 Order at pp. 1-2.

3

7.    Paragraph 10 of the Court's March 22, 2006 Order provided that "[e]very ninety (90) days from the date of this Order, the Ancillary Receiver shall file a Report with the Court summarizing his activities and reporting on the status of any legal claims."

### Ancillary Receiver's Activities and Status of Legal Claims

8.    Shortly after he was retained by Receiver Vicinanzo in November 2005, attorney Fine filed, on November 18, 2005, a Complaint against Bank of America: Vicinanzo, in his capacity as Court-Appointed Receiver v. Bank of America Corporation, as successor in interest to Bay Bank and Fleet Bank, Civil Action No. 05-12315-NG. Attorney Fine had this Complaint served on the Bank on March 16, 2006.  On March 24, 2006, the parties filed a Stipulation reciting that attorney Fine had recently been appointed Ancillary Receiver, and that he intended to file and serve an Amended Complaint, and providing that Bank of America need not respond to the original Complaint and that once the Amended Complaint was filed and served, the parties would "agree upon a mutually-convenient date by which BOA must answer, move, or otherwise plead." Ancillary Receiver Fine intends to file his Amended Complaint against Bank of America within the next 60 days.

9.    On November 3, 2005, Receiver Vicinanzo entered into a Tolling Agreement with Sovereign Bank providing that, with respect to any Claims the Receiver or investors may file against Sovereign Bank arising out of, or relating to, the present litigation (Civil Action No. 04-12415-NG) and related receivership, "Sovereign Bank will not assert or rely upon, in any way, in computing the running of time under any applicable statute of limitations, or by way of laches or other time limitation, the period

between November 3, 2005 and the date of filing of such Claims by or at the direction [of] the Receiver or investors . . . or January 31, 200[6], whichever is earlier." This Tolling Agreement has now been extended three times: first, to March 31, 2006; second, to May 30, 2006; and, most recently, to July 31, 2006.

10.     On April 27, 2006, the Ancillary Receiver had his first substantive meeting with Sovereign Bank's counsel. The Ancillary Receiver anticipates that, between now and July 31, 2006, he will have further communications with Sovereign Bank's counsel and that either the parties will enter into serious settlement discussions, or the Ancillary Receiver will commence suit against Sovereign Bank.

11.     To assist him in discharging his duties and responsibilities, Ancillary Receiver Fine enlisted the services of two attorneys, Paula Bonnell and David L. Arnheim, and a paralegal/legal assistant, Emily DeGraff Bass. Beyond the activities referred to above, the activities of Ancillary Receiver Fine, attorneys Bonnell and Arnheim and paralegal Bass (hereinafter collectively referred to as the "Ancillary Receiver"), since mid-November 2005, have consisted of:

    a.     identifying, examining and pursuing pertinent documents;

    b.     conducting factual research and investigation;

    c.     identifying legal issues and researching such issues;

    d.     communicating with the victims of Brad Bleidt and attorneys for such victims; and

    e.     securing authorizations from Bleidt victims to enable funds to be set aside from the settlement with the broker-dealers, to establish a special fund to finance pursuit of the claims against Sovereign Bank and Bank of America.

12.    The foregoing activities may be further summarized as follows.


A.    Identifying, Examining and Pursuing Pertinent Documents

13.    After attorney Fine was retained by Receiver Vicinanzo in November 2005, it became apparent to him that a considerable amount of investigatory work regarding the fraudulent conduct of Brad Bleidt had already been done by the SEC and by Nixon Peabody.  Although the objectives the SEC and Nixon Peabody had when they did this work were very different from the current objectives of the Ancillary Receiver, attorney Fine realized that there was a great deal of important and useful information to be gleaned from the documents that had been obtained by the SEC and Nixon Peabody. Accordingly, one of the first tasks of the Ancillary Receiver has been to review and analyze such documents.

14.    In the course of reviewing the foregoing documents, the Ancillary Receiver identified certain categories of documents such as account opening documentation, for which production by the banks appeared incomplete.  Accordingly, one of the Ancillary Receiver's primary activities in the past several months has been to press the banks to produce further bank account documents and to explain, in those instances where the banks could not produce bank account documents which it appeared the banks should have, what accounted for the banks not having them.  The Ancillary Receiver's efforts in this regard are ongoing.

6

B.    Conducting Factual Research and Investigation

15.    Beyond the document work referred to above, the Ancillary Receiver has begun to pursue several additional avenues for uncovering the facts pertinent to claims and potential claims against the banks. For strategical reasons, it seems prudent for the Ancillary Receiver not to provide further detail regarding these several avenues at this time.

C.    Identifying Legal Issues and Researching These Issues

16.    The Ancillary Receiver has devoted considerable time and attention to identifying legal issues raised by the claims and potential claims against the banks, and to researching these issues. This legal research work has helped to shape the factual research and investigation referred to above, and will, the Ancillary Receiver believes, stand the Ancillary Receiver in good stead as he pursues the pending lawsuit against Bank of America, and negotiations with, or a second lawsuit against, Sovereign Bank.

D.    Communicating with Victims of Brad
Bleidt and Attorneys for Such Victims

17.    In connection with the recently consummated settlement with the broker-dealers, the SEC and Nixon Peabody identified 125 victims of Brad Bleidt to whom settlement payments should be made (the "Bleidt victims"). While most of these victims have not retained individual counsel to represent them in this matter, some of the victims have retained such counsel.

18.    Over the course of the last several months, the Ancillary Receiver has engaged in numerous communications with the Bleidt victims and with attorneys for such

7

victims. These communications have been for several purposes, including, without limitation: (a) obtaining factual information pertinent to the claims and potential claims against the banks; (b) securing the authorizations discussed in section E. below; and (c) keeping the victims apprised of the Ancillary Receiver's activities, and responding to the victims' questions and concerns.

E.    Securing Authorizations to Enable Funds to be Set
Aside to Finance Pursuit of the Claims Against the Banks

19.    This Court's November 18, 2004 Order appointing David Vicinanzo Receiver provided that compensation for his services and the services of Nixon Peabody shall be paid "from the assets of Allocation" and "from the funds in [Receiver Vicinanzo's] custody." 11/18/04 Order ¶13. Receiver Vicinanzo construed the foregoing language as meaning that, while funds collected by Receiver Vicinanzo through liquidation of the assets of Bleidt and Allocation Plus Asset Management Company, Inc. ("APAM"), such as the ownership interest in WBIX Corp., would be available for the payment of such compensation, funds recovered on the basis of claims belonging to the Bleidt victims would not be available for this purpose. Consequently, while Receiver Vicinanzo and Nixon Peabody devoted a great deal of their time and effort to pursuing claims against the broker-dealers, on behalf of the Bleidt victims pursuant to the victims' authorization, Receiver Vicinanzo has regarded the $6.3 million settlement with the broker-dealers as being wholly unavailable for the payment of compensation to Receiver Vicinanzo and Nixon Peabody. Because of this, and because what Receiver Vicinanzo has been able to recover through liquidating the assets of Bleidt and APAM, while substantial, has, nevertheless, been limited, it is apparent, given the amount of Nixon

8

Peabody's work, that the total compensation that will ultimately be due Receiver Vicinanzo and his firm will leave little, if any, funds available to pay the Ancillary Receiver for his efforts in pursuing claims against the banks.

20.    As a result of the foregoing, the SEC requested, in its proposed Order for Appointment of Ancillary Receiver that the Court provide that, in addition to funds in the Receivership estate, the Ancillary Receiver could be paid from "that portion, if any, of any recovery Bleidt's victims may be entitled to receive from the settlement with the broker-dealers that the victims specifically authorize to be available for payment to the Ancillary Receiver." The Court granted this request and included the foregoing provision in paragraph 8.a(ii) of its March 22, 2006 Order for Appointment.

21.    On April 3, 2006, Ancillary Receiver Fine sent a memorandum to all the Bleidt victims recounting the foregoing and requesting that each victim individually authorize in writing the setting aside of ten percent of the respective proceeds that that victim was due to receive from the settlement with the broker-dealers, so that the ten percent could be placed in a special fund to finance pursuit of the claims against the banks. This April 3 memorandum was followed, over the course of the next month, by numerous communications between Ancillary Receiver Fine and the Bleidt victims regarding the foregoing request, the reasons for the request, and the questions and concerns of the Bleidt victims.

22.    Ultimately, over 80 of the Bleidt victims signed the requested authorization. Ancillary Receiver Fine sent copies of each of these signed authorizations to Nixon Peabody. When, in early May 2006, Nixon Peabody sent out the checks to the Bleidt victims distributing the proceeds of the settlement with the broker-dealers, Nixon

9

Peabody wrote two checks for each Bleidt victim who had signed a ten percent authorization: one check payable to the victim for 90 percent of the amount the victim was due to receive from the settlement with the broker-dealers; and a second check for the remaining ten percent payable to Ancillary Receiver Fine as attorney in fact.

23.    Ancillary Receiver Fine deposited the ten percent checks he received from Nixon Peabody in a fiduciary IOLTA bank account specially opened for this purpose. To each victim on whose account Nixon Peabody had sent Fine a ten percent check, Fine sent a letter acknowledging receipt of the check, reporting its deposit in the special bank account, and confirming that no money would be disbursed from the account unless and until a specific fee application is made, reviewed and approved in accordance with the procedure described in paragraph 8.b. of the Court's March 22, 2006 Ancillary Receiver Order -- a procedure requiring the review and approval of both the SEC and the Court.

24.    As of the date of this Report, there is $402,755.89 in the foregoing special account.

Dated: June 14, 2006

Respectfully submitted,

David J. Fine, BBO #165120
Law Offices of David J. Fine
3 Center Plaza, Suite 400
Boston, MA 02108-2003
(617) 720-2941

Ancillary Receiver

10